1  **I Braun Degenshein** (SBN 138832)
   **Attorney at Law**
2  81 Skyway Lane
   Oakland, CA 94619
3  (510) 553-9669
   (510) 633-1900 (fax)
4
   Attorney for Plaintiff
5  John Law.

6

7

8                   **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  **JOHN LAW,**                          Case No.:

12              Plaintiff,

13        vs.                               **COMPLAINT** FOR:
                                            • Declaratory Relief
14  **LARRY HARVEY, MICHAEL MIKEL,**        • Cancellation of Trademark
    **PAPER MAN, LLC.,** and **BLACK ROCK**     Registrations
15  **CITY, LLC.,**                         • Trademark Infringement
                                            • Unfair Competition
16              Defendants                  • False Advertising
                                            • Unfair Business Practices
17                                          • Fraud
                                            • Breach of Fiduciary Duty
18                                          • Judicial Dissolution
                                            • Conversion
19                                          • Breach of Contract
                                            • Breach of Implied Covenant of
20                                              Good Faith and Fair Dealing
                                            • Negligent Misrepresentation
21                                          • Negligence
                                            • Demand for Jury Trial
22

23

24

25

26

27

28

Complaint final.jlaw.doc                **COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**COMPLAINT**

Complaint final.jlaw.doc

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**COMPLAINT**

Complaint final.jlaw.doc

**JURISDICTION AND VENUE**

1.       The Court has jurisdiction under 15 U.S.C. § 1121, and 28 U.S.C. § 1338(a) in that this case arises under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 et seq.

2.       The Court has jurisdiction of the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 et seq.

3.       Venue is proper in the Northern District of California pursuant to 15 U.S.C. § 1391(b).

**THE PARTIES**

4.       Plaintiff John Law (hereinafter "Plaintiff") is a citizen of the State of California who resides in Brisbane, California.

5.       Plaintiff has been a neon sign craftsman and tradesman by profession.  From 1988 to 1990, he was employed full time by the American Neon Sign Company, and by Ad-Art from approximately 1990 to 1992.  Plaintiff left Ad-Art in 1992 to form Central Services, a neon sign business that he owned in partnership with Chris Radcliff.  Central Services provided Plaintiff with a comfortable income.

6.       By 1986, Plaintiff had become well known and recognized in San Francisco's alternative art scene through his work and participation with various performance art groups like the Suicide Club and Communiversity.

7.       In 1986, "The Cacophony Society" (hereinafter "Cacophony") was created. Cacophony was a collective endeavor, self described as "a network of free spirits united in the pursuit of experiences beyond the pale of mainstream society."  Plaintiff was one of Cacophony's original members and a primary organizer.

8.       As one of Cacophony's principle organizers, Plaintiff was continually searching for new, different and unique places to stage events and to which he could lead Cacophony members.  During this time, he learned about the high desert in Nevada, an enormous, vast, flat, arid, desolate, "lifeless and cracked void" of a dry lake bed two and a half hours north of Reno. Plaintiff thoroughly explored the high desert during the late 1980s during which time he became

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 1

1   uniquely and thoroughly well acquainted with the area's geography, topology, history, residents,

2   merchants, authorities and culture.

3   9.     Plaintiff is informed and believes and thereupon alleges that defendant Larry

4   Harvey (hereinafter "Harvey") is a citizen of the State of California who resides in San

5   Francisco, California.

6   10.     Plaintiff is informed and believes and thereupon alleges that during the several

7   years prior to 1986, Harvey held a number of odd jobs, eventually becoming a free lance

8   gardener in San Francisco to those with little means and offbeat landscape ideas.

9   11.     Plaintiff is informed and believes and thereupon alleges that Harvey had no

10   knowledge of the Nevada high desert before he was introduced to it by Plaintiff.

11   12.     Plaintiff is informed and believes and thereupon alleges that defendant Mikel

12   Mikel (hereinafter "Mikel") is a citizen of the State of California who resides in San Francisco,

13   California.

14   13.     Plaintiff is informed and believes and thereupon alleges that Plaintiff met Mikel

15   shortly after Mikel joined Cacophony in mid to late 1989.  Mikel became active with

16   Cacophony, eventually editing Cacophony's newsletter and actively assisting Plaintiff in

17   organizing Cacophony events.  Plaintiff and Mikel became close friends through Cacophony.

18   Because Mikel had been unemployed for the most part during his first years with Cacophony,

19   Plaintiff employed him as Central Service's bookkeeper and trained him in the trade.

20   14.     Plaintiff is informed and believes and thereupon alleges that defendant Paper

21   Man, LLC (hereinafter "Paper Man") is a California limited liability company with its principle

22   place of business in Oakland, California.

23   15.     Plaintiff is informed and believes and thereupon alleges that defendant Black

24   Rock City, LLC (hereinafter "BRC") is a Nevada limited liability company formed in 1997 with

25   its principle place of business in San Francisco, California.  BRC is registered in the State of

26   California as a foreign domestic entity with a listed agent for service of process in California.

27   16.     Plaintiff is informed and believes and thereupon alleges that Harvey is BRC's

28   chairman, director and/or leading managing member.

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 2

17.     Plaintiff is informed and believes and thereupon alleges that Mikel is a member of BRC's executive board, board of directors and/or decision making body.

18.     Plaintiff is informed and believes and thereupon alleges that at all pertinent times, Harvey, Paper Man and BRC were the alter egos of each other.

19.     Plaintiff is informed and believes and thereupon alleges that Harvey, Paper Man and BRC were each other's agent, representative, joint venturer and representative, and in doing the things hereafter alleged, each was acting within and outside of the course and scope of said agency, joint venture and representation with each other's advance knowledge, acquiescence or subsequent ratification.

20.     Plaintiff is informed and believes and thereupon alleges that Harvey, Paper Man and BRC, individually and in concert, knew or reasonably should have known that their conduct as alleged herein was wrongful and constituted a breach of duty and that each gave substantial assistance to the other in accomplishing the wrongful conduct and breaches of duty alleged herein.

21.     Plaintiff is informed and believes and thereupon alleges that Harvey, Paper Man and BRC are and at all pertinent times have been each other's alter ego in that there exists and existed a unity of interests and ownership such that any separateness between any of them has ceased to exist.  Namely, Harvey completely controlled, dominated, managed and operated Paper Man and BRC; their assets were intermingled to suit Harvey's convenience; and each party's funds were commingled with the other parties' funds.

22.     Plaintiff is informed and believes and thereupon alleges that Harvey exercised complete control and dominance over Paper Man and BRC to such an extent that any individuality or separateness of identity between the two does not and at all pertinent times did not exist.

23.     Plaintiff is informed and believes and thereupon alleges that BRC exercised complete control and dominance over Paper Man to such an extent that any individuality or separateness of identity between the two does not and at all pertinent times did not exist.

24.     Plaintiff is informed and believes and thereupon alleges that adherence to the

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 3

Complaint final.jlaw.doc

1   existence of separate juristic fictions would abuse the corporate privilege and would produce

2   inequitable results in that Harvey would be able to evade payment of his personal obligations to

3   creditors and avoid liability to Plaintiff.

4        25.    Plaintiff is informed and believes and thereupon alleges that adherence to the

5   existence of separate corporate fictions would abuse the corporate privilege and would produce

6   inequitable results because of the probability that Harvey has pilfered or will pilfer corporate

7   assets for his own personal use and would cause the juristic entities to file for protection under

8   the United States Bankruptcy Code to avoid satisfying any judgment resulting from this lawsuit.

9   <div align="center">**FACTS COMMON TO ALL CLAIMS**</div>

10        26.    Plaintiff is informed and believes and thereupon alleges that in the late 1970s, a

11   popular San Francisco artist (the "Artist") began hosting a series of "spontaneous art-party

12   happenings" on San Francisco's Baker Beach.  As part of the activities, the Artist and her guests

13   built sculptures with materials that washed up on the shore, and later in the evening "torched"

14   (i.e., burned) the sculptures.  The parties often were held on the summer solstice, but not always.

15   The Artist stopped hosting the beach parties in or before 1985.

16        27.    Plaintiff is informed and believes and thereupon alleges that defendant Harvey

17   began to attend the Artist's parties in the early 1980s and was taken with the idea of freely

18   creating and burning art without institutional or authoritarian interference.  He attended the

19   Artist's remaining annual parties.

20        28.    Plaintiff is informed and believes and thereupon alleges that in 1986, the year

21   following the Artist's final "spontaneous art-party happening," Harvey and his friend Jerry

22   James saw the 1973 British cult film "The Wicker Man" and were inspired to carry on the

23   tradition of burning art at an annual party on Baker Beach without the Artist's participation.  In

24   preparation, James, a builder and contractor by trade, designed, engineered and built an

25   impromptu eight foot tall wooden figure.

26        29.    Plaintiff is informed and believes and thereupon alleges that Harvey and James

27   transported the wooden sculpture to Baker Beach and burned it during their not-so-impromptu

28   gathering that summer of 1986.  A handful of antiauthoritarian individuals attended that first

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 4**

1  gathering.

2      30.    Plaintiff is informed and believes and thereupon alleges that James and Harvey

3  held Baker Beach parties again in 1987, 1988 and 1989.  The 1986 and 1987 parties were

4  nothing more than picnics.  James's wooden figure in 1988 was much larger than prior year's

5  figures creating a unique, prototypical, and, relative to the available resources, prodigious

6  construction project for the 1988 party.

7      31.    Plaintiff is informed and believes and thereupon alleges that the planned scale and

8  size of the 1988 figure made construction a daunting task for James because Harvey did not have

9  the skills to assist.  James then met Plaintiff when he solicited Cacophony's help to build the

10  1988 figure.  Plaintiff and Cacophony were very interested in and supportive of the project, but

11  were unable to assist that year.

12      32.    Plaintiff is informed and believes and thereupon alleges that in support of the

13  project, Plaintiff and Cacophony spread the word in 1988 even though they could not attend,

14  resulting in a doubling of attendance from 1987.

15      33.    Plaintiff is informed and believes and thereupon alleges that Plaintiff, Mikel and

16  other Cacophony members attended the 1989 party and assisted logistically under Plaintiff's

17  leadership and direction.

18      34.    Plaintiff is informed and believes and thereupon alleges that due in no small part

19  to Plaintiff's and Cacophony's promotional efforts, attendance approximately doubled from 1988

20  to 1989 and doubled yet again from 1989 to 1990.  As a result of Cacophony members' word of

21  mouth and Cacophony's newsletter, an estimated 200 to 400 participants and spectators attended

22  the 1989 event.  The term "Burning Man" was first used to describe the party by a Cacophony

23  member in the June 1989 Cacophony newsletter announcement of a Cacophony "PARTY FOR

24  THE BURNING MAN."

25      35.    Plaintiff is informed and believes and thereupon alleges that in 1989, James had a

26  falling out with Harvey and their friendship became strained during the following year.

27  Nevertheless, James and Plaintiff constructed a forty foot figure for the 1990 party.  The figure

28  was not burned at Baker Beach that year because the police took steps to shut the party down

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

COMPLAINT − Page 5

Complaint final.jlaw.doc

1   entirely.  With the help of Plaintiff's negotiating skills, the party was held but the figure was not

2   burned.

3       36.     Plaintiff is informed and believes and thereupon alleges that after the failed 1990

4   Baker Beach burn, James withdrew from the project, leaving Plaintiff to take over James's role if

5   there were to be any future parties.

6       37.     Plaintiff is informed and believes and thereupon alleges that completely

7   independent of Harvey and James and their Baker Beach parties, Plaintiff and Cacophony

8   member Kevin Evans had been planning a Cacophony event of their own in the Nevada high

9   desert where participants could build things and destroy them at will.  The trip was dubbed and

10  promoted by Cacophony as "Zone Trip #4."

11      38.     Plaintiff is informed and believes and thereupon alleges that during the weeks

12  following the aborted 1990 burn, Harvey felt completely defeated and dejected and did not want

13  to hold another beach party or burn again.  Plaintiff, however, saw the "defeat" as an

14  opportunity.  Although he could have copied the idea and erected a structure with Evans on the

15  high desert "playa" without Harvey, Plaintiff asked James to contribute the structure to Zone

16  Trip #4 and honorably urged Harvey to be a part of the adventure.

17      39.     Plaintiff is informed and believes and thereupon alleges that the job of direction,

18  logistics and transportation fell almost entirely on Plaintiff.  Those efforts as they related to the

19  wooden figure were severely compromised, however, because major parts of the structure had

20  been lost, stolen, destroyed or discarded when it was left in an empty lot near Folsom Street after

21  the aborted Baker Beach burn.

22      40.     Plaintiff is informed and believes and thereupon alleges that through Plaintiff's

23  principal leadership, frantic supervision, tenacity, credit cards, drive, ingenuity and access to the

24  necessary tools, materials and facilities, the structure was repaired and reconstructed in time to

25  join the caravan to the playa.  The rebuilding essentially transformed the wooden figure into the

26  icon it is today, and Plaintiff's numerous design and technical contributions became integral to

27  the structure's current trade dress, including the signature neon lights.

28      41.     Plaintiff is informed and believes and thereupon alleges that once the repairs were

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 6

Complaint final.jlaw.doc

completed, Plaintiff arranged for and supplied most of the transportation, materials and finances needed to make the event happen and organized the caravan that made the trip to Nevada. Mikel, as a Cacophony member, participated and established the "Black Rock Rangers" to oversee safety, security and communications needs, such as they were.  Harvey, however, did not participate at all other than to arrive at the event as a spectator after it was completely set up.

42.     Plaintiff is informed and believes and thereupon alleges that approximately eighty people attended Zone Trip #4.  Although a fraction of the attendance at the previous Baker Beach party, it was deemed a success and Cacophony planned to repeat the event the following summer.

43.     Plaintiff is informed and believes and thereupon alleges that he was recognized as the technical and logistical leader of the event.  Plaintiff is recognized widely as the one individual without whose leadership and ability the event would not have been planned or produced.  Plaintiff alone became recognized as the "face" of the event to the local residents and authorities, and was the event's facilitator, technical director and supervisor.  The facilities, tools and materials needed to construct the event were provided by Central Services, and Central Services arranged to have the event covered under its insurance policy.

44.     Plaintiff is informed and believes and thereupon alleges that Plaintiff also was the event's benefactor.  In addition to funding the event with his credit cards, Plaintiff, Mikel and Central Services even paid Harvey's rent on occasion.

45.     Plaintiff is informed and believes and thereupon alleges that after the 1990 event, Mikel's participation expanded to include the roles of *de facto* accountant, controller and/or treasurer.

46.     Plaintiff is informed and believes and thereupon alleges that the 1990 event on the playa motivated Harvey to take a more active roll the next year, so he adopted the roll of artistic director thereafter.

47.     Like the Baker Beach party, the Nevada event's attendance essentially doubled with each succeeding year and the Nevada event showed great promise as a commercial venture. Plaintiff eventually found himself working on the event to the exclusion and neglect of Central

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 7**

Services and other economic pursuits.  Therefore, Plaintiff informed Mikel and Harvey that he

would have to withdraw he had something in writing that acknowledged his contributions to and

rights and interests in the event and provided some sort of job security in the future.

48.     Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel

acknowledged Plaintiff's essential role in the event's success and that it would be impossible to

continue without Plaintiff.  Therefore, Plaintiff, Harvey and Mikel memorialized in writing their

*de jure* general partnership (the "Partnership") by executing a written partnership agreement (the

"Partnership Agreement," attached hereto as Exhibit A).

49.     Among other things, the Partnership Agreement recognizes that the Partnership's

primary purpose was "to engage in organizing and conducting community art and performance

festivals, and related activities, . . . to do all things incidental to or in furtherance of these

enumerated purposes," and to "engage in any other business as may be agreed upon by the

partners."  The Partnership Agreement also established that each partner owned a one-third equal

and undivided ownership interest in the Partnership.  Article 10 of the Partnership Agreement

provided that upon termination, the Partnership assets remaining after satisfying outstanding

liabilities "shall be distributed to the Partners in proportion to their Partnership interests . . . ."

50.     Further memorializing their partnership, Plaintiff, Harvey and Mikel jointly filed

an application in their names with the United States Patent and Trademark Office on August 15,

1994 to register the word mark BURNING MAN as a service mark on the Principal Register.

The service mark was registered on September 12, 1995 under Registration No. 1,918,470

(hereinafter the "'470 Burning Man Mark").

51.     Plaintiff is informed and believes and thereupon alleges that as time progressed,

Harvey's ego became more and more intertwined with the event and the image of the wooden

figure.  Harvey started to promote himself as the sole innovator, owner, director and decision

maker of all that was Burning Man and increasingly promoted his own vision of establishing a

cult of followers that bowed to the Burning Man.

52.     Plaintiff is informed and believes and thereupon alleges that eventually, Harvey

began to dispute any suggestion that Plaintiff contributed to the development and success of the

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 8**

1   event.  Not only did he appear to have lost sight of the fact that but for Plaintiff, there would be

2   no Burning Man in the Nevada high desert, he also failed to realize that without Plaintiff, he

3   would not be playing the role of Burning Man's master of ceremonies.

4          53.    Plaintiff began to tire of Harvey's insinuations.  He did not want the Burning Man

5   to become some sort of cult icon, either, and was concerned that the event was becoming so large

6   that safety and security were likely to become paramount issues.  Plaintiff eventually felt that he

7   could contribute to an event that was run as a source of self promotion and gratification for an

8   individual rather than a source of release and enjoyment for the participants who made it

9   possible.

10         54.    By 1986, Plaintiff's differences of opinion, philosophy and vision from Harvey

11  were becoming insurmountable and Plaintiff decided it was time to pursue other opportunities.

12  While others in Plaintiff's position may sought revenge against Harvey by destroying the event,

13  Plaintiff instead did the honorable thing for the sake of the participants and the event itself:  after

14  satisfying himself that the event had reached a stage where it could continue without him, he

15  suggested that the Partnership be dissolved in a manner that would be fair to all involved.

16         55.    After acrimonious negotiations, Plaintiff, Harvey and Mikel agreed on terms of

17  dissolution by which Harvey assured Plaintiff that he would recognize and honor Plaintiff's

18  contributions to the event, Plaintiff's rights to share in future events' successes, and the need to

19  protect and promote the partnership's intellectual assets and associated good will in a way that

20  would not deprive Plaintiff of his due.   Harvey's assurances, and Plaintiff's understanding of

21  Harvey's assurances were then memorialized in the terms of an "Agreement for Dissolution of

22  Partnership" (the "Dissolution Agreement," attached hereto as Exhibit B).  Plaintiff, Harvey and

23  Mikel executed the Dissolution Agreement on July 22, 1997.

24         56.    Plaintiff is informed and believes and thereupon alleges that among other things,

25  the Dissolution Agreement contained the following terms and conditions:

26    •   The parties were to create a limited liability entity to be owned initially by Plaintiff,

27         Harvey and Mikel in equal one-third interests and used for the sole and exclusive

28         purpose of licensing the '470 Burning Man Mark;

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

- The parties were to assign the '470 Burning Man Mark and its associated good will to the newly formed entity;

- The newly formed entity was to license the '470 Burning Man Mark under terms that protected the mark from entering the public domain and that protected the entity and its members from liability resulting from the licensee's use;

- That an amount equal to the Partnership's outstanding cash liabilities be included as part of the licensing fee for the 1997 festival production;

- That if and when the '470 Burning Man Mark is sold or otherwise disposed of under specifically identified circumstances, the proceeds would be distributed among the partners in relation to their ownership interests;

- That only the entity, and not any of its members individually, may enter into licenses or other transactions for the '470 Burning Man Mark with third parties;

- That any licenses negotiated on behalf of Paper Man include certain minimum conditions and safeguards; and

- That the Partnership otherwise was to be terminated "in accordance with Article 10 of the [Partnership Agreement]."

57.     Plaintiff is informed and believes and thereupon alleges that Plaintiff, Harvey and Mikel were represented and advised by competent attorneys who were licensed by the State Bar of California in the negotiation and drafting of the Dissolution Agreement's terms and conditions.

58.     Plaintiff is informed and believes and thereupon alleges that on July 22, 2007, Plaintiff, Harvey and Law executed the Paper Man Operating Agreement (the "Operating Agreement," attached hereto as Exhibit C) which contains the provisions required by the Dissolution Agreement.  On July 24, 2007, Paper Man was registered as a limited liability company with the California Secretary of State.

59.     Plaintiff is informed and believes and thereupon alleges that Plaintiff, Harvey and Mikel were represented and advised by competent attorneys who were licensed by the State Bar of California in the negotiation and drafting of the Operating Agreement's terms and conditions.

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 10

60.     Plaintiff is informed and believes and thereupon alleges that on July 29, 2007, as a requirement of the Dissolution Agreement and the Operating Agreement, the assignment of the '470 Burning Man Mark from Plaintiff, Harvey and Mikel to Paper Man was recorded by the United States Patent and Trademark Office at Reel 1612, Frame 0893.

61.     The Operating Agreement unambiguously states that the members' sole capital contribution was the '470 Burning Man Mark.  A copy of the '470 Burning Man Mark's registration certificate was attached to further remove any doubt or ambiguity.  No other assets whatsoever were identified.

62.     The Operating Agreement also set out that all Members must be consulted prior to making decisions on behalf of Paper Man, and that Paper Man must keep a complete and accurate account of its business, and that its books and records must be open to inspection and copying by each Member or his authorized representative.

63.     Plaintiff is informed and believes and thereupon alleges that Mikel continued to work with Harvey after the Partnership dissolved and formed BRC with Harvey and became one of a number of managing directors chosen and appointed by Harvey.  Harvey became the lead managing director.

64.     Plaintiff is informed and believes and thereupon alleges that as Plaintiff predicted, attendance at the Burning Man event increased consistently over the years following the Partnership's dissolution.  The following attendance figures for the Nevada gatherings have been reported:

| YEAR | ATTENDEES |
|------|-----------|
| 1990 | 90 |
| 1991 | 250 |
| 1992 | 600 |
| 1993 | 1,000 |
| 1994 | 2,000 |
| 1995 | 4,000 |
| 1996 | 8,000 |

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 11

| 1997 | 10,000 |
| 1998 | 15,000 |
| 1999 | 23,000 |
| 2000 | 25,400 |
| 2001 | 25,659 |
| 2002 | 28,979 |
| 2003 | 30,586 |
| 2004 | 35,664 |
| 2005 | 35,567 |
| 2006 | 39,100 (est.) |

65.     Plaintiff is informed and believes and thereupon alleges that as attendance and ticket prices increased, the fair market value of the license for the '470 Burning Man Mark increased as well.  Nevertheless, Paper Man annually reported license fee revenues that were sufficient only to pay Paper Man's necessary operating expenses.  Having shown no profit after payment of expenses, Plaintiff never received any payments from Paper Man.

66.     Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel justified Paper Man's failure to obtain greater licensing fees on the ground that Burning Man did not operate at a profit because it was so expensive to mount.  Until the recent occurrence of events set out below, Plaintiff relied on Harvey's and Mikel's representations and assurances.

67.     Plaintiff is informed and believes and thereupon alleges that within the past year, Harvey and Mikel became hopelessly deadlocked and completely unable to agree on terms and conditions for '470 Burning Man Mark licensing agreement with BRC, the operation of Paper Man, the operation of BRC, and the operation of the Burning Man event.  During this past year, Plaintiff also discovered for the first time that BRC had been allowed to use the BURNING MAN service mark without entering into written licensing agreements with BRC.

68.     Plaintiff is informed and believes and thereupon alleges that within the past year, Harvey and BRC expressly announced that they never believed that Paper Man, Mikel and Plaintiff had rights to the '470 Burning Man Mark or any other of the Partnership's intellectual property assets.

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 12

Complaint final.jlaw.doc

69.     Plaintiff is informed and believes and thereupon alleges that within the last year, Harvey announced that he never intended to comply with the terms of the Dissolution Agreement or Operating Agreement and always believed the '470 Burning Man Mark was his alone.

70.     Plaintiff is informed and believes and thereupon alleges that within the past year, Harvey has expressly, specifically and unambiguously repudiated the Dissolution Agreement and Operating Agreement.  Additionally, Harvey has been reported to have unilaterally presented a licensing agreement to BRC with terms and conditions that were not discussed with or approved by other Paper Man members and which did not receive majority member consent as required by the Operating Agreement.  Harvey also was reported to have granted BRC the right to use the '470 Burning Man Mark without signing a written license agreement and without paying a fee or payment of a fee only sufficient to cover Paper Man's minimal State filing requirements.  Lastly, Harvey reportedly granted BRC permission to use the '470 Burning Man Mark despite BRC's express refusal to agree to a written license's terms and conditions.

**FIRST CLAIM FOR RELIEF**
**(Cancellation of Trademark Registrations**
**as against BRC)**

71.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs as if fully set out at length herein.

72.     Plaintiff is informed and believes and thereupon alleges that during the time the festival was located in the high desert from 1990 to 1996, the festival developed unique and distinctive trademarks, service marks and trade dress apart from and in addition to the '470 Burning Man Mark.  Such intellectual property assets included, for example but without limitation, the stylized Burning Man Logo (see Exhibit D); the service marks "Black Rock City," "Flambe Lounge," and "Decompression," the trade dress of the Burning Man festival itself and the appearance and trade dress of the neon lit, wooden structure (see Exhibit E).

73.     Plaintiff is informed and believes and thereupon alleges that such intellectual properties and all of the goodwill associated therewith were assets belonging to the Partnership when the Partnership dissolved.

74.     Plaintiff is informed and believes and thereupon alleges that because such

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 13

additional assets were not included by specific reference in the Dissolution Agreement, such

assets and their associated goodwill were distributed jointly among Plaintiff, Harvey and Mikel

pursuant to Article 10 of the Partnership Agreement when the partnership dissolved.

75.     Plaintiff is informed and believes and thereupon alleges that ownership and use of

a trademark or service mark by more than one source will result in the mark being inserted into

the public domain.

76.     Plaintiff is informed and believes and thereupon alleges that equity prefers that

marks not be forfeited to the public domain and that remedies should be fashioned whenever

possible to create a valid joint ownership of the mark as if coming from a single source without

forfeiting the mark to the public domain.

77.     Plaintiff is informed and believes and thereupon alleges that on February 25,

2003, defendant BRC applied for registration of the mark "Decompression" in International

Class 041 for "Organizing community festivals featuring art exhibits, conducting entertainment

exhibitions in the nature of art festivals, and entertainment in the nature of art festivals."  BRC

claimed a first use date of October 18, 1997 and the mark was registered on the Principal

Register on December 30, 2003 with registration number 2,800,513 (the "'513 Registration").

78.     Plaintiff is informed and believes and thereupon alleges that said mark was first

used in relation to the Burning Man event prior to the dissolution of the Partnership and as such

said mark was a Partnership asset that should have been distributed among Plaintiff, Harvey and

Mikel pursuant to Article 10 of the Partnership Agreement when the Partnership dissolved.

79.     Plaintiff is informed and believes and thereupon alleges that if such mark entered

into the public domain by reason of its being distributed among several owners, then the '513

Registration was improperly granted because the mark is in the public domain.

80.     Plaintiff is informed and believes and thereupon alleges that if an equitable

remedy were fashioned to recognize a constructive, *de facto* partnership among Plaintiff, Harvey

and Mikel, then BRC is not the first to use the mark in commerce or the true owner of the mark,

and its use of the mark is likely to be confused with the *de facto* partnership's ownership of the

mark.

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 14

81.     Plaintiff is informed and believes and thereupon alleges that on February 25, 2003, BRC applied for registration of the mark "Flambé Lounge" in International Class 041 for "Organizing community festivals featuring art exhibits, conducting entertainment exhibitions in the nature of art festivals, and entertainment in the nature of art festivals."  BRC claimed a first use date of January 1, 1998 and the mark was registered on the Principal Register on February 10, 2004 with registration number 2,813,064 (the "'064 Registration").

82.     Plaintiff is informed and believes and thereupon alleges that said mark was first used in relation to the Burning Man event prior to BRC's claimed first use date and prior to the dissolution of the Partnership in 1997 and as such said mark was an asset that should have been distributed among Plaintiff, Harvey and Mikel pursuant to Article 10 of the Partnership Agreement when the Partnership dissolved.

83.     Plaintiff is informed and believes and thereupon alleges that if such mark entered into the public domain by reason of its being distributed among several owners, then the '064 Registration was improperly granted.

84.     Plaintiff is informed and believes and thereupon alleges that if an equitable remedy were fashioned to create a constructive, *de facto* partnership among Plaintiff, Harvey and Mikel, then BRC is not the true owner of the mark and its use of the mark is likely to be confused with the *de facto* partnership's senior mark.

85.     Plaintiff is informed and believes and thereupon alleges that on February 25, 2003, BRC applied for registration of the mark "Black Rock City" in International Class 041 for "Organizing community festivals featuring art exhibits, conducting entertainment exhibitions in the nature of art festivals, and entertainment in the nature of art festivals."  BRC claimed a first use date of September 1, 1995 and the mark was registered on the Principal Register on June 21, 2005 with registration number 2,963,068 (the "'068 Registration").

86.     Plaintiff is informed and believes and thereupon alleges that said mark was first used in relation to the Burning Man event prior to BRC's stated first use date and prior to the dissolution of the Partnership, and as such said mark was an asset of the Partnership that should have been distributed among Plaintiff, Harvey and Mikel pursuant to Article 10 of the

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 15

Complaint final.jlaw.doc

1    Partnership Agreement when the Partnership dissolved.

2        87.     Plaintiff is informed and believes and thereupon alleges that if such mark entered

3 into the public domain by reason of its being distributed among several owners when the

4 Partnership was dissolved, then the '068 Registration was improperly granted.

5        88.     Plaintiff is informed and believes and thereupon alleges that if an equitable

6 remedy were fashioned to create a constructive, *de facto* partnership among Plaintiff, Harvey and

7 Mikel, then BRC is not the true owner of the mark and its use of the mark is likely to be

8 confused with the *de facto* partnership's use of the mark.

9        89.     In light of the above, Plaintiff requests that the Court order the PTO to cancel the

10 '513, '064 and '068 registrations and declare either that the marks represented in those

11 registrations have entered into the public domain, or in the alternative, declare that such marks

12 are held in constructive trust by a *de facto* partnership comprised of Plaintiff, Harvey and Mikel

13 for the benefit of such *de facto* partners and that the '513, '065 and '068 registrations be assigned

14 or transferred to such *de facto* partnership.

15        90.     In light of the above, Plaintiff further requests the Court order defendants BRC,

16 Harvey and Mikel to submit to an accounting for all activities from 1997 to the present and to

17 award Plaintiff as a member of the *de facto* partnership his share of damages in the way of

18 reasonable license fees at an independently determined fair market value for such period of time,

19 plus pre-and post judgment interest, and all other damages available under the law and equity

20 according to proof.

21                         **SECOND CLAIM FOR RELIEF**
                      **(Cancellation of Trademark Registrations**
22                             **as against Mikel)**

23        91.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

24 as if fully set out at length herein.

25        92.     Plaintiff is informed and believes and thereupon alleges that on February 14,

26 2003, defendant Mikel applied for registration of the Burning Man event's unique logo design

27 (hereinafter the "Logo") in International Class 041 for "Organizing community festivals

28 featuring art exhibits, conducting entertainment exhibitions in the nature of art festivals, and

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 16

entertainment in the nature of art festivals."  Mikel claimed a first use date of April 8, 1995 and the mark was registered in Mikel's name on the Principal Register on December 30, 2003 with registration number 2,800,469 (the "'469 Registration").

93.     Plaintiff is informed and believes and thereupon alleges that said mark was first used in relation to the Burning Man event prior to Mikel's stated first use date and prior to the dissolution of the Partnership, and as such said mark was an asset of the Partnership that should have been distributed among Plaintiff, Harvey and Mikel pursuant to Article 10 of the Partnership Agreement when the Partnership dissolved.

94.     Plaintiff is informed and believes and thereupon alleges that if such mark entered into the public domain by reason of its being distributed among several owners when the Partnership was dissolved, then the '068 Registration was improperly granted.

95.     Plaintiff is informed and believes and thereupon alleges that if an equitable remedy were fashioned to create a constructive, *de facto* partnership among Plaintiff, Harvey and Mikel, then BRC is not the true owner of the mark and his use of the mark in any way is likely to be confused with the *de facto* partnership's rights in the mark.

96.     In light of the above, Plaintiff requests that the Court order the PTO to cancel the '469 Registration and declare that the mark represented in that registration has entered into the public domain or, in the alternative, assign and transfer the '469 Registration to the *de facto* partnership comprised of Plaintiff, Harvey and Mikel in constructive trust for the benefit of such *de facto* partners.

97.     In light of the above, Plaintiff further requests the Court order defendant Mikel to submit to an accounting for all activities from 1997 to the present and to award Plaintiff as a member of the *de facto* partnership his share of damages in the way of reasonable license fees at an independently determined fair market value for such period of time, plus pre-and post judgment interest.

### THIRD CLAIM FOR RELIEF
**(Unfair Competition
as against BRC)**

98.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

as if fully set out at length herein.

99.   Plaintiff is informed and believes and thereupon alleges that BRC's unauthorized use of the service marks "Decompression," "Flambé Lounge" and "Black Rock City" is likely to cause confusion and has caused confusion as to the true ownership of such marks.  Such unauthorized use infringes the rights of the *de facto* partnership under Section 43(a) of the Lanham Act, 15 U.S.C. § 1152(a), and Plaintiff has been damaged by such unauthorized use.

100.   Plaintiff is informed and believes and thereupon alleges that BRC's unauthorized use of the stylized Burning Man logo is likely to cause confusion and has caused confusion as to the true ownership of such marks.  Such unauthorized use infringes the rights of the *de facto* partnership under Section 43(a) of the Lanham Act, 15 U.S.C. § 1152(a), and Plaintiff has been damaged by such unauthorized use.

101.   Plaintiff is informed and believes and thereupon alleges that BRC's unauthorized use of the Burning Man Festival trade dress and the trade dress that comprises the Burning Man structure is likely to cause confusion and has caused confusion as to the true ownership of such marks.  Such unauthorized use infringes the rights of the *de facto* partnership under Section 43(a) of the Lanham Act, 15 U.S.C. § 1152(a), and Plaintiff has been damaged by such unauthorized use.

102.   In light of the above, Plaintiff requests that BRC be enjoined from using the *de facto* partnership's service marks and trade dress and that the Court order BRC to submit to an accounting for all activities from 1997 to the present and to award Plaintiff as a member of the *de facto* partnership his share of damages in the way of reasonable license fees at an independently determined fair market value for such past use, plus pre-and post judgment interest thereon and all other damages available under the law and equity.

### FOURTH CLAIM FOR RELIEF
#### (Unfair Competition
#### as against Mikel and Harvey)

103.   Plaintiff incorporates all of the allegations contained in the foregoing paragraphs as if fully set out at length herein.

104.   Plaintiff is informed and believes and thereupon alleges that Mikel and Harvey

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 18

1    permitted BRC to use the Partnership's intellectual property assets without Plaintiff's permission

2    and consent, without the permission and consent of each other in violation of the *de facto*

3    partnership's rights.

4    105.    Plaintiff is informed and believes and thereupon alleges that such unauthorized

5    use and misappropriation of the Partnership's intellectual property assets was likely to cause

6    confusion and has caused confusion as to the true ownership of such marks and trade dress.

7    Such unauthorized uses infringe the rights of the *de facto* partnership under Section 43(a) of the

8    Lanham Act, 15 U.S.C. § 1152(a), and Plaintiff has been damaged by such unauthorized use.

9    106.    In light of the above, Plaintiff requests that Mikel and Harvey be enjoined from

10   using the *de facto* partnership's service marks in violation of the *de facto* partnership's rights and

11   that Harvey and Mikel be ordered to submit to an accounting for all activities from 1997 to the

12   present and to award Plaintiff as a member of the *de facto* partnership his share of damages in the

13   way of reasonable license fees at an independently determined fair market value for such past

14   use, plus pre-and post judgment interest thereon.

**FIFTH CLAIM FOR RELIEF**
**(Fraud**
**as against Harvey)**

17   107.    Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

18   as if fully set out at length herein.

19   108.    Plaintiff is informed and believes and thereupon alleges that in negotiating the

20   terms of the Dissolution Agreement, Harvey knowingly misrepresented to Plaintiff that proper,

21   fair market license rates would be charged to subsequent Burning Man event organizers and that

22   the revenues from such license fees would be distributed among the Partners in relationship to

23   their ownership interests.  Harvey also knowingly misrepresented that he would at all times

24   respect Plaintiff's and Mikel's rights as they relate to their remaining ownership interests in the

25   '470 Burning Man Mark and any other revenues generated from any other former Partnership

26   assets.

27   109.    Plaintiff is informed and believes and thereupon alleges that Harvey intentionally

28   misrepresented the material terms and conditions of the Partnership Agreement, Dissolution

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 19**

1   Agreement and Operating Agreement to Plaintiff in order to induce Plaintiff to execute such

2   agreements and relinquish his rights to the '470 Burning Man Mark and the Partnership's other

3   intellectual property assets.

4       110.   Plaintiff is informed and believes and thereupon alleges that Harvey knowingly

5   caused the terms of the Partnership Agreement, Dissolution Agreement and Operating

6   Agreement to falsely state the intended purpose of such agreements in order to induce Plaintiff to

7   execute such agreements and relinquish his rights to the '470 Burning Man Mark and the

8   Partnership's other intellectual property assets.

9       111.   Plaintiff is informed and believes and thereupon alleges that Harvey knew at the

10   time such representations were made that they were false and that he had no intention of

11   performing those terms and conditions.

12       112.   The falsely represented terms and conditions set out above were material to

13   Plaintiff's decision to enter into the Partnership and continue to provide services to Harvey, and

14   to Plaintiff's decisions to dissolve the Partnership and relinquish his ownership interests in the

15   '470 Burning Man Mark and the Partnership's other intellectual property assets.

16       113.   The falsely represented terms and conditions set out above were material to

17   Plaintiff's decision to execute the Partnership Agreement, Dissolution Agreement and Operating

18   Agreement.

19       114.   Plaintiff reasonably relied to his detriment on Harvey's intentionally false

20   representations.

21       115.   Plaintiff did not know at the time they were made that such representations were

22   false, and could not have discovered that such representations were knowingly false until facts

23   arose and Harvey expressly repudiated such agreements within the past year.

24       116.   As a direct, proximate and foreseeable result of the conduct set out above,

25   Plaintiff has been injured in amounts far in excess of the jurisdictional limits of the court

26   according to proof.

27       117.   Harvey committed the acts alleged herein fraudulently, oppressively and with an

28   improper and evil motive amounting to malice with the wrongful intention of injuring Plaintiff

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 20

Complaint final.jlaw.doc

and depriving Plaintiff of his property.  Alternatively, Harvey's despicable conduct was carried out in conscious disregard of Plaintiff's rights.  Therefore, as a direct, proximate and foreseeable result of Harvey's despicable conduct, Plaintiff also is entitled to recover punitive and exemplary damages in the maximum amount permitted by law and Due Process.

## SIXTH CLAIM FOR RELIEF
### (Unfair Competition and False Advertising in Violation of the Lanham Act as Against BRC, Harvey and Mikel)

118.    Plaintiff incorporates all of the allegations contained in the foregoing paragraphs as if fully set out at length herein.

119.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), forbids the use of false descriptions or representations in the advertising and sale of goods and services.

97.    Plaintiff is informed and believes and thereupon alleges that from 1997 to the present, defendants BRC, Harvey and Mikel falsely represented in commercial advertising that they were the true owners of the former Partnership's intellectual property assets.

98.    Plaintiff is informed and believes and thereupon alleges that said defendants knew that their representations were material and false.

99.    Plaintiff is informed and believes and thereupon alleges that said defendants intended for others to rely on their false representations.

100.    Plaintiff is informed and believes and thereupon alleges that said defendants wrongly profited from their intentionally false and misleading representations.

101.    Plaintiff has been injured as a direct, proximate and foreseeable consequence of said defendants' violations of Section 43(a) of the Lanham Act.

102.    As a direct, proximate and foreseeable result of said defendants' violations of Section 43(a) of the Lanham Act, Plaintiff is entitled to all relief available under the Lanham Act including injunctive relief, disgorgement of all ill gotten gains, treble damages, and reasonable attorneys' fees and costs.

103.    BRC, Harvey and Mikel committed the acts alleged herein fraudulently, oppressively and with an improper and evil motive amounting to malice with the wrongful intention of injuring Plaintiff.  Alternatively, Said defendants' despicable conduct was carried

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 21

1   out in conscious disregard of Plaintiff's rights.  Therefore, as a direct, proximate and foreseeable

2   result of said defendants' despicable conduct, Plaintiff also is entitled to recover punitive and

3   exemplary damages in the maximum amount permitted by law and Due Process.

**SEVENTH CLAIM FOR RELIEF**
4
**(Unfair Competition and False Advertising in Violation of California and Common Law**
5   **as Against BRC, Harvey and Mikel)**

6       104.    Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

7   as if fully set out at length herein.

8       105.    The conduct of BRC, Harvey and Mikel set out above constitutes false or

9   misleading statements in violation of California Business and Professions Code § 17500 *et seq*

10  and common law.

11      106.    As a direct, proximate and foreseeable result of said defendants' violations of

12  California Business and Professions Code § 17500 and common law, and pursuant to California

13  Business and Professions Code §§ 17203, 17500 and 17535, Plaintiff seeks injunctive relief,

14  disgorgement of profits, statutory damages and any and all other remedies available under the

15  law.

16      107.    BRC, Harvey and Mikel committed the acts alleged herein fraudulently,

17  oppressively and with an improper and evil motive amounting to malice with the wrongful

18  intention of injuring Plaintiff.  Alternatively, Said defendants' despicable conduct was carried

19  out in conscious disregard of Plaintiff's rights.  Therefore, as a direct, proximate and foreseeable

20  result of the counterdefendants' despicable conduct, Plaintiff also is entitled to recover punitive

21  and exemplary damages in the maximum amount permitted by law and Due Process.

**EIGHTH CLAIM FOR RELIEF**
22
**(Declaratory Relief from Contract**
23  **as against Harvey and Mikel)**

24      108.    Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

25  as if fully set out at length herein.

26      109.    Plaintiff is informed and believes and thereupon alleges that Plaintiff's assents to

27  the Partnership Agreement, Dissolution Agreement and Operating Agreement were negated by

28  Harvey's fraudulent misrepresentations of the true nature and effect of the agreements.

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 22

Complaint final.jlaw.doc

110.     In light of the above, Plaintiff respectfully requests the Court declare that said agreements are void *ab initio,* that Plaintiff, Harvey and Michael were and are partners with equal, undivided interests in a general partnership formed pursuant to California law, and that such partnership's intellectual property assets either were dedicated to the public domain upon such partnership's dissolution or, in the alternative, that such assets be deemed to have been held in constructive trust by the *de facto* partnership comprised of Plaintiff, Harvey and Mikel subsequent to the original partnership's dissolution.

### NINTH CLAIM FOR RELIEF
**(Judicial Dissolution of Paper Man LLC**
**as against Harvey, Mikel and Paper Man)**

111.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs as if fully set out at length herein.

112.     Plaintiff is informed and believes and thereupon alleges that California Corporations Code § 17351 allows for judicial dissolution of a limited liability company when, among other things, dissolution is reasonably necessary for the protection of the complaining partner, when the management of the company is deadlocked or subject to internal dissention, or when those in control of the company have been guilty of, or have knowingly countenanced persistent and pervasive fraud, mismanagement, or abuse of authority.

113.     Assuming *arguendo* that Paper Man is not declared void *ab initio,* Plaintiff is informed and believes and thereupon alleges that Plaintiff's only source of protection from Harvey's and Mikel's misfeasance is Paper Man's dissolution.

114.     Assuming *arguendo* that Paper Man is not declared void *ab initio,* Plaintiff is informed and believes and thereupon alleges that Paper Man's dissolution is necessary because Harvey and Mikel are deadlocked on matters of material importance to Paper Man's operation, namely the terms and conditions of the '470 Burning Man Mark license, the rights of the managing members to grant the license without majority shareholder consent, and the validity of Paper Man itself.

115.     Assuming *arguendo* that Paper Man is not declared void *ab initio,* Plaintiff is informed and believes and thereupon alleges that Paper Man's dissolution is the only reasonable

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

COMPLAINT − Page 23

1   and equitable solution to Harvey's and Mikel's persistent and pervasive fraud, mismanagement

2   and abuse of authority.

3      116.    In light of the above, Plaintiff requests relief by way of an appraisal of Paper

4   Man's assets pursuant to California Corporations Code § 17351(b)(3), judicial dissolution of

5   Paper Man, and distribution of its assets equally among Plaintiff, Harvey and Mikel.

6                          **TENTH CLAIM FOR RELIEF**
                          **(Breach of Fiduciary Duty**
7                        **as against Harvey and Mikel)**

8      117.    Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

9   as if fully set out at length herein.

10     118.    Plaintiff is informed and believes and thereupon alleges that as partners in the

11  Partnership, Harvey and Mikel owed Plaintiff a duty to carry out the Partnership business with

12  the highest good faith toward Plaintiff and with the loyalty of a fiduciary.

13     119.    Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel

14  also owed Plaintiff a duty to attend to the business of the *de facto* partnership that was equitably

15  established for the benefit of the distributed trademark, service mark and trade dress assets with

16  the highest good faith toward Plaintiff and with the loyalty of a fiduciary.

17     120.    Plaintiff is informed and believes and thereupon alleges that as voting and

18  managing members of Paper Man, Harvey and Mikel owed Plaintiff a duty to carry out Paper

19  Man business with the highest good faith toward Plaintiff and with the loyalty of  fiduciaries.

20     121.    Plaintiff is informed and believes and thereupon alleges that Harvey's and

21  Mikel's positions with BRC and the Burning Man event created interests in Harvey and Mikel

22  that conflicted with their interests in and duties of utmost good faith to the Partnership, the *de*

23  *facto* partnership, Paper Man and Plaintiff.

24     122.    Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel

25  violated their fiduciary duties of utmost good faith and loyalty to Plaintiff by obtaining

26  advantages for themselves over the Partnership, the *de facto* partnership and Paper Man through

27  the use of misrepresentation, concealment and fraud.

28     123.    Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 24

Complaint final.jlaw.doc

1  violated their fiduciary duties of utmost good faith and loyalty to Plaintiff by obtaining

2  advantages for themselves over the Partnership, the *de facto* partnership and Paper Man by

3  licensing, using and/or permitting the use of the Partnerships intellectual property assets either

4  without license or control over the use of the marks, or by licensing such marks at below fair

5  market rates with insufficient quality safeguards.

6      124.   BRC, Harvey and Mikel committed the acts alleged herein fraudulently,

7  oppressively and with an improper and evil motive amounting to malice with the wrongful

8  intention of injuring Plaintiff.  Alternatively, Said defendants' despicable conduct was carried

9  out in conscious disregard of Plaintiff's rights.  Therefore, as a direct, proximate and foreseeable

10 result of the counterdefendants' despicable conduct, Plaintiff also is entitled to recover punitive

11 and exemplary damages in the maximum amount permitted by law and Due Process.

**ELEVENTH CLAIM FOR RELIEF**
**(Breach of Contract**
**as against Harvey, Mikel and Paper Man)**

14     125.   Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

15 as if fully set out at length herein.

16     126.   Plaintiff is informed and believes and thereupon alleges that the 2006 Burning

17 Man event's gross income exceeded $6,000,000.00, and that the gross revenues from prior

18 events was commensurately great.

19     127.   Plaintiff is informed and believes and thereupon alleges that the fair market value

20 for a license for the 2006 event could range from $300,000.00 to more than $1,000,000.00, and

21 the rate for prior events would be commensurate with such rates.

22     128.   Assuming *arguendo* that the Operating Agreement is not declared void *ab anitio,*

23 Plaintiff is informed and believes and thereupon alleges that he has from the beginning

24 performed all of the obligations required of him by the Operating Agreement, yet Harvey, Mikel

25 and Paper Man breached the Operating Agreement by continually failing to obtain in good faith

26 an arm's length licensing agreement from BRC at the fair market value for such license.

27     129.   Plaintiff is informed and believes and thereupon alleges that Harvey, Mikel and

28 Paper Man further breached the Operating Agreement by continually failing to pay Plaintiff his

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT – Page 25**

1  share of the fair market value for a license for the '470 Burning Man Mark.

2    130. Plaintiff is informed and believes and thereupon alleges that Harvey, Mikel and

3  Paper Man also breached the Operating Agreement by continually failing to provide an accurate

4  and detailed accounting to Plaintiff or make Paper Man's books available for Plaintiff's

5  inspection.

6    131. Plaintiff has been damaged by the aforementioned breaches and seeks all

7  reasonably foreseeable damages directly and proximately caused by such breach

8  <center>**TWELFTH CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing**</center>

9  <center>**as against Harvey, Mikel and Paper Man)**</center>

10    132. Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

11  as if fully set out at length herein.

12    133. Plaintiff is informed and believes and thereupon alleges that California implies in

13  all contracts a covenant that the parties will act in good faith and deal fairly with each other.

14    134. Plaintiff is informed and believes and thereupon alleges that the facts alleged in

15  this Complaint establish that Harvey and Mikel individually and as managing members of Paper

16  Man, breached the covenants of good faith and fair dealing that are implied in the Dissolution

17  Agreement and the Operating Agreement.

18    135. Plaintiff has been damaged by the aforementioned breaches and seeks all

19  reasonably foreseeable damages directly and proximately caused by such breach that are

20  available under the laws of California and the United States.

21  <center>**THIRTEENTH CLAIM FOR RELIEF**
**(Conversion**</center>

22  <center>**as against Harvey, Mikel and BRC)**</center>

23    136. Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

24  as if fully set out at length herein.

25    137. Plaintiff is informed and believes and thereupon alleges that the '470 Burning

26  Man Mark is the personal property of the Partnership, the *de facto* partnership and/or Paper Man.

27    138. Plaintiff is informed and believes and thereupon alleges that the Partnership's

28  remaining intellectual property assets are the personal property of the Partnership or the *de facto*

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

COMPLAINT − Page 26

Complaint final.jlaw.doc

1    partnership.

2        139.    Plaintiff is informed and believes and thereupon alleges that Harvey, Mikel and

3    BRC wrongly assumed authority and presumed ownership over such personal property with the

4    intention of depriving Plaintiff, the Partnership, the *de facto* partnership and/or Paper Man of

5    their right of possession of such property.

6        140.    Plaintiff has been injured by such intentional and wrongful conduct as alleged

7    above.

8        141.    BRC, Harvey and Mikel committed the acts alleged herein fraudulently,

9    oppressively and with an improper and evil motive amounting to malice with the wrongful

10   intention of injuring Plaintiff.  Alternatively, Said defendants' despicable conduct was carried

11   out in conscious disregard of Plaintiff's rights.  Therefore, as a direct, proximate and foreseeable

12   result of the counterdefendants' despicable conduct, Plaintiff also is entitled to recover punitive

13   and exemplary damages in the maximum amount permitted by law and Due Process.

14                       **FOURTEENTH CLAIM FOR RELIEF**
                          **(Negligent Misrepresentation**
15                       **as against Harvey and Mikel)**

16       142.    Plaintiff incorporates all of the allegations contained in the foregoing paragraphs

17   as if fully set out at length herein.

18       143.    Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel

19   owed Plaintiff a duty of care

20       144.    Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel

21   negligently misstated their true intentions when the negotiated and entered into the Dissolution

22   Agreement and Operating Agreement with Plaintiff.

23       145.    Plaintiff has been damaged as a direct and proximate result of such negligent

24   misrepresentation in an amount that is subject to proof.

25       146.    In light of the above, Plaintiff requests damages from Harvey and Mikel in an

26   amount that is subject to proof.

27

28

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 27**

**FIFTEENTH CLAIM FOR RELIEF**
**(Negligence**
**as against Harvey and Mikel)**

147.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs as if fully set out at length herein.

148.     Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel allowed the cancellation of the '470 Burning Man Mark registration by negligently failing to file required affidavits before the sixth anniversary of the mark's registration date or within the grace periods permitted thereafter.

149.     Plaintiff is informed and believes and thereupon alleges that as a direct and proximate result of Harvey's and Mikel's negligence, the '470 Burning Man Mark lost the protections and assumptions afforded by its registration, and additionally lost the ability to become "incontestable" by the PTO.

150.     Plaintiff is informed and believes and thereupon alleges that loss of such status, for no matter how little time, negatively impacts the value of the mark and its associated good will, thereby causing injury to Paper Man and Plaintiff.

151.     Plaintiff is informed and believes and thereupon alleges that Harvey and Mikel negligently ceded control of the '470 Burning Man Mark, the "Flambé Lounge," "Decompression" and "Black Rock City" service marks, the Burning Man event's distinctive trade dress and its unique, stylized logo.

152.     Plaintiff is informed and believes and thereupon alleges that Plaintiff has been damaged by such aforementioned negligence in amounts that are subject to proof.

153.     In light of the above, Plaintiff requests damages from Harvey and Mikel in an amount that is subject to proof.

**FIFTEENTH CLAIM FOR RELIEF**
**(Violation of California Business and Professions Code § 17200)**
**as Against Harvey, Mikel and BRC)**

154.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs as if fully set out at length herein.

155.     Plaintiff is informed and believes and thereupon alleges that Harvey's, Mikel's

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 28**

1   and BRC's actions as alleged above constitute unfair trade practices and unfair methods of

2   competition in violation of California Business and Professions Code § 17200.

3        156.    As a direct, proximate and foreseeable result of such defendants' violations of

4   California Business and Professions Code § 17200, Plaintiff has been injured in amounts that can

5   be addressed under the court's pendant jurisdiction.

6        157.    As a direct, proximate and foreseeable result of such defendants' violations of

7   California Business and Professions Code § 17200, Plaintiff is entitled to treble his actual

8   damages and disgorgement of Harvey's, Mikel's and BRC's ill gotten gains, pre- and post

9   judgment interest at the legal rate, reasonable attorneys' fees and costs, and any and all penalties

10   permitted pursuant to the laws of the States of California and the United States.

11        158.    Harvey, Mikel and BRC committed the acts alleged herein fraudulently,

12   oppressively and with an improper and evil motive amounting to malice with the wrongful

13   intention of injuring Plaintiff.  Alternatively, those defendants' despicable conduct was carried

14   out in conscious disregard of Plaintiff's rights.  Therefore, as a direct, proximate and foreseeable

15   result of those defendants' despicable conduct, Plaintiff also is entitled to recover punitive and

16   exemplary damages in the maximum amount permitted by law and Due Process.

17        **WHEREFORE, PLAINTIFF PRAYS** for relief as follows:

18        (1)    That judgment be entered in favor of Plaintiff and against all defendants;

19        (2)    That the Court declare that the Dissolution Agreement and Operating Agreement

20   are void *ab initio*;

21        (3)    That the Court order the dissolution of Paper Man LLC or, in the alternative, for

22   the reformation of Paper Man LLC that restores Plaintiff's full one-third undivided equal interest

23   in the '470 Burning Man Mark and revokes Harvey's voting status and right to manage Paper

24   Man or participate in its operations;

25        (4)    That the Court declare that Plaintiff, Harvey and Mikel comprise and have

26   comprised a general partnership that held and controlled the trademarks, service marks and trade

27   dress  that were distributed pursuant to Article 10 of the Partnership Agreement upon the

28   dissolution of the Partnership;

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 29**

1    (5)    That the Court enjoin Harvey from voting in, managing, controlling or in any way

2    participating in the decision making process of the aforementioned general partnership.

3    (6)    That the Court declare that the marks "Burning Man," Decompression," "Black

4    Rock City" and "Flambé Lounge," the Burning Man event trade dress and Burning Man

5    distinctive logo(s) are owned in one-third undivided equal interests by Plaintiff, Harvey and

6    Mikel and controlled in their entirety by the aforementioned general partnership;

7    (7)    That the Court Order and direct the PTO to cancel the '513, '064, '068 and '469

8    registrations or, in the alternative, to record the assignment of such registrations from BRC to the

9    aforementioned general partnership;

10    (8)    For an order permanently enjoining BRC from using the "Burning Man,"

11    Decompression," "Black Rock City" and "Flambé Lounge" marks, the Burning Man event trade

12    dress and the Burning Man distinctive logo(s) without prior written consent and payment of a

13    fair market license fee;

14    (9)    For an order for accountings by independent certified public accountants from

15    Harvey, Mikel, Paper Man and BRC for all years from 1996 to present, with costs and fees

16    associated with the accountings paid by the defendants;

17    (10)    For Plaintiff's share of the fair market licensing fees from Harvey, Mikel, Paper

18    Man and BRC for all past uncompensated and under-compensated uses of the "Burning Man,"

19    "Decompression," "Black Rock City" and "Flambé Lounge" marks, the Burning Man event

20    dress and the Burning Man distinctive logo(s);

21    (11)    For all monetary damages directly and proximately caused by Harvey, Mikel,

22    Paper Man and BRC to Plaintiff by way of the defendants' wrongful acts as set out above,

23    trebled pursuant to California Business and Professions Code § 17200.

24    (12)    For punitive and exemplary damages in the maximum amount permitted under the

25    laws and Constitution of the United States;

26    (13)    For Plaintiff's attorneys' fees and costs; and

27    (14)    For all other relief the Court deems just and proper.

28    **Dated:**  January 9, 2007

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

COMPLAINT − Page 30

Complaint final.jlaw.doc

1

Respectfully submitted,

2

**I Braun Degenshein
Attorney at Law**

3

/s/ I Braun Degenshein

4

_____
By:  I Braun Degenshein

5

Attorney for Plaintiff

6

7

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of

8

Civil Procedure.

9

**Dated:**  January 9, 2007

10

/s/ I Braun Degenshein

11

_____
I Braun Degenshein

12

Attorney for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**COMPLAINT − Page 31**

Complaint final.jlaw.doc

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report. Signature, Attorney of Record

**Dated:**  January 9, 2007

/s/ I Braun Degenshein

_____

I Braun Degenshein
Attorney for Plaintiff

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

Complaint final.jlaw.doc

**COMPLAINT − Page 32**