IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LAW,<br><br>    Plaintiff,<br><br>  v.<br><br>LARRY HARVEY, MICHAEL MIKEL, PAPER MAN LLC., and BLACK ROCK CITY, LLC.,<br><br>    Defendants.<br>                                            / | No. C 07-00134 WHA<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISQUALIFY COUNSEL AND DENYING AS MOOT PLAINTIFF'S MOTION FOR SANCTIONS** |

**INTRODUCTION**

      In this trademark-infringement action, defendant Michael Mikel moves to disqualify plaintiff John Law's attorney, I. Braun Degenshein. Plaintiff and defendants Mikel and Larry Harvey were once in a partnership to which Degenshein served as counsel. Parties disagree as to the degree of Degenshein's involvement. By his own statements, however, he is now representing one former partner against the other two. Additionally, Degenshein could well be called to serve as a witness in this action because he advised the partnership and Mikel on matters related to this very action. This motion has been brought early on when there is ample time to retain new counsel without hardship. Accordingly, defendant's motion is **GRANTED**, and Degenshein and any of his partners and associates are disqualified from representing Law in this action. Plaintiff also filed a motion for sanctions under Rule 11 against Mikel. Because Degenshein has been disqualified as counsel, that motion is **DENIED AS MOOT**. Law is ordered

1  to obtain successor counsel and to file a notice of appearance of successor counsel within 30
2  days of this order.  All motions currently pending in this action are stayed until after the
3  appearance of successor counsel.

**STATEMENT**

Harvey, Law and Mikel were involved with an art festival known as Burning Man.  The festival had its roots in "spontaneous art-party happenings" featuring the burning of sculptures, including tall wooden stick figures, during the summer of 1986 at San Francisco's Baker Beach (Compl. ¶¶ 26–28).  Law's association with the events began in 1987 through his membership in the Caucophony Society, an art collective self-described as "a network of free spirits united in the pursuit of experiences beyond the pale of mainstream society" (*id*. at ¶ 7).  The events held at Baker Beach grew through 1990, at which time police successfully prevented partygoers from burning a forty-foot wooden stick figure (*id*. at ¶ 35).

Thereafter, the festival was moved to the Nevada high desert in conjunction with a trip organized by the Cacophony Society (*id*. at ¶¶ 37–40).  Attendance grew steadily over the next few years.  Law, Harvey and Mikel eventually thought it wise to create a formal business arrangement to run the festival.  On August 15, 1994, they entered into a general partnership agreement forming an entity known as Burning Man to run the festival and conduct business related to its activities (*id*. at Exh. A).  Law, Harvey and Mikel applied for a service mark registration for the name "Burning Man" and a stylized stick figure logo with the United States Patent and Trademark Office on the same day (*id*. at ¶ 50).  The registration issued on September 12, 1995.

Parties disagree as to the involvement of plaintiff's current attorney, I. Braun Degenshein, with the partnership.  Mikel declares that on deciding to formalize an agreement, John Law suggested going to Degenshein for legal advice (Mikel Decl. ¶ 5–6).  Mikel also declares that he gave Degenshein information about his personal and financial circumstances, and that it was Mikel's understanding that Degenshein was representing him in an individual capacity (*ibid.*).  Mikel also contends that Degenshein prepared the partnership agreement. Degenshein gave advice to the partnership about how to protect the Burning Man marks (*id*. at

2

¶ 16). The partners consulted Degenshein regarding their respective rights under the partnership agreement as well.

Degenshein disagrees, and declares that his first involvement with Burning Man was when he attended the festival in 1994 (Degenshein Decl. ¶ 3). He contends that he first met Mikel and Harvey in 1995, when they were discussing an agreement regarding video rights for events at the festival (*id.* at ¶ 5). He declares that he represented the partnership in all aspects of partnership business, but did not give a date certain on which his representation began. He denies having prepared the partnership agreement. In support, he explains that it would have been impossible for him to have done so because it was printed using a kind of printer never owned by him (*id.* at ¶ 8). He does, however, admit that he was the partnership's attorney (*id.* at ¶ 10). Degenshein negotiated a publishing agreement with Hardwired for the partnership and responded to the partnership's concerns about the use of the Burning Man name and marks (*id.* at ¶ 17). The partnership also consulted him on matters related to insurance for the festival.

Some time around 1996, relations between the partners broke down because of differences of opinion on the direction of the festival. Law publicly stated that he no longer wished to be associated with the Burning Man festival in the spring of 1997 (Mikel Decl. ¶ 20). Parties entered into an agreement to dissolve the partnership on July 22, 1997 (*id.* at Exh. B). The agreement addressed licensing fees for and use of the Burning Man mark. It also addressed parties' respective rights going forward.

Mikel declares, and Degenshein does not dispute, that Degenshein represented the partnership up to its dissolution (*id.* at ¶ 21). Degenshein did, however, advise the individual partners that it would be wise to retain their own counsel once it was clear the partnership would dissolve. Larry Harvey retained Carol Morrell as his personal counsel. She raised some issues regarding the use and ownership of the Burning Man marks (*ibid.*). Mikel sent a letter to this effect to Degenshein in March of 1997 (*id.* at Exh. B). By the time the partnership dissolved, all partners were represented by separate counsel (*id.* at ¶ 22).

Shortly thereafter on July 24, 1997, Harvey, Mikel and Law executed the Paper Man operating agreement to create defendant Paper Man LLC, a California limited liability company

3

(*id*. at Exh. C). The three transferred their ownership interests in the Burning Man marks to Paper Man LLC. Under the agreement, Law's ownership interest declined over time because he no longer wanted to be associated with the festival. Some time after that, Harvey and Mikel formed defendant Black Rock City LLC, another company to run the Burning Man festival and other associated events (*id*. at ¶ 63). Plaintiff is still a member of Paper Man and believes that Paper Man did not receive licensing revenue from the Burning Man mark to which it was entitled. Instead, so Law contends, revenue was siphoned off to Mikel and Harvey.

Plaintiff filed this action on January 9, 2007. The complaint alleges claims for declaratory relief, cancellation of trademark registrations, trademark infringement, unfair competition, false advertising, unfair business practices, fraud, breach of fiduciary duty, judicial dissolution, conversion, breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, and negligence. The complaint contains numerous allegations related to the partnership agreement, the dissolution agreement, and the Burning Man marks. Mikel filed this motion on March 12, 2007, the same day defendants filed their answer.

**ANALYSIS**

Mikel moves to disqualify Degenshein from representing plaintiff because of Degenshein's former representation of the partnership. California State Bar Rule of Professional Conduct 3-310(E) prohibits an attorney from accepting, absent informed written consent of a client or former client, "employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."[*]

A substantial relationship between two matters exists "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in [the] later, adverse represenatation." *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980). *See also*

---

[*] Civil Local Rule 11-3(a) and the commentary thereto require attorneys practicing before this Court to comply with "the standards of professional conduct required of members of the State Bar of California," as articulated in the State Bar Acts, the Rules of Professional Conduct of the State Bar of California, and the decisions of California courts.

4

*H.R. Ahmanson & Co. v. Salomon Brothers, Inc.*, 280 Cal. Rptr. 614, 619 (Cal. Ct. App. 1991) (holding that, under the test articulated in *Global Van Lines, Inc. v. Superior Court*, 192 Cal. Rptr. 609 (Cal. Ct. App. 1983), a substantial relationship exists if "confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation"). Where a substantial relationship is demonstrated, an attorney's access to confidential information is presumed, and disqualification of the attorney is required. *Flatt v. Superior Court*, 885 P.2d 950, 954 (Cal. 1994). The duty to protect a client's confidences extends beyond the end of representation. *People v. SpeeDee Oil Change Sys., Inc.*, 980 P.2d 371, 379–80 (Cal. 1999).

Mikel argues that Degenshein's representation of the partnership creates a conflict of interest because he is now adverse to his former client. Mikel contends that Degenshein was representing him and the other partners in their individual capacities, while Degenshein contends that he was representing only the partnership. An attorney for the partnership represents all partners in matters of partnership business. *Wortham & Van Liew v. Superior Court*, 188 Cal. App. 3d 927, 932 (Cal. 1987). An attorney-client relationship may also be formed between counsel for the partnership and an individual partner. The following factors are considered when determining whether an attorney representing a partnership had attorney-client relationships with the individual partners: (1) the size of the partnership; (2) the nature and scope of the attorney's engagement; (3) the kind and extent of contacts between the attorney and the individual partner; (4) the attorney's access to financial information relating to the individual partner's interests; and (5) whether there was an implied agreement not to accept other representations adverse to the individual partner's interests. *Johnson v. Superior Court*, 38 Cal. App. 4th 463, 476–77 (Cal. Ct. App. 1995).

Here, the partnership consisted of only three people, Law, Harvey and Mikel. On the second factor, Degenshein has admitted that he represented the partnership in all aspects of partnership business. The partnership and its individual members had no other counsel until the partnership dissolved. For the third factor, Degenshein argues that he had very limited contacts with Mikel, however, Degenshein's own declaration shows that this was not necessarily the

5

1 case. It appears that they discussed partnership business on several occasions. Degenshein's
2 access to Mikel's financial information is less clear. Mikel declares that he disclosed
3 information regarding his financial and personal circumstances during discussions with
4 Degenshein. Degenshein denies this. Thus, this factor militates slightly against finding an
5 individual attorney-client relationship. Finally, at least for purposes of this motion, Mikel states
6 that it was his understanding that Degenshein was representing both his and the partnership's
7 interests. Degenshein continued to represent the partnership after Law had publicly repudiated
8 his association with the festival. At the very least, Mikel understood that Degenshein would not
9 switch sides and become adverse to him. Even based on Degenshein's own statements, the
10 factors indicate that he was representing the partners in their individual capacities.

11 Plaintiff cites *Responsible Citizens v. Superior Court*, 16 Cal. App. 4th 1717, 1732–33
12 (Cal. Ct. App. 1993), for the proposition that an attorney does not automatically represent all
13 partners in their individual capacities when he represents the partnership. Representation
14 depends on whether there was an implicit or explicit agreement for representation. This is true.
15 As *Responsible Citizens* holds, however, the inquiry is not so simple as determining whether
16 there was a written representation agreement between the individual partner and the attorney, it
17 is determined on a case-by-case basis. Here, under the factors laid out in *Johnson*, this order
18 has determined that Degenshein was representing Mikel and the partners in their individual
19 capacities, so the existence of an express agreement is not required to show an individual
20 attorney-client relationship.

21 The question now is whether Degenshein's prior representation of the partnership and
22 Mikel was substantially related to the instant action. Here, Law has alleged that he is entitled to
23 licensing fees from the Burning Man marks under the partnership and dissolution agreements.
24 Degenshein advised the partners concerning the use and protection of the Burning Man name
25 and marks. For instance, he declares that he was consulted when a reference to the festival was
26 found on the Miller Lite website. He also negotiated media agreements for Burning Man. In
27 handling such matters, it is difficult to believe that he did not receive confidential information
28 about the partners' respective positions on how to protect the Burning Man marks, how they did

6

1  and did not want the name and marks to be used, and their goals and strategy in licensing.
2  Going forward in this litigation, Degenshein likely has insight into the other side's strategies in
3  this dispute which can only advantage his current client and harm the partnership's other
4  members.

5      Degenshein argues that he represented the partnership as a whole, not its individual
6  members, so he was obliged to disclose all information he may have learned to each of them.
7  That is, he could not keep information told to him by any one partner confidential because he
8  had a duty to disclose it to all of them. Under California Evidence Code Section 962, joint
9  clients cannot claim attorney-client privilege as to any individual client's communications to the
10 attorney. Counsel for joint clients are obligated to disclose all matters concerning the
11 representation to all clients. *Wortham & Van Liew*, 188 Cal. App. 3d at 931–932.

12     This argument fails for several reasons. *First*, the duty of confidentiality is broader in
13 scope than the attorney-client evidentiary privilege. *See Cornish v. Superior Court*,
14 209 Cal. App. 3d 467, 475–77 (Cal Ct. App. 1985). *Second*, Mikel has established that
15 Degenshein was representing the partners in their individual capacities as well under the test
16 laid out in *Johnson*. Also, Degenshein and Mikel disagree on this point, but Degenshein was
17 the only attorney Mikel had consulted until dissolution of the partnership. *Third*, Degenshein
18 overlooks the fact that his past representation of the partnership and his current representation
19 of Law concern the same issues. Because of this Degenshein is presumed to have learned
20 confidential information.

21     Finally, Degenshein could be called upon to serve as a witness in this action. Even if he
22 did not draft the partnership agreement, he advised the partners as to their rights under it, he
23 helped them use and control their intellectual property, and he advised them at least up to the
24 partnership's dissolution. This action likely hinges on the parties' rights under the partnership
25 agreement and the use of the partnership's intellectual property. Based only on his own
26 statements, Degenshein would have a great deal of information on both of those subjects.
27 Accordingly, he cannot be allowed to represent Law in this action. Mikel's motion to
28 disqualify counsel is **GRANTED**.

7

In his opposition, plaintiff requests that sanctions be levied against Mikel because he cited inapposite authority in his brief and perjured himself in his declaration. Additionally, plaintiff filed a motion for sanctions under Rule 11 on April 17, 2007. Plaintiff and defendants presented different versions of some facts for this motion, but plaintiff has not shown that Mikel's declaration was false. Furthermore, Mikel's motion to disqualify Degenshein as Law's counsel has been granted based on Degenshein's own statements regarding his representation of the partnership. Accordingly, plaintiff's motion for sanctions under Rule 11 is **DENIED AS MOOT**. The hearing scheduled for May 24, 2007, at 8:00 a.m. on that motion is hereby **VACATED**.

## CONCLUSION

For all of the above-stated reasons, defendant Mikel's motion to disqualify counsel is **GRANTED**. I. Braun Degenshein and any of his associates and partners are ordered to withdraw from representing plaintiff in this action. Plaintiff's motion for sanction is **DENIED AS MOOT**, and the hearing on that motion is hereby **VACATED**.

Plaintiff is hereby ordered to obtain successor counsel who is to file a notice of appearance within **30 DAYS** of this order or, in the alternative, plaintiff is ordered to file a notice that he intends to prosecute this matter *pro se*. Absent a written appearance by successor counsel or plaintiff within the time specified, an order to show cause why this action should not be dismissed will issue.

Degenshein is hereby ordered to assemble and preserve any and all notes, correspondence, memoranda and all other materials and documents derived from or relating to any prior legal services to the former partnership of Mikel, Harvey and Law, or any of the partners individually, received or created between the initial contact received from any of them through the time of the formal dissolution of that partnership on July 22, 1997. Furthermore, Degenshein is hereby ordered to have no further communications with plaintiff or any successor attorney on any issue related to this action, except as conducted in formal discovery proceedings.

8

All pending motions are to be taken off calendar. Any scheduled hearings on pending motions are **VACATED**. Motions shall be renoticed after the appearance of Law's successor counsel.

**IT IS SO ORDERED.**

Dated: May 1, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE