United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN LAW,

    Plaintiff,

v.

LARRY HARVEY, MICHAEL MIKEL, PAPER MAN, LLC, and BLACK ROCK CITY, LLC,

    Defendants.

No. C 07-00134 WHA

**ORDER GRANTING MOTIONS TO DISMISS**

## INTRODUCTION

In this action for trademark infringement and other claims involving the Burning Man events, defendants Larry Harvey and Black Rock City, LLC, both move to dismiss certain of plaintiff's claims. BRC has shown that plaintiff John Law has not alleged facts that would indicate that he has standing to bring claims for cancellation of certain marks and for unfair competition and false advertising under the Lanham Act. Harvey has shown that certain of plaintiff's claims are actually derivative and must be asserted on behalf of the limited liability company Paper Man LLC. Those claims must be dismissed for failure to comply with the procedural requirements of bringing a derivative action. Accordingly, defendants' motions to dismiss are **GRANTED**. Plaintiff will be allowed to file a motion for leave to file an amended complaint.

**STATEMENT**

The Burning Man festival had its roots in "spontaneous art-party happenings" featuring the burning of sculptures, including tall wooden stick figures, during the summer of 1986 at San Francisco's Baker Beach (Compl. ¶¶ 26–28). Plaintiff John Law and defendants Larry Harvey and Michael Mikel were involved with the art festival. Law's association with the events began in 1987 through his membership in the Caucophony Society, an art collective self-described as "a network of free spirits united in the pursuit of experiences beyond the pale of mainstream society" (*id*. at ¶ 7). The events held at Baker Beach grew through 1990, at which time police successfully prevented partygoers from burning a forty-foot wooden stick figure (*id*. at ¶ 35).

Thereafter, the festival was moved to the Nevada high desert in conjunction with a trip organized by the Cacophony Society (*id*. at ¶¶ 37–40). Attendance grew steadily over the next few years. Law, Harvey and Mikel eventually thought it wise to create a formal business arrangement to run the festival. On August 15, 1994, they entered into a general partnership agreement forming an entity known as Burning Man to run the festival and conduct business related to its activities (*id*. at Exh. A). Law, Harvey and Mikel applied for a service mark registration for the name "Burning Man" and a stylized stick figure logo with the United States Patent and Trademark Office on the same day (*id*. at ¶ 50). The registration issued on September 12, 1995, under Registration No. 1,918,470.

An accident occurred at the festival in 1996, injuring three people (*id*. at Exh. B, ¶ F). Shortly thereafter, Law gave notice of his desire to withdraw from the partnership (*id*. at ¶ G). The partners, with the assistance of counsel, prepared and executed an Agreement of Dissolution dated July 22, 1997 (Compl. ¶ 54, Exh. B). It provided for the creation of a new entity to continue licensing the Burning Man mark, ultimately called Paper Man, LLC (*id*. at Exh. B, ¶ 1). Specifically, it stated that "[i]t is the intention of the Parties that the Licensing Entity license the use of the Service Mark to an entity or entities which will continue the annual production of the [Burning Man] festival" (*id*. at Exh. B, ¶ 5). The parties agreed that John Law would no longer participate fully in producing the annual festival (*id*. at Exh. B, ¶ 9).

Pursuant to the dissolution agreement, Law, Harvey, and Mikel formed Paper Man LLC, a California limited liability company, around July 22, 2007 (Compl. ¶ 58, Exh. C). Each partner assigned all of his right, title and interest in the Burning Man mark to Paper Man (*id*. at ¶¶ 58, 60). Paper Man's principal business was to be licensing the mark, with requirements for any licensor to have certain quality controls, including sufficient insurance (*id*. at Exh. C, ¶ 2.5). Licenses were to be granted in the sole discretion of the company's members. The agreement also provided for a declining interest in the company for those members who were not fully participating in the production of the Burning Man festival (*id*. at ¶ 5.5). This included plaintiff as he had expressed a desire not to participate in the festival.

Plaintiff alleges that Paper Man never reported licensing revenues in amounts greater then the festival's operating expenses (*id*. at ¶ 66). Plaintiff also alleges that Harvey and Mikel became deadlocked regarding licensing of the mark in the last year, and for the first time, the service mark was used without entering into a licensing agreement with Paper Man (*id*. at ¶ 67). According to Law, Harvey repudiated the dissolution agreement and claimed the right to use the Burning Man mark without a license (*id*. at ¶ 70).

Certain other marks are at issue in this action. Law alleges that the festival developed other marks between 1990 and 1996, including "Black Rock City," "Flambé Lounge," and "Decompression," the trade dress of the festival itself, and the trade dress of the neon-lit stylized wooden man figure (*id*. at ¶ 72). BRC filed applications to register three marks. A registration issued for "Decompression" on December 30, 2003, under Registration No. 2,800,513, claiming a first-use date of October 18, 1997 (*id*. at ¶ 77). A registration for "Flambé Lounge" issued on February 10, 2004, under Registration No. 2,813,064, claiming a first-use date of January 1, 1998 (*id*. at ¶ 81). A registration for "Black Rock City" issued on June 21, 2005, under Registration No. 2,963,068, claiming a first-use date of September 1, 1995 (*id*. at ¶ 85). He asserts that these intellectual properties were assets of the Burning Man partnership when it dissolved (*id*. at ¶ 73). Law also claims that because multiple entities claim ownership of these three marks, they are now in the public domain.

3

This action was filed on January 9, 2007. Plaintiff's complaint alleges claims for: (1) cancellation of trademark registrations against BRC; (2) cancellation of trademark registrations against Mikel; (3) unfair competition against BRC; (4) unfair competition against Mikel and Harvey; (5) fraud against Harvey; (6) unfair competition and false advertising under the Lanham Act against BRC, Harvey, and Mikel; (7) unfair competition and false advertising under California law against BRC, Harvey, and Mikel; (8) declaratory relief from contract against Harvey and Mikel; (9) judicial dissolution of Paper Man LLC against Harvey, Mikel, and Paper Man; (10) breach of fiduciary duty against Harvey and Mikel; (11) breach of contract against Harvey, Mikel, and Paper Man; (12) breach of implied covenant of good faith and fair dealing against Harvey, Mikel, and Paper Man; (13) conversion against Harvey, Mikel, and BRC; (14) negligent misrepresentation against Harvey and Mikel; (15) negligence against Harvey and Mikel; and (16) violation of California Business and Professions Code § 17200 against Harvey, Mikel, and BRC. The complaint asks for monetary relief, as well as declaratory and injunctive relief.

Defendants filed a motion to disqualify plaintiff's counsel on March 14, 2007. Shortly thereafter, defendants filed their motions to dismiss on March 30, 2007. The motion to disqualify counsel was granted on May 1, 2007, and plaintiff was given time to retain new counsel. Plaintiff filed an emergency appeal of the disqualification order with the Court of Appeals for the Ninth Circuit, but the petition was denied. After plaintiff retained new counsel, plaintiff was given an opportunity to file an additional response to defendants' motions to dismiss. Defendants were also allowed leave to file a supplemental reply brief.

**ANALYSIS**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ____, 127 S. Ct. 1955, 1964–65 (May 21, 2007). "All allegations of material fact are taken as true

4

and construed in the light most favorable to plaintiff. However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citations omitted).

Both defendant BRC and defendant Harvey have filed motions to dismiss. BRC moves to dismiss Law's first, third, sixth, seventh, thirteenth, and sixteenth claims. Harvey moves to dismiss Law's fourth, sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, fifteenth, and sixteenth claims. In his opposition, plaintiff expressly abandoned his claim for conversion as intellectual property cannot be the subject of a conversion.

### 1. BLACK ROCK CITY'S MOTION.

Defendant Black Rock City moves to dismiss Law's first, third, sixth, seventh, thirteenth, and sixteenth claims. These involve cancellation of the three marks, unfair competition and false advertising under the Lanham Act, and unfair competition and false advertising under California law. As stated above, plaintiff's thirteenth claim for conversion is dismissed.

#### A. Cancellation Under 15 U.S.C. 1119.

Law's first claim is for cancellation of the marks Decompression, Flambé Lounge, and Black Rock City, all registered to defendant BRC. Under 15 U.S.C. 1064, "a petition to cancel a registration of a mark, stating the grounds relied upon may . . . be filed as follows by any person who believes that he is or will be damaged . . . by the registration of a mark . . . ." To sustain a petition for cancellation, a petitioner must show both standing and valid grounds for cancellation. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (Fed. Cir. 2000). BRC argues that Law has not pleaded that he was harmed by the registration of those marks, so he cannot sustain a claim to cancel them.

"Standing is the more liberal of the two elements and requires only that a party believe that it is likely to be damaged by the registration." *Cunningham*, 222 F.3d at 945. A belief that damage is likely can be shown by a pecuniary interest. *Ibid*. Showing actual damages is not necessary; "[t]he Lanham Act requires only that the cancellation petitioner plead and prove facts showing a real interest in the proceeding in order to establish standing." *Star-kist Foods,*

5

*Inc. v. P.J. Rhodes & Co.*, 735 F.2d 346, 349 (9th Cir. 1984) (citing *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1092 (Fed. Cir. 1984)).  A petitioner, however, needs to show a real and rational basis for his belief that he will suffer damage because of registration sought to be cancelled because of some actual commercial or pecuniary interest. *Ibid*.

To demonstrate standing, Law pleads that "the festival," referring to the Burning Man festival in general, developed certain unique marks over the years, including the subjects of three registrations that he seeks to cancel.  Because of this, the three marks were assets of the Burning Man partnership.  Law alleges that when the partnership dissolved, he individually retained some kind of ownership interest in the marks under one of three theories.  First, since the three marks were not specifically mentioned by the dissolution agreement, they were distributed jointly among Law, Mikel and Harvey.  Second, a de facto partnership arose between Law, Mikel, and Harvey that plaintiff claims was created by operation of law for the continued protection of the marks.  Finally, plaintiff asserts that the marks were licensed to BRC for management in contravention of the Paper Man operating agreement (Compl. ¶ 61).

Law's problem, as defendants point out, is that he does not allege that the Burning Man partnership ever actually developed or used the marks.  When the complaint refers to the three marks, it always states that they were developed "in relation to" the festival (Compl. ¶¶ 72, 76, 82, 86).  Law certainly argues in his briefs that he has alleged that the Burning Man partnership used the marks, but such allegations are not present on the face of the complaint.

Similarly, Law's recourse to the liberal pleading standards of Rule 8(a) are unavailing. In essence, he alleges that the Burning Man partnership put on the festival, and the three marks were developed at or surrounding the festival.  This could mean that the partnership developed or used the marks, but on these facts, it is equally likely that someone else may have developed and used the marks.  Indeed, Law alleges that the festival's attendance grew from 80 people in 1990 to 8,000 people in 1996, around the time the Burning Man partnership dissolved.  Law protests that he alleged on belief that the partnership owned the marks, but this allegation is far too conclusory given the murkiness of the marks' origins.  Even taking this conclusory assertion

6

1  as true, Law still does not allege that the Burning Man partnership *itself* developed or used the
2  marks. The Ninth Circuit has held that "[t]o acquire ownership of a trademark it is not enough
3  to have invented the mark first or even to have registered it first; the party claiming ownership
4  must have been the first to actually use the mark in the sale of goods or services." *Sengoku*
5  *Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1999). Accordingly, Law has not
6  pleaded that the Burning Man partnership developed or used the marks, so he has not pleaded
7  any interest in them.

8  In turn, Law cannot show that he now has an interest in the three marks sufficient to
9  support standing on his cancellation claims. Plaintiff does point out that standing does not
10 require that the petitioner have ownership or exclusive control of the mark, but only that he
11 show that the petitioner would be damaged by the registration. *Wilson v. Delaunay*, 245 F.2d
12 877, 879 (C.C.P.A. 1957). Here, plaintiff still has not alleged how he would be damaged by the
13 mark. Indeed, he has not pleaded facts sufficient to distinguish himself from the "mere
14 intermeddler" with no real interest in the registrations. *Lipton Indus., Inc. v. Ralston Purina,*
15 *Co.*, 670 F.2d 1024, 1028 (C.C.P.A. 1982). Each of his three theories rely on the Burning Man
16 partnership's having used and owned the marks. Since he has failed in pleading those facts,
17 each of his three theories collapses. Law may be able to remedy this fault in his complaint
18 through repleading provided he can do so in good faith and anchored in facts. Accordingly,
19 defendant BRC's motion to dismiss plaintiff's claim for cancellation is **DENIED**. Because
20 plaintiff has not met this threshold for standing to assert this claim, this order does not address
21 defendants' other arguments concerning his alleged injury from the registration, whether a
22 claim for cancellation can exist independently of other claims, and abandonment. Plaintiff,
23 however, should be mindful of those arguments in seeking leave to amend.

24 **B.  Unfair Competition and False Advertising Under 15 U.S.C. 1125 (a).**
25 Law's third claim and sixth claim are for unfair competition and false advertising under
26 35 U.S.C. 1125(a). These claims also stem from the three marks registered to BRC — Black
27 Rock City, Decompression, and Flambé Lounge. These claims also allege that BRC has used
28 trade dress including the neon-lit stick-figure and stylized logo, without permission. Law

7

claims that BRC's use of the marks and the trade dress has harmed the de facto partnership that was formed after the dissolution of the Burning Man partnership.

"[A]ny person who believes that he or she is likely to be damaged" may bring a claim for infringment or false designation of origin under Section 43(a) of the Lanham Act. 15 U.S.C. 1125(a). Here, Law runs into much the same problem that he had in his claim for cancellation of the marks. For false advertising, plaintiff must allege both a commercial injury based on a representation about a product and that the representation was harmful to his ability to compete with defendant. *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995). Again, plaintiff relies on his arguments that the Burning Man partnership had prior use and ownership of these marks. Still he has not pleaded that this was the case, as described above. In addition, plaintiff puts forth no other theory of how he could be injured here. He does not allege that he competes in commerce with defendants or that they have disparaged any products of his own in any manner. Accordingly, BRC's motion to dismiss these claims is **GRANTED**.

### C. Unfair Competition and False Advertising Under California Law.

Plaintiff pleads his seventh and thirteenth claims under Calfornia Business and Professions Code § 17200. Under California law, "any person who has suffered injury in fact and has lost money or property" may bring a claim for unfair competition and false advertising. Cal. Bus. & Prof. Code § 17204. As with plaintiff's other claims stemming from the use of the trademarks, Law has not shown injury from any actions he claims that BRC has taken. He alleges that he has been deprived of revenue from the licensing of the marks by BRC, but Law has never pleaded any entitlement to licensing fees from the marks in the first place. Moreover, he does not allege that he was in any kind of competition with BRC. Accordingly, he has not pleaded that he was injured by BRC's actions because he has not pleaded facts that would show any right to the marks.

For a claim for false advertising, "plaintiff [must have] actually relied on the false or misleading misrepresentation or advertisement in entering into the transaction in issue." *Pfizer, Inc. v. Superior Court*, 141 Cal. App. 4th 290, 296 (2006). Here, Law alleges at most that other people saw or relied on misrepresentations regarding the festival's origin or

sponsorship, not that he himself did so. Indeed, plaintiff alleged that he has not attended the festival since 1997. Accordingly, these claims must be dismissed. Defendant's motion is **GRANTED**.

### 2. HARVEY'S MOTION.

Defendant Larry Harvey moves to dismiss a number of Law's claims because they are actually derivative claims brought on behalf of Paper Man, a limited liability corporation. Harvey also moves to dismiss Law's fraud and negligent misrepresentation claims because his allegations do not meet the higher pleading standards for fraud claims under Rule 9(b).

#### A. Standing Under Corporations Code.

Under California law, before asserting claims on behalf of a limited liability corporation, the plaintiff must allege:

> with particularity plaintiff's efforts to secure from the managers the action plaintiff desires or the reasons for not making that effort, and alleges further that the plaintiff has either informed the limited liability company or the managers in writing of the ultimate facts of each cause of action against each defendant or delivered to the limited liability company or the managers a true copy of the complaint that plaintiff proposes to file.

Cal. Corp. Code §17501(b)(2). Where derivative claims are asserted, the statute requires both that plaintiff plead demand or that demand was excused, and that he communicated the proposed allegations to the company. The demand requirement applies specifically to limited liability companies under the above-cited statute. *See Paclink Commc'ns, Intern. Inc. v. Superior Court*, 131 Cal. App. 4th 958, 963–64 (2001). This requirement applies equally for closely-held corporations. *Nelson v. Anderson*, 72 Cal. App. 4th 111, 126–27 (1999).

Harvey contends that Law's claims for trademark cancellation, unfair competition under the Lanham Act, state-law unfair competition, declaratory relief from contract, breach of fiduciary duty, breach of contract, breach of implied covenant of good fair and fair dealing, conversion, negligence, and violation of Section 17200 are actually derivative claims. As such, Law needs to either make a demand on the company or plead why doing so was unnecessary. Law argues that these are not derivative claims because the injury is either personal to him and because he alleges alternate theories of ownership.

9

A claim is derivative where "the gravamen of the complaint is injury to the corporation and to the whole body of its stockholders." *Campbell v. Clark*, 159 Cal. App. 2d 432, 437 (1958). Moreover,

> the action is derivative, *i.e.*, in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets. A stockholder's derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it has suffered as a result of the of the acts of third parties.

*Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 106 (1969). "A cause of action is individual, not derivative, only where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origins in circumstances independent of the plaintiff's status as a shareholder." *Nelson v. Anderson*, 72 Cal. App. 4th 111, 1126–27 (1999).

Law himself admits that the corporation is the one suffering injuries in his opposition by stating "Harvey derived substantial income from his unauthorized licensing to himself in the form of BRC and paid Paper Man nothing" (Opp. at 11). Law also pleads that Mikel and Harvey misappropriated the since-dissolved Burning Man partnership's intellectual property, and that he has suffered damage as a result (Compl. ¶ 105). To the extent that this claim implicates the use of the Burning Man mark, these injuries belong to Paper Man. It, not the individual partners, now owns the Burning Man mark and has owned the mark since 1997. Any licensing fees should have been paid to Paper Man. Under the agreement, it is possible that Law could have received a share of the fees, but as the agreement makes clear, the members must vote to have Paper Man pay out any funds to the members. Here, any injury suffered was to the limited liability company, not to its individual members.

Law contends that these claims are not derivative because the directors of a corporation owe the shareholders a fiduciary duty. If that duty is breached, the shareholders can then bring direct claims against the directors, particularly in a closely-held company. Plaintiff cites a number of decisions in support of this theory. In *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d at

10

1   107–08, a minority shareholder could maintain a direct claim because the resale value of the

2   minority shareholder's shares was diminished because of the directors' actions.  Also, in *Jara*

3   *v. Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1257 (2004), a shareholder in a closely-held

4   company could maintain a direct claim against the board of directors where they had decided

5   to give themselves bonuses to avoid paying out profits to which shareholders were entitled.

6   Plaintiff also cites *Smith v. Tele-Communication, Inc.*, 134 Cal. App. 3d 338 (1982).  In that

7   decision, the sole minority shareholder of a subsidiary could bring a direct claim against the

8   directors where he alleged that the defendants purposefully manipulated tax procedures to

9   benefit the corporations at the expense of the minority shareholder.  *Id.* at 342–344.

10          The common thread to those decisions is that the plaintiffs had some injury that accrued

11   to them individually, not to the company.  Specifically, the defendants breached some specific

12   obligation to pay the plaintiffs, and that harmed the plaintiffs' personal interests.  Here, the

13   gravamen of plaintiff's allegations is that Paper Man was not properly compensated for use of

14   the Burning Man mark, and in turn, he was not paid pursuant to any vote to distribute

15   proceeds.  Plaintiff argues that Paper Man has suffered no harm because it still owns the mark.

16   This is not correct.  Paper Man, not Law, is the entity that is (allegedly) not being properly

17   compensated for licensing.  The Paper Man operating agreement provides that distributions

18   would be made from time to time upon majority vote (Compl. Exh. C, ¶ 4.3).  If Law could

19   allege that he was never paid after such a vote took place, then he could possibly maintain a

20   direct claim.  He does not do so.  Instead, the injuries alleged here accrued to Paper Man, not to

21   Law.

22          These claims are derivative, and Law has not complied with California law regarding

23   derivative actions.  In order to maintain these claims, Law would have to make allegations

24   regarding his efforts to obtain the action he desired from defendants and that he had informed

25   them of this action.  Cal. Corp. Code §17501(b)(2).  Accordingly, defendant's motion to

26   dismiss is **GRANTED**.  Law also contends that his claims regarding the "Decompression,"

27   "Black Rock City," and "Flambé Lounge" marks cannot be derivative because Paper Man

28   never owned those marks.  Those marks, according to Law, either went to the members as joint

11

owners, were owned by a de facto partnership, or were unlawfully licensed to BRC. As described more fully above, Law has not pleaded a sufficient interest in those marks to show that he has standing. Thus, this argument is unavailing.

### C. Rule 9(b).

In complaints that do not allege fraud, plaintiffs need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Allegations of fraud, however, must meet the heightened pleading standards of Rule 9(b). These require allegations of particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 & n.7 (9th Cir. 1994) (en banc).

Law contends that he pleaded the following three misrepresentations in his complaint. *First*, while negotiating the terms of the dissolution agreement, Harvey misrepresented that Paper Man would charge subsequent organizers of the festival fair market license rates for the Burning Man mark, and that those fees would be distributed to the partners according to their interests. *Second*, Harvey misrepresented that he would respect Law's and Mikel's rights to the remaining ownership interests in the Burning Man mark and any other revenue generated therefrom. *Finally*, in 2006, Harvey announced that he had never intended to comply with the terms of the dissolution agreement or the Paper Man operating agreement, and that he had all times believed he had sole ownership of the Burning Man mark. In essence, Law alleges promissory fraud, *i.e.*, that Harvey misrepresented his intention to comply (in the future) with the terms of the dissolution agreement and the Paper Man operating agreement.

Under the parol evidence rule, "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Civ. Proc. Code § 1856(a). An exception is made where parol evidence is used to establish fraud or illegality. Cal. Civ. Proc. Code § 1856(g). Law argues that these statements are used to establish fraud or illegality, that is, Harvey made these statements to induce Law to

12

turn over the Burning Man mark to Paper Man. The fraud or illegality exception, however, does not apply where parol evidence is offered to show a fraudulent promise directly at variance with the terms of the agreement. *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 419 (1989). To qualify under that exception, the statements need to establish some independent fact that establishes invalidity or illegality. *Ibid.*

As to the first statement, Harvey argues that the promise to license the Burning Man mark at fair market rates varies the term in the Paper Man operating agreement that states that the mark will be licensed at the sole discretion of the members. "[I]f the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible." *Banco do Brasil v. Latian, Inc.*, 234 Cal. App. 3d 973, 1010 (1991). Here, Harvey's alleged promise does vary the terms of the agreement. The agreement itself affords the members wide latitude regarding the terms under which they will license the mark; it does not confine them to any particular measure of value. Law contends that the "sole discretion" term must be read in the light of the contractual obligation of good faith and fair dealing, which apparently would bring it under the purview of the agreement. This may be so, but this argument is much better suited to a breach of contract claim.

Turning to the second statement, Harvey allegedly misrepresented that revenues would be distributed among the partners according to their ownership interests. Harvey contends that this varies the term that provides that "distributions shall be made to the Members from time to time upon majority vote of the Members, such distributions to be proportion to their voting interests" (Compl. Exh. C, ¶ 4.3(a)). Here, Harvey correctly points out Law never alleges that this provision was breached. Law does contend that he was entitled to some revenues, but he never alleges that it was under the agreement. Moreover, Law's alleged promise contradicts the voting requirement that is clearly stated by the terms of the contract.

The final statement Law alleges to be fraudulent was that Harvey stated that he intended to respect the rights of the other members of Paper Man LLC. First, this statement is a promise of the sort that cannot form the basis of a fraud claim. Second, this statement is too

13

1 vague to satisfy Rule 9(b)'s standard for pleading with specificity.  A promise to respect the
2 "rights" of the other members could mean any number of things.  In his supplementary
3 opposition, plaintiff makes a quick swipe at arguing that this statement constitutes promissory
4 fraud, but this is simply too indefinite to support such a claim.  Accordingly, plaintiff has failed
5 to plead with particularity admissible statements that would constitute fraud or
6 misrepresentation.  Harvey's motion to dismiss is **GRANTED** as to the claims for fraud and
7 misrepresentation.

## CONCLUSION

For all of the above-stated reasons, defendant Black Rock City's motion to dismiss is **GRANTED**.  Defendant Harvey's motion to dismiss is **GRANTED**.  Plaintiff's first, third, fourth, sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, fifteenth, and sixteenth claims are **DISMISSED**.  Plaintiff's second, ninth, and fourteenth claims for cancellation of trademark registrations again Mikel, judicial dissolution of Paper Man, and negligent misrepresentation survive.

Plaintiff will be allowed to file a motion for leave to file an amended complaint.  The motion should be accompanied by a copy of the proposed pleading and the motion should explain why the proposed amendment remedy problems identified by this order.  The motions should be filed no later than **OCTOBER 25, 2007**.  Defendants' joint opposition will be due no later than **NOVEMBER 1, 2007**.  This round of submissions will, in effect, serve as a dismissal motion as well as for the proposed pleadings, so the oppositions should include all Rule 12-type arguments.  Plaintiff's replies will be due no later than **NOVEMBER 8, 2007**.  The Court will then determine if a hearing is necessary.

**IT IS SO ORDERED.**

Dated: October 11, 2007.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE

14