1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2 |   Including Professional Corporations
    P. CRAIG CARDON, Cal. Bar No. 168646
3 | BRIAN R. BLACKMAN, Cal. Bar No. 196996
    Four Embarcadero Center, 17th Floor
4 | San Francisco, California 94111-4106
    Telephone: (415) 434-9100
5 | Facsimile: (415) 434-3947

6 | TERRY GROSS, Cal. Bar No. 103878
    ADAM C. BELSKY, Cal. Bar No. 147800
7 | MONIQUE ALONSO, Cal. Bar No. 127078
    GROSS & BELSKY LLP
8 | 180 Montgomery Street, Suite 2200
    San Francisco, California 94104
9 | Telephone: (415) 544-0200
    Facsimile: (415) 544-0201

10 |
    Attorneys for Defendant BLACK ROCK CITY, LLC
11 |

12 | ANNETTE HURST (State Bar No. 148738)
    DANIEL K. SLAUGHTER (State Bar No. 136725)
13 | DAVID SIMON (State Bar No. 241501)
    HELLER EHRMAN LLP
14 | 333 Bush Street
    San Francisco, CA 94104-2878
15 | Telephone: +1 (415) 772-6000
    Facsimile: +1 (415) 772-6268
16 |
    Attorneys for Defendant LARRY HARVEY
17 |

18 | UNTIED STATES DISTRICT COURT

19 | NORTHERN DISTRICT OF CALIFORNIA

20 | JOHN LAW,                        Case No. C07-00134 WHA

21 |          Plaintiff,

22 |     v.                          **DEFENDANT LARRY HARVEY'S AND
                                     BLACK ROCK CITY, LLC'S JOINT
23 | LARRY HARVEY, MICHAEL MIKEL,    OPPOSITION TO PLAINTIFF'S MOTION
    PAPER MAN, LLC, and BLACK ROCK   FOR LEAVE TO FILE A FIRST
24 | CITY, LLC,                      AMENDED COMPLAINT**

25 |          Defendants.            Date:      TBD
                                     Time:      TBD
26 |
                                     The Hon. William H. Alsup
27 |

28 |

Case No. C07-00134 WHA
W02-WEST:5BB\400513279.1                    JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                                            LEAVE TO FILE FIRST AMENDED COMPLAINT

1

## TABLE OF CONTENTS

2

Page

3

I.      INTRODUCTION...................................................................................... 1

4

II.     ALLEGATIONS OF THE FIRST AMENDED COMPLAINT .......................... 2

5

III.    ARGUMENT ........................................................................................... 3

6

A.    The FAC Fails To Cure The Defects In The Claims Against BRC – Defects
      Identified In The Order And Those The Court Did Not Reach In Its Prior
      Ruling. ....................................................................................................... 3

7

8

        1.    Plaintiff Does Not Allege Standing To Cancel BRC's Registrations............ 4

9

        2.    The FAC Fails To Allege How The "Partnership" Acquired Any
              Rights. ........................................................................................... 7

10

11

        3.    The FAC Alleges No Assignment From The Partners To The
              "Partnership." ................................................................................. 7

12

13

        4.    Any Rights The Partnership May Have Acquired Were Conclusively
              Abandoned After Dissolution........................................................... 8

14

        5.    The Interest Alleged In The FAC Is Not Affected By BRC's
              Registration. .................................................................................. 9

15

16

        6.    The FAC Established That Upon The Partnership's Dissolution BRC
              Acquired Any Rights It Did Not Previously Have............................... 9

17

18

        7.    Plaintiff's Cancellation Claim Is Barred By Laches.................................... 11

19

        8.    Further Leave To Amend This Cancellation Claim Would Be Futile ........ 12

20

B.    The Unfair Competition and False Advertising Claims Fall With The
      Cancellation Claim And On Separate Grounds....................................... 13

21

22

C.    The FAC Fails To Allege Facts Necessary To Support His Unfair
      Competition and False Advertising Claims Under California State Law. .............. 14

23

24

D.    Plaintiff Has Not Met The Requirements of Calif. Corp. Code § 17501. ............... 15

25

        1.    Plaintiff Can Never Satisfy The Pre-Suit Notice Requirement Of
              Section 17501 In A Lawsuit That Was Filed Before The Notice Was
              Given. ........................................................................................... 16

26

27

        2.    Having Made A Demand, Plaintiff May Not Rely Upon Demand
              Futility. ......................................................................................... 17

28

-i-
                                                JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                                                LEAVE TO FILE FIRST AMENDED COMPLAINT

3.   Plaintiff Has Not Given Sufficient Time For A Response To His Demand, Further Necessitating Dismissal. .................................................... 17

E.   Plaintiff May Not Simultaneously Prosecute Direct And Derivative Claims. ........ 19

F.   Plaintiff's Fraud-Based Claims Fail To Meet The Requirements of Rule 9(b). ......................................................................................................... 21

G.   Plaintiff's FAC Violates The Parol Evidence Rule. ................................. 23

H.   Plaintiff's FAC Continues To Violate Rules 8(a) and 10(b). .................................. 24

III.   CONCLUSION ......................................................................................................... 24

1

TABLE OF AUTHORITIES

2

<u>Federal Cases</u>

3

*Alan Neuman Products, Inc. v. Albright,*
   862 F.2d 1388 (9th Cir. 1989)................................................................. 17

4

*In re Atmel Corp. Derivative Litigation,*
   2007 U.S. Dist. LEXIS 54058 (N.D. Cal. 2007)................................... 12

5

6

*Barrus v. Sylvania,*
   55 F.3d 468 (9th Cir. 1995).................................................................... 9

7

*Bonin v. Calderon,*
   59 F.3d 815 (9th Cir. 1995).................................................................... 8

8

9

*Bridgestone/Firestone Research, Inc. v. Automobile Club De L'Ouest De La France,*
   245 F.3d 1358 (Fed. Cir. 2001)............................................................. 7

10

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.,*
   971 F.2d 272 (9th Cir. 1992).................................................................. 19

11

12

*City Solutions v. Clear Channel Commc'ns, Inc.,*
   365 F.3d 835, Federal Rule of Civil Procedure 9 (b)............................ 17

13

*Cohen v. Beneficial Loan Corp.,*
   337 U.S. 541 (1949)............................................................................ 15

14

15

*Corbus v. Alaska Treadwell Gold Mining Co.,*
   187 U.S. 455 (1903)...................................................................... 13, 14

16

*Cunningham v. Laser Golf Corp.,*
   222 F.3d 943 (9th Cir. 2000)................................................................. 1

17

18

*Daily Income Fund, Inc. v. Fox,*
   464 U.S. 523 (1984)...................................................................... 13, 14

19

*In re Daou System, Inc.,*
   411 F.3d 1006 (9th Cir. 2005)............................................................... 17

20

21

*Davis v. Gulf Oil Corp.,*
   572 F. Supp. 1393 (C.D. Cal. 1983)..................................................... 19

22

*Dial-A-Matress Operating Corp. v. Mattress Madness, Inc.,*
   841 F. Supp. 1339 (E.D. N.Y. 1994).................................................... 4

23

24

*Edwards v. Marin Park, Inc.,*
   356 F.3d 1058 (9th Cir. 2004)............................................................... 17

25

*Fournier v. Reagan,*
   1994 U.S. Dist. LEXIS 10930 (N.D. Cal. 1994)................................... 3

26

27

*Garcia v. Montecrispi Cigar Co.,*
   409 F.2d 14 (5th Cir. 1969)................................................................... 6

28

*Hallstrom v. Tillamook County,*
   844 F.2d 598 (9th Cir. 1987)...................................................................................... 12

*Hawes v. Oakland,*
   104 U.S. 450 (1882) ................................................................................................... 13

*International Order of Job's Daughters v. Lindeburg & Co.,*
   727 F.2d 1087 (Fed. Cir. 1984)................................................................................... 2

*International Telegraph & Telegraph Corp. v. International Mobile Machines Corp.,*
   218 U.S.P.Q. 1024 (T.T.A.B. 1983)............................................................................ 4

*Janas v. McCracken (in Re Silicon Graphics Sec. Litigation),*
   183 F.3d 970 (9th Cir. 1999)...................................................................................... 12

*Kamen v. Kemper Finance Services,*
   500 U.S. 90 (1991) .......................................................................................... 12, 13, 14

*Keystone Macaroni Manufacturing Co. v. V. Arena & Sons, Inc.,*
   27 F. Supp. 290 (E.D. Pa. 1939) .................................................................................. 3

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
   507 U.S. 163 (1993) .................................................................................................... 3

*Lewis, on Behalf of National Semiconductor Corp. v. Sporck,*
   646 F. Supp. 574 (N.D. Cal. 1986) ............................................................................ 13

*Lipton Industries v. Ralston Purina Co.,*
   670 F.2d 1024 (C.C.P.A. 1982)............................................................................... 1, 5

*Menendez v. Saks & Co.,*
   485 F.2d 1355 (2d Cir. 1973)...................................................................................... 6

*Miller Brewing Co. v. Oland's Breweries (1971) Ltd.,*
   548 F.2d 349 (C.C.P.A. 1976)..................................................................................... 6

*Morongo Band of Mission Indians v. Rose,*
   893 F.2d 1074 (9th Cir. 1990)..................................................................................... 8

*Neubronner v. Milken,*
   6 F.3d 666 (9th Cir. 1993)......................................................................................... 17

*Nordco A.S. v. Ledes,*
   44 U.S.P.Q. 2d 1220 (S.D.N.Y. 1997) ........................................................................ 9

*Nunes v. Ashcroft,*
   375 F.3d 805 (9th Cir. 2004)....................................................................................... 8

*Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.,*
   565 F.2d 629 (10th Cir. 1977).................................................................................. 4, 6

*Papantonio v. Giannini,*
   149 F.2d 813 (9th Cir. 1945)..................................................................................... 20

W02-WEST:5BB\400513279.1                        JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                                                LEAVE TO FILE FIRST AMENDED COMPLAINT

*Papasan v. Allain*,
   478 U.S. 265 (1986) .................................................................................................. 3

*Plastilite Corp. v. Kassnar Imports*,
   508 F.2d 824 (C.C.P.A. 1975).................................................................................... 4

*Recchion, on Behalf of Westinghouse Electric Corp. v. Kirby*,
   637 F. Supp. 1309 (W.D. Pa. 1986) ......................................................................... 14

*Saratoga Vichy Spring Co. v. Lehman*,
   491 F. Supp. 141 (N.D.N.Y 1979) .............................................................................. 6

*Schreiber Distributing Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986)................................................................................... 17

*Sengoku Works Ltd. v. RMC Intern. Ltd.*,
   96 F.3d 1217 (9th Cir. 1984)...................................................................................... 7

*Standard Brands Incorporated v. Schrage*,
   1982 U.S. Dist. LEXIS 17594 (N. Ga. 1982)............................................................. 5

*Star-Kist Foods, Inc. v.P.J. Rhodes & Co.*,
   735 F.2d 346 (9th Cir. 1984)................................................................................. 1, 4

*Transphase Systems, Inc. v. Southern California Edison Co.*,
   839 F. Supp. 711 (C.D. Cal. 1993)............................................................................. 3

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ...................................................................................... 1, 2, 3

*Unkel v. Liggett*,
   172 F.R.D. 474 (M.D. Fla. 1997)............................................................................. 20

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)................................................................................. 17

*Waits v. Frito-Lay, Inc.*,
   978 F.2d 1093 (9th Cir. 1992).................................................................................... 9

*Weisbuch v. County of Los Angeles*,
   119 F.3d 778 (9th Cir. 1997)...................................................................................... 5

*Xechem, Inc. v. Bristol-Meyers Squibb Co.*,
   372 F.3d 899 (7th Cir. 2004)...................................................................................... 5

State Cases

*Banco Do Brasil v. Latian, Inc.*,
   234 Cal. App. 3d 973 (1991)............................................................................... 18, 19

*Bank of America National Trust and Sav. Association v. Lamb Finance Co.*,
   179 Cal. App. 2d 498 (1960)..................................................................................... 18

*Heckman v. Ahmanson*,
   168 Cal. App. 3d 119 (1985)..................................................................................... 15

W02-WEST:5BB\400513279.1                                    JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                                                          LEAVE TO FILE FIRST AMENDED COMPLAINT

*James v. P.B. Steifer Mining Co.,*
  35 Cal. App. 778 (1918)........................................................................................... 14

*Menlo Logistics, Inc. v. Gainey Transport Services Inc., No. C 03-CV-02560 JSW,*
  2005 WL. 1021443 (N.D. Cal. May 2, 2005) ......................................................... 19

*Oakland Raiders v. National Football League,*
  93 Cal. App. 4th 572 (2001).............................................................................. 12, 13

*Pfizer, Inc. v. Superior Court,*
  141 Cal. App. 4th 290 (2006)................................................................................. 10

*Richardson v. Reliance National Indemnity Co., No. C 99-2952 CRB,*
  2000 WL. 284211 (N.D. Cal. Mar. 9, 2000) ......................................................... 17

*Schuster v. Gardner,*
  127 Cal. App. 4th 305 (2005)................................................................................. 14

*Service by Medallion, Inc. v. Clorox,*
  44 Cal. App. 4th 1807 (1996)................................................................................. 17

*Shenberg v. De Garmo,*
  61 Cal. App. 2d 326 (1943)..................................................................................... 14

*Spiegel v. Buntrock,*
  571 A.2d 767 (Del. 1990)........................................................................................ 12

*Whitten v. Dabney,*
  171 Cal. 621 (1915)................................................................................................. 14

<u>Federal Statutes</u>

15 U.S.C. § 90 ........................................................................................................... 3

15 U.S.C. § 1069 ...................................................................................................... 7

15 U.S.C. § 1072 ...................................................................................................... 7

15 U.S.C. § 1119. ..................................................................................................... 1

15 U.S.C. § 1125(a)................................................................................................... 8

15 U.S.C. § 1126(a)................................................................................................... 9

15 U.S.C. § 1127 ................................................................................................... 2, 6

Fed. R. Civ. P. § 11 .................................................................................................. 1

Fed. R. Civ. P. § 15(a).............................................................................................. 8

Fed. R. Civ. P. § 8(a)(2) ........................................................................................... 3

Fed. R. Civ. P. § 9 ............................................................................................... 1, 18

Fed. R. Civ. P. § 9(b)........................................................................................... 2, 17

Case No. C07-00134 WHA      -vi-
W02-WEST:5BB\400513279.1      JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE FIRST AMENDED COMPLAINT

1    Fed. R. Civ. P. § 8(a).................................................................................................2, 19

2    Fed. R. Civ. P. § 8(a)(2) .............................................................................................1, 3

3    Fed. R. Civ. P. § 10(b)..............................................................................................2, 19

4    Fed. R. Civ. P. § 12(b)(6)........................................................................................1, 2, 3

5    Fed. R. Evid. § 802-4 .....................................................................................................6

6    <u>State Statutes</u>

7    Cal. R. Prof. Conduct § 3-310.......................................................................................15

8    California Corporations Code § 17501 .....................................................1, 11, 13, 14

9    Cal. Business & Professions Code § 17200 .................................................................10

10    Cal. Business & Professions Code § 17204 ...............................................................10

11    Cal. Business & Professions Code § 17500 .........................................................10, 11

12    <u>Other Authorities</u>

13    J. Thomas McCarthy, 5 *McCarthy On Trademarks And Unfair Competition,*
       § 16:45 (3d ed. 2006) ...............................................................................................3

14

15    J. Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition,*
       § 32:12 (3d ed. 2006) ...............................................................................................9

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C07-00134 WHA        -vii-
W02-WEST:5BB\400513279.1          JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                            LEAVE TO FILE FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

On October 11, 2007, the Court granted defendants' motions to dismiss all the claims in the original complaint against defendants Larry Harvey ("Harvey"), and Black Rock City, LLC ("BRC").  (October 11, 2007 Order ("Order"), Docket No. 69).  The Court allowed plaintiff leave to move to amend to remedy the defects in his complaint, with defendants ordered to file a joint opposition to that motion, raising all Rule 9 and 12 challenges.  This is that joint opposition.

Plaintiff's proposed First Amended Complaint ("FAC") fails to adequately address the issues identified by the Court when it dismissed the original complaint.  Indeed, the amendments make it clear that plaintiff's claims should all be dismissed with prejudice.

The cancellation claims (the First, Second claims), the unfair competition and false advertising Lanham Act claims (the Third and Fifth claims), and the California state law unfair competition claims (the Thirteenth[1] claim) still fail to allege facts demonstrating a commercial or pecuniary interest in the marks BLACK ROCK CITY, FLAMBÉ LOUNGE and DECOMPRESSION, the stylized Burning Man logo and the trade dress of the Burning Man festival. Plaintiffs failure to use any of this intellectual property in commerce since 1997 further undermines his standing on these claims, as he conclusively abandoned any ownership interest in the property that he arguably possessed.  This abandonment makes any further amendments on these claims futile.

Moreover, all of plaintiff's claims are deficient because they include derivative claims.  The original complaint asserted a number of derivative claims, but his amended complaint now includes derivative claims in each and every cause of action.  Each of the claims is on behalf of Paper Man (as a derivative claim) and plaintiff (as a direct claim).  Such derivative and direct claims may not be included in the same complaint.  Nor has plaintiff met the requirements of California Corporations Code § 17501.  Plaintiff made a "demand" less than an hour before filing his complaint.  This does not meet the demand requirements of Section 17501.  Nor is demand futility adequately alleged.

---

[1] Law's FAC skips from the Eleventh claim to the Thirteenth claim, without a Twelfth claim.  We adhere to Law's numbering, and refer to Law's last claim as the Thirteenth claim.

1    The fraud-based claims (the Fourth, Seventh, and Eighth causes of action) are still not

2    particularized as required by Federal Rule of Civil Procedure 9(b), and clearly violate the parole

3    evidence rule. Indeed, the entire complaint fails, as did the original one, because it does not provide

4    the "plain and short" statement required by Federal Rules of Civil Procedure 8(a) and violates Rule

5    10(b)'s prohibition on commingling claims. Plaintiff's FAC is no improvement on his original

6    complaint, and should not be allowed or should be dismissed pursuant to Rule 12(b)(6).

7              **II.      ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

8              Plaintiff's FAC is largely the same as his original complaint. The factual allegations are

9    identical up to paragraph 70. Paragraphs 71 through 84 are new, but the allegations set forth in

10   those paragraphs do not change the basic nature of plaintiff's claims. Indeed, most of these new

11   allegations are wholly conclusory. For example, plaintiff alleges that "Harvey's actions were

12   detrimental to the interests of Paper Man, LLC, and to that of Law, and even Mikel." (FAC at ¶ 71.)

13   There is no explanation, no facts, as to what actions or how they were detrimental. Similarly,

14   plaintiff's new allegations regarding his supposed "demand" and the futility of that demand are

15   completely summary. (FAC at  ¶ 72 ("records and correspondence we have seen demonstrates such

16   a demand would undoubtedly have been futile").) Plaintiff also alleges that the marks other than

17   Burning Man were "developed and first used for commercial purposes by the partners, jointly,

18   before 1997" (FAC at ¶ 79), but again this allegation is not based on any alleged *facts*. Plaintiff's

19   new allegations also include quotations from Mikel's arbitration complaint, which plaintiff

20   apparently adopts as his own, although he does not allege how he knows any of the matters asserted,

21   other than having read the arbitration papers. (FAC at ¶ 74.)

22              Most of the claims in the FAC are essentially identical to the claims in the original

23   complaint, although there are slight edits throughout. Plaintiff dropped his former fourth, seventh,

24   thirteenth, and fourteenth claims. He restyled his former fifth claim for fraud (now the Fourth) as

25   one for misrepresentation of fact and included so-called "suppression" allegations. (FAC at ¶ 110.)

26   He has changed his declaratory relief claim (formerly the eighth, now the Sixth) to more broadly

27   request that the Court "declare the rights and obligations of the parties" rather than his former prayer

28   that the contracts between the parties be voided. (FAC ¶ at 122.) Finally, plaintiff removed the

1  sections of his headings explaining which claims are against which defendants. As detailed below,

2  these changes, taken as a whole, made the pleading less—rather than more—viable.

3                              **III.   ARGUMENT**

4      A motion to amend should be denied where the amended pleading fails to state a cause of

5  action. *Fournier v. Reagan*, 1994 U.S. Dist. LEXIS 10930, 1-2 (N.D. Cal. 1994) (denying plaintiff's

6  motion to amend with prejudice). In order to adequately state a claim upon which relief may be

7  granted, a complaint must include at least "a short and plain statement of the claim showing that the

8  pleader is entitled to relief." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination

9  Unit*, 507 U.S. 163, 168 (1993) (quoting Fed. R. Civ. Proc. 8(a)(2)). As the Supreme Court recently

10  held in *Bell Atlantic Corp. v. Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

11  dismiss does not need *detailed* factual allegations," it still *must plead facts*, and must do so

12  sufficiently "to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. 1955, 1964-

13  65 (2007) (emphasis added). Thus, "a plaintiff's obligation to provide the 'grounds' of his

14  'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

15  elements of a cause of action will not do." *Id.* (alteration omitted); *see also Papasan v. Allain*, 478

16  U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal

17  conclusion couched as a factual allegation"). "Factual allegations must be enough to raise a right to

18  relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

19      Stated positively, the "threshold requirement of Rule 8(a)(2) that the 'plain statement'

20  possess enough heft to 'show that the pleader is entitled to relief'" requires that the Complaint

21  contain "allegations plausibly suggesting (not merely consistent with)" liability under the claims

22  asserted. *Id.* at 1966. And in order for allegations to rise to "enter the realm of plausible liability,"

23  they must cross the lines "between the conclusory and the factual," and "between the facially neutral

24  and the factually suggestive." *Id.* at 1966 n.5.

25  **A.    The FAC Fails To Cure The Defects In The Claims Against BRC – Defects Identified**

26  **       In The Order And Those The Court Did Not Reach In Its Prior Ruling.**

27      Plaintiff's first claim for relief again seeks cancellation of BRC's registration of the

28  trademarks BLACK ROCK CITY, FLAMBÉ LOUNGE, and DECOMPRESSION under Section 37

1  of the Lanham Act (15 U.S.C. § 1119).  BRC previously moved to dismiss this claim on a number of

2  grounds, including lack of standing.  This Court agreed that plaintiff's initial complaint did not allege

3  the requisite facts to establish his standing to cancel BRC's registrations, concluding that allegations

4  of use "in relation to" the Burning Man event did not tend to show that the Burning Man partnership

5  or plaintiff developed or used these marks in commerce.[2]  (Order at 5:16-7:23.)  Based on this lack

6  of standing, all related claims against BRC were similarly dismissed.  Although plaintiff was given

7  the opportunity to amend his allegations, the Court warned that he must do so "in good faith and

8  anchored in facts."  Plaintiff's FAC completely ignores this warning, choosing instead to press

9  forward with a single allegation that the Burning Man partners (as opposed to the "Partnership")

10  developed and used the marks in commerce, without stating any <u>facts</u> that would even suggest such

11  a conclusion.

12          **1.    Plaintiff Does Not Allege Standing To Cancel BRC's Registrations.**

13          A Section 37 cancellation claim has two elements:  (1) standing to challenge the continued

14  registration of the marks, and (2) a valid reason why the registrant is not entitled to maintain the

15  registration.  *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945 (9th Cir. 2000).  The standing

16  element requires plaintiff plead facts demonstrating a "real and rational basis for his belief that he

17  would be damaged <u>by the registration</u> sought to be cancelled, stemming from an actual commercial

18  or pecuniary interest in his own mark."  *Star-Kist Foods, Inc. v.P.J. Rhodes & Co.*, 735 F.2d 346,

19  349 (9th Cir. 1984) (emphasis added).  The purpose being to require a real interest in the

20  cancellation proceeding (as opposed to just use) and to prevent claims of a mere "intermeddler."

21  *Lipton Industries v. Ralston Purina Co.*, 670 F.2d 1024, 1028-9 (C.C.P.A. 1982).

22          The Court previously found that plaintiff's allegations that the marks BLACK ROCK CITY,

23  FLAMBÉ LOUNGE, and DECOMPRESSION were "used in relation" to the Burning Man event

24  (that plaintiff allegedly helped organize and operate) did not establish the requisite commercial or

25

---

26  [2] Since plaintiff failed to satisfy the threshold issue of standing, the Court did not reach BRC's
other arguments regarding valid grounds for cancellation of the registrations, abandonment or

27  laches, but cautioned plaintiff that he "should be mindful of those arguments in seeking leave to
amend."  (Order at 7:22-23.)  Plaintiff does not appear to have taken this caution to heart, as these

28  issues are neither addressed nor mentioned in either the FAC or plaintiff's motion for leave.

1  pecuniary interest, but rather suggested plaintiff was nothing more than an intermeddler.  (Order at

2  7:8-18.)  Nothing in the FAC changes this conclusion.  Instead of alleging facts that show a

3  commercial or pecuniary interest, plaintiff simply alleges the conclusions:

4          1.  The partners (Law/Harvey/Mikel) first developed the marks
               "Black Rock City," "Flambé Lounge," and "Decompression" and
5              used them continuously for commercial and artistic purposes
               between 1990 and 1996 (FAC at ¶¶ 79, 81, 85-86, and 90);
6

7          2.  By the summer of 1997, the partners had agreed these assets
               were owned by the partnership (FAC at ¶ 86);

8          3.  Upon dissolution in 1997, each partner retained a one-third
               ownership interest in the marks (FAC at ¶¶ 80, 82-83, 87 and 90);
9

10         4.  BRC's registration of the marks injures plaintiff's right and
               interest to share in the profits and licensing revenue of the
               marks (FAC at ¶ 82-83).
11

12       Aside from general factual allegations about plaintiff's participation in organizing and

13 operating the Burning Man event from roughly 1989 to 1996, the FAC is devoid of any specific

14 facts that would support these conclusions.  There are no allegations containing facts about how or

15 in what manner the partners used the marks, much less how they used the marks in commerce.

16 There are no facts about how the partners came up with the marks BLACK ROCK CITY, FLAMBÉ

17 LOUNGE or DECOMPRESSION, or what they signify.  There are no allegations that explain which

18 of the partners actually developed and used the marks, what they used them for or whether that use

19 changed over time.  Blanketly alleging that the marks were used for "commercial and artistic"

20 purposes does not resolve these issues.  Plaintiff simply refuses to allege the necessary who, what,

21 when and how to support his conclusions, ignoring the Court's admonition that the repleading be "in

22 good faith and anchored in facts."

23       Tellingly, plaintiff's counsel tries to cure this defect in the body of plaintiff's motion through

24 a lawyer's declaration, on information and belief, that plaintiff has evidence of use of the marks

25 through advertising in promotional materials, informational publications controlled and funded by

26 the Partnership, interviews in newspapers and magazines, books" and others.  (Motion for Leave at

27 p. 4:11-21, Docket No. 71.)  Plaintiff, however, does not include any of these facts in his FAC,

28 which is subject to Fed. R. Civ. P. 11 and this Court's express caution of good faith.  (Order at 7:17-

Case No. C07-00134 WHA        -5-
W02-WEST:5BB\400513279.1                    JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                                          LEAVE TO FILE FIRST AMENDED COMPLAINT

1   18.)  Nor does he attach any of these materials in the fifteen exhibits to his FAC.[3]  Plaintiff cannot

2   avoid his pleading obligations by alluding in his motion to possible facts/evidence not pled.

3         The traditional liberal pleading standard under Rule 8(a) offers plaintiff no refuge.  The FAC

4   does not allege any existing ownership interest in either the former Burning Man partnership or

5   plaintiff.  It summarily alleges only that the Burning Man <u>partners</u> (again distinct from the

6   "Partnership") developed and used the marks sometime between 1990 and 1996.  (FAC at ¶¶ 79, 81,

7   and 85.)  These are precisely the type of conclusory and vague allegations that the Supreme Court

8   said do not satisfy plaintiff's obligations under even a liberal pleading standard.  "While a complaint

9   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

10  obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

11  conclusions, and a <u>formulaic recitation of the elements of a cause of action</u> will not do."  *Bell*

12  *Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (May 21, 2007)

13  (emphasis added).  The additions to the FAC are nothing more than "formulaic recitations."

14        The first substantive reference in the FAC to BRC's marks occurs just prior to the specific

15  allegations underlying his claim for cancellation.  (FAC at ¶ 79.)  There is no reference to these

16  marks anywhere in plaintiff's detailed allegations regarding the beginning and subsequent

17  development of the Burning Man event.  (FAC at ¶¶ 26-70.)  There is no reference to these marks in

18  the Partnership Agreement or the Dissolution Agreement.  (Exs. A and B to FAC.)  If the Burning

19  Man Partnership really had been the party to develop and use the marks at the event, then it would

20  have registered those marks as it did the BURNING MAN mark (which is not at issue in Plaintiff's

21  first claim for relief) and the partners would have specifically provided for the distribution and

22  future use of the marks in their Dissolution Agreement.  Plaintiff's formulaic allegations are simply

23  not "plausible" in light of the actual facts pled.  *See e.g.*, *Bell Atlantic Corp. v. Twombly*, ___ U.S.

24  ___, 127 S.Ct. at 1964-65.

25

26  _____
    [3] Plaintiff does not sign or submit his own declaration in support of these statements.  Rather, he
27  relies on the inadmissible hearsay statements of counsel that she is "under information and belief
    that John Law possesses evidence" of these statements.  FED. R. EVID. 802-4; *see* Declaration of
28  Kimberley E. Lewellen at ¶ 2.

1    The same is true of the fact that the only real "factual" statements are made in plaintiff's

2    motion for leave, based on an attorney declaration on information and belief, and without any

3    competent support. The FAC does not vest plaintiff with an ownership interest in BRC's mark.

4    Since this is the only pecuniary or commercial interest plaintiff relies on to support his cancellation

5    claim, his failure to allege the necessary facts deprives him of standing to seek cancellation under

6    Section 37 of the Lanham Act.

7    **2.      The FAC Fails To Allege How The "Partnership" Acquired Any Rights.**

8    The FAC uses a defined term, the "Partnership," to identify the original Burning Man

9    partnership. (FAC at ¶ 46.) The allegations of use in the FAC, however, are carefully not attributed

10   to the Partnership. Rather, plaintiff purposefully alleges in summary fashion that the <u>partners</u> used

11   the marks for "commercial and artistic purposes," again, with no allegation of which partners used

12   which marks and when, or in what manner, or whether such use was "in commerce" as required for a

13   trademark registration. (FAC at ¶ 79.) If, in fact, one or more of the "partners" used the marks in

14   commerce, then such a use is not automatically attributed to the Partnership. Indeed, the purpose of

15   trademark rights is to identify the source of the goods or services with the public. 15 U.S.C. § 1127;

16   *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091 (Fed. Cir. 1984).

17   There are no allegations in the FAC that the "Partnership" had any public face or persona, much less

18   that any activity by any individual partner during a seven year period must be attributed to the

19   "Partnership." Without the requisite factual allegations of use by the "Partnership" or factual

20   allegations establishing that some specific use by a partner must be attributed to the "Partnership,"

21   the "Partnership" has acquired no rights.[4]

22

23

24   [4] The FAC makes the conclusory allegation that "the Burning Man Partnership actually developed
     and first used the marks." (FAC at ¶ 81.) Not only is there nothing in the FAC that supports this

25   conclusion nor anything from which such an inference could properly be drawn, but this statement
     oddly appears completely out of context – as if dropped in at the last minute to attempt to shore up

26   a crumbling facade. The Court is not obliged to accept as true such conclusory allegations.
     *Transphase Systems, Inc. v. Southern California Edison Co.*, 839 F.Supp. 711, 718 (C.D. Cal.

27   1993). Indeed, the Supreme Court instructs in *Twombly* that such allegations are insufficient. *Bell

28   Atlantic. Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. at 1964-65.

**3.     The FAC Alleges No Assignment From The Partners To The "Partnership."**

The "Partnership's" lack of acquisition of rights is not remedied by the conclusory allegation in the FAC that "by the summer of 1997, the partners agreed these assets were owned by the partnership." (FAC at ¶ 86.) Any rights acquired by the partners based on their alleged use would have to be assigned to the "Partnership." This, for example, is a common practice for musical groups – the rights vest in the band members, who then assign those rights to an entity. *See*, 5 J. Thomas McCarthy, *McCarthy On Trademarks And Unfair Competition*, § 16:45 at p. 71-77 (3d ed. 2007). An assignment must be in writing to be valid. 15 U.S.C. § 90; *Keystone Macaroni Mfg. Co. v. V. Arena & Sons, Inc.*, 27 F.Supp. 290, 293 (E.D. Pa. 1939). Additionally, it must assign all of the good will associated with the marks. *Id.* The FAC is devoid of any allegation of assignment, let alone a valid written assignment. Instead, it offers the unavailing argument of a general undefined agreement of ownership "by" a certain period of time.

**4.     Any Rights The Partnership May Have Acquired Were Conclusively Abandoned After Dissolution.**

Finally, even had the rights been acquired by or assigned to the "Partnership," the legal conclusion that upon dissolution each of the partners retained a one-third interest in the undistributed Partnership assets is legally wrong. Trademark rights, since their purpose is to denote a single source, can generally not be held jointly by disparate parties. *See*, 5 J. Thomas McCarthy, *McCarthy On Trademarks And Unfair Competition*, §§ 16:40-45 at p. 67-77 (3d ed. 2007). The modern rule is that upon dissolution – unless provided for via transfer to a single source, as was done for the mark BURNING MAN – the marks become available for any of the former partners to use and acquire their own rights and interests. *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 631 (10th Cir. 1977); *see generally*, Section II(A)(4) below. As described in greater detail in Section II(A)(4) below and previously in connection with BRC's prior motion to dismiss (Docket No. 13 at 11:10-12:15), if the Partnership had rights in these marks at the time of dissolution, those rights were abandoned by the Partnership and the individual partners, and acquired by BRC. *Dial-A-Matress Operating Corp. v. Mattress Madness, Inc.*, 841 F.Supp. 1339, 1355 (E.D. N.Y. 1994)

1   ("Once abandoned, the mark reverts back to the public domain whereupon it may be appropriated by

2   anyone who adopts the marks for his or her own use.")

3       **5.    The Interest Alleged In The FAC Is Not Affected By BRC's Registration.**

4       There is no trademark infringement claim in this case.  Plaintiff seeks cancellation of marks

5   based on an alleged injury to his claimed pecuniary interest that arising from an alleged right to

6   share in the profits and licensing revenue generated from BRC's marks.  This alleged harm does not

7   stem from the existence of BRC's registrations.  Rather, it is based exclusively on BRC's use of the

8   marks.  A Section 37 cancellation claim, however, must allege some harm flowing from <u>the</u>

9   <u>registration itself</u>. *International Tel. & Tel. Corp. v. International Mobile Machines Corp.*, 218

10  U.S.P.Q. 1024, *7 (T.T.A.B. 1983).  This includes the ability to register ones own mark (*Id.*),  the

11  use of the registration to threaten or hamper the use of ones own mark (*Star-Kist Foods, Inc. v. P.J.*

12  *Rhodes & Co.*, 735 F.2d 346 (9th Cir. 1984)), or even the use of the registration to halt imports by

13  submitting the registration to customs (*Plastilite Corp. v. Kassnar Imports*, 508 F.2d 824 (C.C.P.A.

14  1975)).  It, however, does not include a purely monetary claim for lost profits as a result of another's

15  use of a mark – rather than a use of the registration.

16      **6.    The FAC Established That Upon The Partnership's Dissolution BRC**

17              **Acquired Any Rights It Did Not Previously Have.**

18      The Court instructed plaintiff that any amended pleading must "be mindful of [BRC's]

19  arguments" concerning abandonment.  (Order at 7:19-23.)  Plaintiff did not even attempt to do so.

20  The FAC contains virtually nothing new that deals with the issue of abandonment that BRC raised in

21  its original motion.

22      The same facts that establish that neither the "Partnership" nor plaintiff have any rights in

23  BRC's marks as a result of the dissolution – failure to perfect and conclusive abandonment – also

24  definitively establish that BRC does posses valid rights in the marks and is entitled to registration.

25  That plaintiff has no rights establishes his lack of standing, the first prong in a cancellation analysis.

26  (*See generally* Section II(A)(1)-(4) above.)  That BRC does have rights and has continuously used

27  the marks since the dissolution of the "Partnership" establishes that there is no valid basis for

28  cancellation of the marks, the second prong under a cancellation analysis.  *Lipton Industries v.*

1    *Ralston Purina Co.*, 670 F.2d 1024, 1026 (C.C.P.A. 1982) (second element is "that there be a valid

2    ground why the registrant is not entitled under the law to maintain the registration").

3            Even assuming, for the sake of argument, that the Burning Man partnership was the first to

4    develop and use in commerce the marks BLACK ROCK CITY, FLAMBÉ LOUNGE, and

5    DECOMPRESSION, the FAC pleads facts that irrefutably establish that plaintiff and the Burning

6    Man partnership abandoned any interest in the marks that it or plaintiff may have had.  Plaintiff was

7    obligated to plead around any absolute defense that may be disclosed on the face of his complaint.

8    *Xechem, Inc. v. Bristol-Meyers Squibb Co.*, 372  F.3d 899, 901(7th Cir. 2004); *Weisbuch v. County*

9    *of Los Angeles*, 119 F.3d 778, 783 fn. 1 (9th Cir. 1997).  Abandonment is a complete defense to

10   Plaintiff's cancellation claim because it establishes that Plaintiff has no ownership interest in BRC's

11   marks and, therefore, no "real interest" in the outcome of the cancellation proceeding.  But the same

12   facts establish BRC's rights and that there is not valid basis for cancellation, since the basis for

13   cancellation was a lack of right by BRC.

14           Under the amended allegations, the partners developed and continuously used the marks

15   from 1990 to 1996.  (FAC at ¶¶ 79, 81, and 85.)  In July 1997, the partnership dissolved.  (Ex. B to

16   FAC; FAC at ¶¶ 54-56, and 87.)  There are no allegations of any partnership activity or business

17   since July 1997.  The Dissolution Agreement does not provide for the distribution of BRC's marks to

18   Paper Man or the individual partners.  (Ex. B to FAC; FAC at ¶¶ 54-61.)  As such, the partnership

19   unquestionably abandoned the marks.  *Standard Brands Incorporated v. Schrage*, 1982 U.S. Dist.

20   LEXIS 17594 (N. Ga. 1982) (partnership abandoned marks after two consecutive years of nonuse).

21           Plaintiff tries to resurrect his alleged interest in BRC's marks by claiming that, as a matter of

22   law, each partner retained a one-third interest in them post dissolution.  (FAC at ¶ 77, 80, 83, and

23   87.)  The FAC, however, also alleges that BRC is the only entity to have used the marks in

24   commerce since at least 1997.  (FAC at ¶¶ 79, 89-91, 113.)  Plaintiff's failure to plead that he has

25   actually used the marks in commerce since the dissolution is fatal to any alleged one-third interest.

26   An equitable interest or joint right to use a mark after dissolution of a partnership can only be

27   perfected by use.  *Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.*, 565 F.2d 629, 631 (10th

28   Cir. 1977).

1   Directly on point, in *Oklahoma Beverage*, two brothers dissolved their soft drink bottling

2   partnership without expressly allocating the right to use of the partnership's trademark "Love"

3   Beverages. *Id.* at 630. One brother continued to operate a bottling business using the mark "Love"

4   and the other did not. *Id.* Years later when the non-using brother tried to assert an equitable interest

5   in the mark by virtue of the partnership dissolution, the Court held that the brother had not perfected

6   his interest in the mark by using it and, therefore, had abandoned the mark. *Id.* at 631-33.

7   Further, Section 45 of the Lanham Act creates a presumption of abandonment after **three**

8   consecutive years of nonuse. 15 U.S.C.A. § 1127; *Miller Brewing Co. v. Oland's Breweries (1971)*

9   *Ltd.*, 548 F.2d 349, 351 (C.C.P.A. 1976) (statutory presumption of abandonment applies to

10   unregistered common law trademark). Plaintiff, therefore, undeniably abandoned any interest he

11   may have had in these marks by not using them for well over three years.[5] 15 U.S.C. § 1127.

12   The FAC plainly alleges that BRC is the only entity to have used the marks in commerce

13   since the partnership dissolved in July 1997. The FAC also establishes that BRC claims trademark

14   rights in these marks, as it applied for and has been granted registration. Thus, even if plaintiff's

15   contention that the marks were originally owned by the Burning Man partnership were true, then the

16   FAC establishes that the marks now are owned by BRC, and registration proper since commercial

17   use of a mark establishes ownership. *Sengoku Works Ltd. v. RMC Intern. Ltd.*, 96 F.3d 1217, 1219

18   (9th Cir. 1984).

19   **7.      Plaintiff's Cancellation Claim Is Barred By Laches.**

20   Laches may be raised as an equitable defense to any cancellation claim. 15 U.S.C.A. § 1069.

21   Laches requires the proof of three elements: (1) actual or constructive notice of the registrant's

22   trademark use, (2) plaintiff's delay in seeking cancellation of the registrations and (3) prejudiced to

23   registrant from plaintiff's delay. *Bridgestone/Firestone Research, Inc. v. Automobile Club De*

24   _____

25   [5] The FAC also does not allege any involuntary action or conduct outside of plaintiff's control that
    might constitute extraordinary or special circumstances to rebut the presumption of abandonment.
    *Saratoga Vichy Spring Co. v. Lehman*, 491 F.Supp. 141, 156 (N.D.N.Y 1979) (defendant's nonuse

26   involuntary since it had no control over state's legislative budgeting); *Menendez v. Saks & Co.*,
    485 F.2d 1355,1377 (2d Cir. 1973) (Cuban government's confiscation of business does not deprive

27   owner of enforceable trademark rights); *Garcia v. Montecrispi Cigar Co.*, 409 F.2d 14 (5th Cir.
    1969) (abandonment defense rejected since owner's factory expropriated by foreign government).

28

1  *L'Ouest De La France*, 245 F.3d 1358, 1361 (Fed. Cir. 2001).  Each of these elements is established
2  on the face of the FAC.

3       Since a cancellation claim cannot be filed until a mark is officially registered, delay is
4  measured from the date of registration itself.  *Bridgestone/Firestone Research*, 245 F.3d at 1362.
5  However, once a mark is officially registered, the first element of a laches defense is satisfied as a
6  matter of law because registration on the Principal Register "shall be constructive notice of the
7  registrant's claim of ownership."  15 U.S.C.A. § 1072; *Bridgestone/Firestone Research, Inc.*, 245
8  F.3d at 1361-62 (registration and conspicuous use of registered mark placed petitioner on notice and
9  started laches clock running).  BRC's marks were registered in December 2003, February 2004 and
10  June 2005.  (FAC at ¶ 79.)  Plaintiff, therefore, has had knowledge of BRC's ownership from those
11  dates forward.

12       The two remaining elements (undue delay and prejudice) are also evident from the face of
13  the FAC.  First, plaintiff waited between two and four years to seek cancellation of BRC's
14  registrations.  Plaintiff, however, knew of BRC's use since 1997 because BRC has been organizing
15  and operating the event since then, as evident from Paper Man's license the BURNING MAN mark
16  to BRC for the event.  (FAC at ¶ 56-67, 70;  Exs. B and H.)  Second, the FAC alleges that BRC is
17  the only entity to use the marks DECOMPRESSION, FLAMBÉ LOUNGE and BLACK ROCK
18  CITY since 1997.  (FAC at ¶¶ 79, 89-91.)  Finally, attendance at the Burning Man event has grown
19  from 10,000 to almost 40,000 under BRC's direction.  (FAC at ¶ 64; Complaint at ¶ 64, Docket No.
20  1.)  BRC has expended considerable time, money and effort in building up good will in the marks
21  DECOMPRESSION, FLAMBÉ LOUNGE and BLACK ROCK CITY during that time.  Because
22  each element of BRC's laches defense is evident from the allegations of the Complaint, Plaintiff's
23  first claim for cancellation should be dismissed with prejudice.

24       **8.**    **Further Leave To Amend This Cancellation Claim Would Be Futile**

25       The Federal Rules of Civil Procedure provide that leave to amend should be "freely given
26  when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit construes this standard broadly,
27  requiring that leave to amend be granted with "extraordinary liberality."  *Morongo Band of Mission*
28  *Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  In determining whether to grant leave, the

Case No. C07-00134 WHA     -12-
W02-WEST:5BB\400513279.1     JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE FIRST AMENDED COMPLAINT

1  court must consider (1) plaintiff's bad faith; (2) undue delay; (3) prejudice to the defendants; (4)

2  futility of amendment; and (5) whether plaintiff has previously amended his complaint. *Nunes v.*

3  *Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).  Futility alone can justify the denial of a motion to

4  amend. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

5      Plaintiff has been given the opportunity to amend his pleadings to allege the requisite

6  standing and grounds for cancellation.  He has failed to do so.  Moreover, he has not laid out through

7  allegations in the FAC (or via competent evidence in the accompanying declarations) what, if any,

8  additional facts he might be able to allege.  His circuitous and tortured failure to answer the Court's

9  simple requirements means that he cannot do so in good faith.  Even if he could show some type of

10 ownership in 1997, his admitted failure to use the mark since dissolution proves abandonment and

11 makes any further amendment entirely futile.

12 **B.    The Unfair Competition and False Advertising Claims Fall With The Cancellation**

13 **Claim And On Separate Grounds.**

14     Plaintiff's third claim and fifth claim are for unfair competition and false advertising under

15 Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).  Both claims are based on BRC's alleged

16 use of and representations regarding ownership of the service marks BURNING MAN,

17 DECOMPRESSION, FLAMBÉ LOUNGE, BLACK ROCK CITY, the stylized Burning Man logo

18 and the Burning Man trade dress.  (FAC at ¶¶ 100-02,113.)  The Court previously dismissed these

19 claims on the same grounds as the cancellation claim, *i.e.*, the complaint did not allege any prior use

20 or ownership of the intellectual property and, therefore, no commercial injury.  (Order at 8:3-6.)

21 The Court further recognized that in order to bring a false advertising claim under Section 43(a)

22 plaintiff was required to allege, but did not, both a "commercial injury based upon a

23 misrepresentation about a product, and also that the injury was 'competitive,' i.e., harmful to the

24 plaintiff's ability to compete with the defendant." *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir.

25 1995); Order at 8:6-13.  The allegations of the FAC do not resolve these issues.

26     Section 43(a) states that a claim for infringement or false designation of origin may be

27 brought by "any person who believes that he or she is or is likely to be damaged by any such act."

28 15 U.S.C.A. § 1126(a).  While plaintiff does not need to be the actual owner or registrant of the

1 | intellectual property assets, this language does require that Plaintiff possess a "valid commercial
2 | interest" in the assets that will be harmed by the alleged infringement or false designation.  J.
3 | Thomas McCarthy, 5 *McCarthy on Trademarks and Unfair Competition*, § 32:12 (3d ed. 2006)
4 | (citing *Nordco A.S. v. Ledes*, 44 U.S.P.Q.2d 1220 (S.D.N.Y. 1997)).  As detailed above, the FAC
5 | still does not allege any such interest as to BRC's marks, the stylized Burning Man logo or the
6 | Burning Man trade dress.  Even if the amended allegations had suggested an ownership interest in
7 | this property, plaintiff conclusively abandoned his interests.  (*See* Section II(A)(4),(6) above.)
8 | While the FAC does allege an interest in the BURNING MAN mark, via Paper Man, it also alleges
9 | that BRC's use of this mark was the result of various license agreements with Paper Man.  (Ex. H to
10 | FAC.)  BRC's use of the BURNING MAN mark, therefore, was authorized and will not support a
11 | claim for unfair competition.

12 | The FAC also continues to ignore the "actual competition" element of a Section 43(a) false
13 | advertising claim.  *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1109 (9th Cir. 1992) (injury arising from
14 | misrepresentation must be harmful to plaintiff's ability to compete with defendant).  Indeed, the only
15 | allegation that even suggests any type of competition between plaintiff and BRC states "Harvey and
16 | Black Rock City are competing with Paper Man, and they have also usurped the remaining marks –
17 | the sole assets of the former partnership." (FAC at ¶ 83.)  Plaintiff goes on to allege that this
18 | conduct has impaired his entitlement to licensing fees.  (Id.)  These conclusory statements do not
19 | solve the problem and do not even address any alleged interest of plaintiff other than his interest in
20 | Paper Man.

21 | Plaintiff simply does not allege any facts that BRC engages in direct competition with
22 | plaintiff, or, for that matter, Paper Man.  Quite the opposite.  The FAC refutes any allegation of
23 | competition given that (1) BRC is engaged in organizing and operating the Burning Man event, (2)
24 | Paper Man's sole function is to license the BURNING MAN mark – not engage in organize or
25 | operating the event, and (3) there are no allegations whatsoever of any business venture by plaintiff
26 | or other business endeavor plaintiff could arguably use as a basis for competing with BRC.  The
27 | FAC, therefore, fails to allege any standing for plaintiff to pursue a false advertising claim under
28 | Section 43(a).

1    **C.    The FAC Fails To Allege Facts Necessary To Support His Unfair Competition and**
2    **False Advertising Claims Under California State Law.**

3    Plaintiff's thirteen claim is for unlawful, unfair and deceptive business practices under

4    Section 17200 of the California Business and Professions Code.[6]   The Court dismissed this claim

5    from the initial complaint because plaintiff had not pled that he "suffered injury in fact and lost

6    money or property" as required by Section 17204.  The Court further noted that while plaintiff

7    alleged that he had been deprived of licensing revenue, the complaint did not allege any entitlement

8    to licensing fees in the first place.  The FAC does not cure this fatal defect.

9    The FAC simply alleges that "Harvey's, Mikel's and BRC's actions are unlawful, unfair and

10   deceptive methods of competition, in violation of California Business and Professions Code

11   § 17200, *et seq.*"  (FAC at ¶ 153.)  The FAC does not make any attempt to articulate the actual

12   unlawful, unfair or deceptive acts.  Nor does it make any effort at articulating what injury plaintiff in

13   fact has suffered.  It only states that "Law has personally suffered actual financial injury and injury

14   to his property rights."  (FAC at ¶ 154.)  These generic and conclusive allegations do not satisfy

15   plaintiff's pleading obligations.  Indeed, they provide absolutely no information to defendant of what

16   this claim actually covers.  This pleading style is particularly disconcerting given that there are no

17   allegations of actual competition between plaintiff and the defendants.

18   Assuming this claim is a mere extension of his previous 17200 claim, then the FAC still does

19   not allege any facts that demonstrate an entitlement to licensing revenue for use of the marks

20   BLACK ROCK CITY, FLAMBÉ LOUNGE, and DECOMPRESSION, the stylized Burning Man

21

22

23   [6] Plaintiff appears to have abandoned his claim for false advertising under California Business and
     Professions Code § 17500, as none of his claims expressly cite this statute or claim to seek either
24   an injunction or damages for false advertising under state law.  Still, plaintiff's motion for leave
     suggests that he intends to proceed with this claim since it claims the FAC alleges facts to support
25   such a claim.  (Motion for Leave at 5:19-25, 6:8-12.)  The Court dismissed this claim because
     plaintiff had not alleged either that he relied on some unidentified false or misleading statement by
26   BRC or that he had even attended the event since 1996.  (Order at 8:25-9:2.)  These allegations are
     still missing from the FAC and, therefore, the FAC does not allege facts sufficient to sustain a
27   claim for state law false advertising.  *Pfizer, Inc. v. Superior Court*, 141 Cal.App.4th 290, 296
     (2006) (review granted).

28

1   logo, or the Burning Man trade dress.  Absent such direct injury, plaintiff lacks standing to sue for

2   violation of Business and Professions Code § 17200.

3   **D.      Plaintiff Has Not Met The Requirements of Calif. Corp. Code § 17501.**

4          Plaintiff's FAC fails because he cannot satisfy the requirements of Section 17501(a) of the

5   California Corporations Code.  That provision states:

6               No action shall be instituted or maintained in any domestic or
                foreign limited liability company by any member of the limited
7               liability company unless…(2) The plaintiff alleges in the complaint
                with particularity plaintiff's efforts to secure from the managers the
8               action plaintiff desires or the reasons for not making that effort, and
                alleges further that plaintiff has either informed the limited liability
9               company or the managers in writing of the ultimate facts of each
                cause of action against each defendant or delivered to the limited
10              liability company or the managers a true copy of the complaint that
                plaintiff proposes to file.
11

12  The Court's October 11 Order made clear that these requirements must be met for Plaintiff's

13  derivative claims.  Order at 11.  Plaintiff cannot do so in this action.

14          **1.      Plaintiff Can Never Satisfy The Pre-Suit Notice Requirement Of Section 17501**

15                 **In A Lawsuit That Was Filed Before The Notice Was Given.**

16          By its plain language, Section 17501 requires that notice of the proposed claims must be

17  given to an LLC before a derivative "action" is "instituted."  *Id.*  This means the notice must be

18  given *before the lawsuit starts.*  A derivative plaintiff must allege that he "has either informed" the

19  LLC or managers of the facts of each cause of action, "or delivered" to the LLC or managers a true

20  copy of the complaint "that plaintiff *proposes* to file."  *Id.*  (emphasis added).  There are intentional

21  legislative purposes behind pre-lawsuit notices.  As the Ninth Circuit has stated in an analogous

22  context, "once a suit is filed, positions become hardened, parties incur legal fees, and relations

23  become adversarial so that cooperation and compromise is less likely."  *Hallstrom v. Tillamook*

24  *County*, 844 F.2d 598, 601 (9th Cir. 1987) (dismissing case and holding that "the filing of a

25  supplemental or amended complaint to cure defective notice cannot restore a sixty-day non-

26  adversarial period to the parties") (quotation omitted).

27          Plaintiff instituted this action on January 9, 2007.  He has not alleged that he gave Paper Man

28  or its managers notice before doing so, and he cannot.  No amount of time, and no amendment can

1   change those facts. His e-mailed October 26, 2007 notice is too late, and does not comply with the

2   requirements of Section 17501(a)(2). Therefore, his derivative claims should be dismissed without

3   leave to amend. *See, e.g. Janas v. McCracken* (*in Re Silicon Graphics Sec. Litig.*), 183 F.3d 970,

4   989-991 (9th Cir. 1999) (affirming dismissal without leave to amend where plaintiff could not

5   properly allege demand or demand futility).

6           **2.      Having Made A Demand, Plaintiff May Not Rely Upon Demand Futility.**

7           Furthermore, Plaintiff's October 26, 2007 e-mail also contains a *demand* upon Paper Man

8   and its managers that they prosecute his claims on behalf of the LLC. FAC ¶ 72 ("duty to make a

9   demand prior to bringing this action . . . relieved"; notification of "intention to file . . . derivative

10  action"); Plaintiffs Memo. Re Motion for Leave to Amend at 7 (FAC alleges "futility, a demand, and

11  notice"). Having made a demand, Plaintiff may not rely upon demand futility to excuse his failure

12  to wait more than one hour for a response by Paper Man. Plaintiff cannot plead demand futility after

13  making a demand. *Kamen v. Kemper Fin. Servs.,* 500 U.S. 90, 104 (1991) (under Delaware law

14  shareholder may not make demand and later assert its futility); *Spiegel v. Buntrock,* 571 A.2d 767,

15  776 (Del. 1990) (demand moots futility claim).[7] Making a demand is a tacit acknowledgment by the

16  shareholder that it is not futile. It puts the managers on notice that they must consider the allegations

17  and, using the business judgment rule, decide whether to pursue them or not on the LLC's behalf.

18  Allowing a shareholder to, at the same time, pursue a claim because of claimed "futility"

19  undermines the managerial authority of the managers and runs against the allocation of powers

20  inherent in the corporate structure. *Id.*

21          **3.      Plaintiff Has Not Given Sufficient Time For A Response To His Demand,**

22                   **Further Necessitating Dismissal.**

23          Less than an hour between midnight and 1 a.m. for a response is not the type of demand that

24  Section 17501 contemplates. The purpose of a demand requirement is to give managers the

---

[7] California and Delaware law on demand futility are identical. *In re Atmel Corp. Derivative Litig.,* 2007 U.S. Dist. LEXIS 54058 (N.D. Cal. 2007) ("California courts follow Delaware law in demand futility cases"), *citing Oakland Raiders v. National Football League,* 93 Cal.App.4th 572, 586 n.5 (2001) ("The parties agree that we may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.").

1  opportunity to address member's concerns and to use their position and knowledge to exercise their

2  prerogative under the business judgment rule to either take action in furtherance of resolving the

3  complaining member's issues, or to not take action. *Kamen* 500 U.S. at 96 ("The purpose of the

4  demand requirement is to afford the directors an opportunity to exercise their reasonable business

5  judgment...."); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532-533 (1984) ("This 'demand

6  requirement' affords the directors an opportunity to exercise their reasonable business judgment and

7  'waive a legal right vested in the corporation in the belief that its best interests will be promoted by

8  not insisting on such right.'"), *quoting Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455,

9  463 (1903) (holding that directors may properly waive a legal right and that "it is not a trifling thing

10 for a stockholder to attempt to coerce the directors of a corporation to an act which their judgment

11 does not approve, or to substitute his judgment for theirs."). Therefore, it is only <u>after a reasonable</u>

12 <u>period of time</u> that a shareholder would have the right to then sue on behalf of the LLC in a

13 derivative action. *Id.* Less than an hour (after midnight even) is not, to say the least, a reasonable

14 time. *Lewis, on Behalf of National Semiconductor Corp. v. Sporck,* 646 F. Supp. 574, 578 (N.D.

15 Cal. 1986) (three months notice insufficient); *Hawes v. Oakland,* 104 U.S. 450, 461 (1882) (the

16 shareholder "must make an earnest, not a simulated effort . . . to induce remedial action").

17      The FAC fails to allege any reasonable effort to allow Paper Man's managers to consider

18 plaintiff's complaints. Paper Man is entitled to do so, and to decide whether it will assume control

19 of the lawsuit, end it, or permit Law to proceed in prosecuting it. "The purpose of the demand

20 requirement is to 'afford the directors an opportunity to exercise their reasonable business judgment

21 and "waive a legal right vested in the corporation in the belief that its best interests will be promoted

22 by not insisting on such right.'" *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 96 (U.S. 1991) (*quoting*

23 *Dailing Income Fund, Inc.*, 464 U.S. at 533; *and Corbus v. Alaska Treadwell Gold Mining Co.*, 187

24 U.S. 455, 463 (1903)). There is no reason to permit these matters to become the subject of public

25 attention, or to usurp the Court's and the parties' resources, without a meaningful attempt by the

26 parties first to resolve their differences. This is particularly true where, as here, the parties have

27 recognized in several agreements that private resolution of their disputes is preferred. *See, e.g.,*

28 Lewellen Decl., Ex. A "Burning Man Partnership Agreement" ¶11.04; Ex. B "Agreement for the

Case No. C07-00134 WHA      -18-
W02-WEST:5BB\400513279.1      JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
LEAVE TO FILE FIRST AMENDED COMPLAINT

1   Dissolution of Partnership" ¶14; Ex. C "Operating Agreement" ¶11.  Law's last minute (literally)

2   "demand" is no demand at all and therefore he has not met the requirements of Section 17501.  *See*

3   *Recchion, on Behalf of Westinghouse Elec. Corp. v. Kirby,* 637 F. Supp. 1309, 1319 (W.D. Pa. 1986)

4   (premature filing of derivative suit even after valid demand is equivalent to no demand warranting

5   dismissal).

6       Law can never meet Section 17501's requirements in this lawsuit.  Amendment would

7   therefore be futile, and should not be permitted.

8   **E.    Plaintiff May Not Simultaneously Prosecute Direct And Derivative Claims.**

9       Moreover, and as an independent basis for dismissal, California law has long prohibited a

10  shareholder from claiming, in the same action, both derivative and direct claims.  "An action of a

11  personal nature resulting in injury to the plaintiff individually may not be joined with a derivative

12  action for injuries done to the corporation."  *Shenberg v. De Garmo,* 61 Cal. App. 2d 326, 331

13  (1943).  Derivative and direct claims are "mutually exclusive" and derivative claims must be

14  brought in the name of the entity.  *Schuster v. Gardner*, 127 Cal.App.4th 305 (2005); *see also,*

15  *James v. P.B. Steifer Mining Co.*, 35 Cal.App. 778, 788 (1918) ("[W]e think it can be said that a

16  cause of action for personal wrongs has been improperly joined with one for injuries to the

17  corporation and that the demurrer upon that ground was well taken.").

18      There is good reason to prohibit combining direct and derivative claims.  In the derivative

19  context, a member must prosecute the claims in the name of the company, and necessarily assumes

20  fiduciary duties to act in the best interests of the company in doing so.  *Whitten v. Dabney*, 171 Cal.

21  621, 630-631 (1915) (the derivative plaintiff "is a trustee pure and simple, seeking in the name of

22  another a recovery for wrongs that have been committed against that other"); *Heckman v. Ahmanson*

23  168 Cal.App.3d. 119, 128-129 (1985) ("A stockholder who institutes a derivative suit sues purely as

24  a trustee to redress corporate injuries."); *see also Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 549

25  (1949).  In *Cohen*, the Court noted that "a stockholder who brings suit on a cause of action derived

26  from a corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary

27  character."  337 U.S. at 549.

28

1    In contrast, in a direct capacity, the plaintiff has a clear adversity of interest to the company,

2    and is entitled to place his or her own interests ahead of all else—indeed, his or her counsel is

3    charged with an affirmative obligation to do so. *See* Cal. R. Prof. Conduct 3-310. A plaintiff should

4    not be permitted to pursue claims that simultaneously require fiduciary obligations and zealous

5    adversity to the same entity. In amending his complaint, plaintiff has intertwined and conflated his

6    direct and derivative theories of relief to an even greater degree than they were before, by

7    simultaneously asserting both types of theories in nearly every cause of action.

8    Each of plaintiff's claims *on its face* now includes both derivative and direct theories of

9    relief:

10   - "Law will further request the court to order defendants . . . to provide an accounting . . .
11   and to award Law his share of damages in the way of reasonable license fees, profits
     and income ... which were usurped, dissipated, and interfered with, and which should
12   have gone *to Paper Man LLC and/or Law*...." (FAC at ¶ 94 [First claim]) (emphasis
     added);

13   - "This logo design was an asset of the partnership that either became an asset of Paper
14   Man LLC under the dissolution agreement, or was distributed proportionately to each
     partner upon the dissolution . . . ." (FAC at ¶ 97 [Second claim]);
15

16   - "Such unauthorized use infringes the rights of Paper Man LLC ..., and Law, Paper
     Man LLC, and/or the former partners have been actually ...damaged by this
17   unauthorized use." (FAC at ¶ 101 [Third claim]);

18   - "Law ... alleges that such unauthorized use and misappropriation of his individual
     rights, and those of Paper Man LLC...infringes the rights of Law and of Paper Man
19   LLC ... and Law and Paper Man LLC have each been damaged by such unauthorized
     uses. (FAC at ¶ 105 [Third claim]);
20

21   - "These omissions were material in that they prevented Law from asserting his rights or
     ensuring the rights of Paper Man LLC were protected." (FAC at ¶ 110 [Fourth claim]);
22

23   - "Law and Paper Man LLC have been injured in amounts in excess of the jurisdictional
     limits...." (FAC at ¶ 111 [Fourth claim]);

24   - "Law has individually and in his capacity as a member of the Paper Man LLC suffered
25   actual pecuniary injury...." (FAC at ¶ 117 [Fifth claim]);

26   - "Law...alleges that...Law, individually and Paper Man LLC have been injured." (FAC
     at ¶ 121 [Sixth claim]);
27

28   - "Law, on behalf of himself and the corporation has repeatedly made demands for
     information...." (FAC at ¶ 125 [Seventh claim]);

- "Law alleges that Harvey and Mikel violated their fiduciary duties of utmost good faith and loyalty to Law by usurping and claiming his intellectual property assets as their own, and to him as a member of Paper Man…." (FAC at ¶ 134 [Eighth claim]);

- "Alternatively, said defendants' conduct was carried out in conscious disregard of Law's and Paper Man's rights." (FAC at ¶ 135 [Eighth claim]);

- "Law…alleges that Harvey, Mikel and Paper Man breached the Operating Agreement by failing to pay Law his share of the fair market value for a license for the '470 Burning Man Mark." (FAC at ¶ 139 [Ninth claim]);

- "Law alleges that . . . Harvey and Mikel, individually as his former partners, and as managing members of Paper Man, breached the covenants of good faith and fair dealing." (FAC ¶ 144 [Tenth claim]);

- "Law…alleges that loss of such status, for no matter how little time, negatively impacts the value of the mark and its associated good will, thereby causing injury to both Paper Man and Law." (FAC ¶ 148 [Eleventh claim]);[8]

- "Law is entitled to disgorgement…of any property income funds or profits [defendants] obtained to his detriment and to the detriment and injury of Paper Man LLC." (FAC ¶ 155 [Thirteenth claim]).

By asserting both direct and derivative claims in his FAC, plaintiff violates California's prohibition on such combinations. For this independent reason, plaintiff's motion for leave to amend should be denied with prejudice as to all claims.

## F.   Plaintiff's Fraud-Based Claims Fail To Meet The Requirements of Rule 9(b).

Plaintiff's motion for leave should also be denied because his fraud-based claims (the Fourth, Seventh and Eighth claims) fail to meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. The Court previously ruled on these grounds, and plaintiff's FAC does nothing to remedy the problems with his original complaint. *See* Order at 12-14.

---

[8] Plaintiff's Eleventh claim for Negligence alleges that (1) Harvey and Mikel failed to file required affidavits for the '470 Burning Man mark in time, thus losing its ability to become an "incontestable" mark by the PTO (FAC at ¶¶ 147-148); and (2) that Harvey and Mikel negligently ceded control of all of the marks and logos "to the detriment of the former partners' individual and proportionate ownership interest" (FAC at ¶ 149). The first claim is on behalf of Paper Man and therefore derivative. The second is also derivative because it deals with Paper Man's mark, and it also fails because Law does not allege that Harvey or Mikel owed any duty to Law, in his capacity as a *former* partner.

1    The elements of fraud include:  (a) misrepresentation (false representation, concealment, or

2    nondisclosure); (b) knowledge of falsity; (c) intent to defraud, i.e., to induce reliance; (d) justifiable

3    reliance; and (e) resulting damage. *City Solutions v. Clear Channel Commc'ns, Inc.*, 365 F.3d 835,

4    839 (9th Cir. 2004).  Federal Rule of Civil Procedure 9(b) requires that all of these elements be met

5    with specificity.  If not, the fraud-based claims should be dismissed. *Vess v. Ciba-Geigy Corp. USA*,

6    317 F.3d 1097, 1107-08 (9th Cir. 2003).  When claims are "grounded in fraud" or "sound in fraud,"

7    they must also satisfy the particularity requirement of Rule 9(b). *Vess*, 317 F.3d at 1103-04; *In re*

8    *Daou Sys., Inc.,* 411 F.3d 1006, 1027 (9th Cir. 2005), *cert. denied Daou Sys. v. Sparling*, 126 S. Ct.

9    1335 (2006).

10    In order to satisfy the requirements of the Rule, the Complaint  "must specify such facts as

11    the times, dates, places, benefits received, and other details of the alleged fraudulent activity."

12    *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citations omitted).  The "other details"

13    include the "specific content of the false representations as well as the identities of the parties to the

14    misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (dismissing

15    claim based on failure to plead fraud with particularity), quoting *Alan Neuman Prods., Inc. v.*

16    *Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1989), and citing *Schreiber Distrib. Co. v. Serv-Well*

17    *Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).  Failure to specifically plead the facts sufficient

18    to support this element justifies dismissal at the pleading stage of the case. *Richardson v. Reliance*

19    *Nat'l Indem. Co.*, No. C 99-2952 CRB, 2000 WL 284211, *5 (N.D. Cal. Mar. 9, 2000); *Service by*

20    *Medallion, Inc. v. Clorox*, 44 Cal. App. 4th 1807, 1816 (1996).

21    The Fourth claim of the FAC asserts "misrepresentations of fact" in connection with the

22    parties' prior agreements, and is similar to the fifth claim of the original complaint.  Law has

23    amended his claim to make it one of "suppression" of "material information" but the claim is still

24    essentially the same:  that Law was somehow mislead about the "effect" of the Dissolution

25    Agreement that ended the parties first partnership and the Operating Agreement that governs their

26    relationship through Paper Man.  FAC ¶ 109.  The other allegations in this claim, like Law's original

27    fraud claim, are purely conclusory.  Law says that Harvey and Mikel "concealed" information but he

28    fails to clearly delineate what information was supposedly withheld.  Moreover, he utterly fails to

1  explain how any of this "concealment" harmed *him*, as opposed to Paper Man.  He alleges that he

2  has been injured (FAC ¶ 111) but does not say *how*.  This does not meet the specific pleading

3  requirements of a fraud claim.[9]

4        The Seventh claim alleges that "Paper Man's dissolution is the only reasonable and equitable

5  solution to Harvey's and Mikel's persistent and pervasive fraud...." (FAC at ¶ 126).  Again, Law

6  makes no effort to detail the supposed "fraud" and does not meet the requirements of Rule 9.  The

7  Eighth claim alleges that "Harvey and Mikel violated their fiduciary duties of utmost good faith and

8  loyalty to Law by obtaining advantages for themselves as to . . . their duties to Paper Man through

9  the use of affirmative misrepresentation and concealment." (FAC at ¶ 133).  But the FAC does not

10  set forth any new facts (as opposed to conclusions) sufficient to show specific statements made and

11  under what circumstances, facts to show falsity, or any other facts supporting the purported fraud.

12  Law does not say what "advantages" defendants obtained, or otherwise detail his fraud claims.  This

13  is not enough under Rule 9.

14  **G.**    **Plaintiff's FAC Violates The Parol Evidence Rule.**

15        Law's Eighth and Ninth claims, like several of the claims in his original complaint, are also

16  based on allegations that violate the parol evidence rule.  Law's allegations are that defendants promised

17  to but did not pay Law the "fair market value" of the Burning Man mark license. (FAC ¶¶ 65, 74, 134,

18  137, 139).  The Court already considered these allegations and ruled that they violate the parol evidence

19  rule.  Order at 13:6-17; *see Banco Do Brasil v. Latian, Inc.*, 234 Cal.App.3d 973, 1010 (1991); *Bank of*

20  *America Nat. Trust and Sav. Ass'n v. Lamb Finance Co.*, 179 Cal.App.2d 498 (1960).

21        As the Court previously ruled (Order at 13), the Dissolution Agreement and Paper Man

22  Operating Agreement define exactly to whom, and under what conditions the Burning Man mark is

23  to be licensed, and Law cannot use parol evidence to vary those terms and make out his claims.

24  *Banco Do Brasil*, 234 Cal. App. 3d at 1009-1010; *see also Brinderson-Newberg Joint Venture v.*

25  *Pacific Erectors, Inc.*, 971 F.2d 272, 281 (9th Cir. 1992); *Menlo Logistics, Inc. v. Gainey Transp.*

26  

27  [9] Plaintiff's claim of fraud based on suppression, to the extent it pleads a new claim, also fails because "a plaintiff may not introduce in an amended complaint a wholly different cause of action from the one stated in his original complaint." *Shenberg, supra*, at 331.

28

1   *Servs. Inc.*, No. C 03-CV-02560 JSW 2005 WL 1021443 at *4-5 (N.D. Cal. May 2, 2005); Davis v.

2   Gulf Oil Corp., 572 F. Supp. 1393, 1400 (C.D. Cal. 1983) (summary judgment granted where "the

3   alleged fraud [that] plaintiff sues upon is based upon a promise which involves a subject that is

4   expressly provided for in the integrated contract.").

5        Law's allegation of a promise of "fair market rates" (FAC ¶¶ 134, 139) — the same

6   allegation he made in his original complaint — is plainly an attempt to vary, indeed an outright

7   contradiction of, the "sole discretion" term.   And this allegation is still the core of Law's amended

8   claims.  The Eighth claim (formerly the tenth) adds conclusory allegations that Harvey and Mikel

9   obtained "advantages" as to "former partnership's assets" and "their duties" (FAC ¶ 133), but the

10  only specific example of an advantage remains the "below fair market rate" allegation.  FAC ¶ 134.

11  Similarly, the Ninth claim (formerly the eleventh) adds general allegations about improper

12  accounting of income and "diverting" proceeds (FAC ¶ 138), but the only specific alleged breach is

13  the "failure" to pay Law "his share of the fair market value for a license" for the mark.  FAC ¶ 139.

14  Law's  amendments do nothing to avoid the Court's prior ruling on this issue.  The Eighth and Ninth

15  Claims should not be allowed.

16  **H.**   **Plaintiff's FAC Continues To Violate Rules 8(a) and 10(b).**

17       As with his original complaint, Law's FAC falls far short of the "short and plain statement"

18  required by Federal Rules of Civil Procedure 8(a).  It also violates Rule 10(b) because he

19  commingles his claims and fails to clearly separate which claims relate to which defendant.  Indeed,

20  Law has now deleted the pertinent defendant names in the title of each claim, making the situation

21  even worse then before.  Law's FAC, far from clearing up the ambiguities of the original, has

22  become even more vague.  Law has combined claims, asserted alternative theories within individual

23  claims — even within individual paragraphs — and failed to *plainly* describe the wrongs about

24  which he complains or the remedies he seeks.  Dismissal without leave to amend is in order for this

25  continuing and flagrant violation of the FRCP. *See Papantonio v. Giannini*, 149 F.2d 813, 814 (9th

26  Cir. 1945); *Unkel v. Liggett*, 172 F.R.D. 474 (M.D. Fla. 1997).

27

28

Case No. C07-00134 WHA            -24-
W02-WEST:5BB\400513279.1                                JOINT OPPOSITION TO PLAINTIFF'S MOTION FOR
                                                       LEAVE TO FILE FIRST AMENDED COMPLAINT

1

### III.    CONCLUSION

2      For all of the foregoing reasons, plaintiff's Motion For Leave To File A First Amended

3   Complaint should be denied.

4   DATED:  November 1, 2007

5                                               SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

6

7                                               By _____/s/Brian R. Blackman_____

8                                                         P. CRAIG CARDON
                                                         BRIAN R. BLACKMAN
9   DATED:  November 1, 2007                      Attorneys for BLACK ROCK CITY, LLC

10                                              HELLER EHRMAN LLP

11

12                                              By _____/s/ Annette Hurst_____

13                                                        ANNETTE HURST
                                                   Attorney for LARRY HARVEY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATION**

2          I, Brian Blackman, am the ECF User whose identification and password are being

3 used to file this Joint Opposition To Plaintiff's Motion For Leave To File A First Amended

4 Complaint.  In compliance with General Order 45.X.B., I hereby attest that Terry Gross and

5 Annette Hurst have concurred in this filing.

6 DATED:  November 1, 2007

7                                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9                          By    _____/s/Brian Blackman_____

10                                                    P. CRAIG CARDON
                                                  BRIAN R. BLACKMAN
11                                         Attorneys for BLACK ROCK CITY, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28