Mark E. Ellis - 127159
June D. Coleman - 191890
Kimberly E. Lewellen - 243663
ELLIS, COLEMAN, POIRIER, LAVOIE, & STEINHEIMER LLP
555 University Avenue, Suite 200 East
Sacramento, CA  95825
Tel: (916) 283-8820
Fax: (916) 283-8821

Attorneys for Plaintiff
JOHN LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISON

| | |
|---|---|
| JOHN LAW, | Case No.:  C 07-0134 WHA |
| PLAINTIFF, | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND TO FILE FIRST AMENDED COMPLAINT.** |
| v. | |
| LARRY HARVEY, MICHAEL MIKEL, PAPER MAN, LLC., and BLACK ROCK CITY, LLC, | DATE: TBD<br>TIME:  TBD<br>JUDGE:  Hon William Alsup |
| DEFENDANTS. | |

- 0 -

TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................... 1

II.    LEGAL ARGUMENT ................................................................................................... 1

    A.   Law Is Only Required to Plead a Short Plain Statement of the Claim. ....................... 1

    B.   The FAC Sufficiently Alleges Standing for the Cancellation of the Relevant Marks ................. 2

    C.   The FAC Sufficiently Alleges Valid Grounds for the Cancellation of the Relevant Marks. ....... 4

    D.   The FAC Does Not Raise Allegations That Prove the Affirmative Defense of Abandonment. .. 5

    E.   The FAC Does Not State Sufficient Allegations to Support Dismissal of the Claims Based on the Affirmative Defense of Laches. ............................................ 6

    F.   The FAC Sufficiently Alleges Claims Under 15 U.S.C. § 1125(a). ............................. 7

    G.   The FAC Sufficiently Alleges a Claim Under California Business and Professions Code § 17200. ................................................. 9

    H.   The FAC Alleges Plaintiff's Standing to Maintain a Derivative Action. ................... 10

        1.   Mr. Law Tendered a Demand on Paper Man, Harvey and/or Mikel and Defendants Have Refused to Respond to the Demand ................................................. 10

        2.   A Demand on Paper Man, Harvey and/or Mikel Was and Would Have Been Futile. ........... 11

        3.   Mr. Law Can Argue Futility Despite Sending an Unanswered Demand Over 30 Days Ago. 12

        4.   Plaintiff Can Simultaneously Bring Derivative and Direct Actions where the Injuries Suffered by Paper Man and Plaintiff Are Distinct ................................................. 13

    I.   The FAC Sufficiently Alleges Fraud by Suppression and/or Concealment .............................. 13

    J.   The FAC Sufficiently Alleges a Claim for Judicial Dissolution. ............................................. 14

    K.   The FAC Sufficiently Alleges a Claim for Breach of Contract .............................................. 14

    L.   The FAC Does Not Violate Rule 10(b). .............................................................................. 14

III.   CONCLUSION ............................................................................................................. 15

## I.   INTRODUCTION

This Court in its Order of October 11, 2007, identified the problems with the original complaint and provided an outline of how to remedy those problems.  The First Amended Complaint proposed by Plaintiff John Law ("Law") followed the Court's guidance in remedying the original complaint's problems as identified by the Court.

In a transparent attempt to obfuscate the issues and to manufacture the appearance of complexity where there is none, Defendants have jointly opposed the motion for leave to amend with a rambling, over-lengthy opposition brief.   The heart of Defendants' arguments is that the First Amended Complaint ("FAC") fails to allege with heightened particularity and specifics, a claim against each Defendant even though **Rule 8 (a)** and **Bell Atlantic Corp. v. Twombly**, __ U.S. __, 127 S.Ct. 1955, 1964-1974, do not require such detailed specificity.  The opposition goes so far as to demand extensive and detailed facts that are irrelevant on a **(12)(b)(6)** motion, not identified in this Court's Order, and not required by the substantive law.  Additionally, Defendants throughout their arguments constantly misstate the allegations in the FAC and strategically omit those that refute their arguments.  Defendants further misstate the law in a strained effort to create legal arguments where there are none.

The major issues before the Court can be simplified as follows:  (1) does the FAC state a claim under the applicable "plausibility standard" of **Rule 8 (a)**; (2) does the FAC on its face and as a matter of law, plead the affirmative defenses of abandonment and laches; (3) does the FAC sufficiently allege entitlement to bring a derivative and/or direct cause of action; and (4) has the FAC stated a claim for Fraud by Suppression and Concealment.

## II.   LEGAL ARGUMENT

### A.    Law Is Only Required to Plead a Short Plain Statement of the Claim.

**Rule 8 (a)** requires only a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  (**Fed. R. Civ. Proc. 8(a)**.)  Although "a formulaic recitation of the elements of a cause of action will not do" (**Bell Atlantic Corp.**, *supra*, 127 S.Ct. at 1964-65), Law pleads sufficient allegations to show a plausible entitlement to relief.  Even when the Court addresses the sufficiency of the pleadings through a motion to dismiss, the allegations must be construed in the light most favorable to the plaintiff.  (**Ileto v. Gock, Inc**. (9th Cir. 2003) 349 F.3d 1191, 1200.)

- 1 -

In **Bell**, the Court addressed the issue of what a plaintiff must plead in order to state a claim under §1 of the Sherman Act.  (**Bell Atlantic Corp.**, *supra*, 127 S.Ct. at 1961.)  The Court held that the plaintiff's averment that defendants "engaged in parallel conduct in their respective service areas" was insufficient to suggest an "agreement" as required to make a showing of conspiracy  under §1 because the allegations suggested that the parallel action was performed for purposes of self interest, not because of an agreement between the parties. (*Id*. at 1962-63.)  The complaint had to contain enough factual matter (taken as true) to suggest that an agreement was made in order to have a plausible entitlement to relief from a claimed conspiracy.  (*Id*. at 1965.)

> The ***need at the pleading stage for allegations plausibly suggesting (nor merely consistent with) agreement reflects the threshold requirement of Rule 8 (a) (2)*** that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief.  A statement of parallel conduct, even consciously undertaken, needs some setting suggesting the agreement was necessary to make out a §1 claim; ***without that further circumstance pointing towards a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory....it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of "entitle[ment] to relief***.

(*Id*. at 1965 (emphasis added).)

The Court was careful to recognize that a heightened fact pleading of specifics is not required, but rather the requirement is grounded in either direct or inferential allegations respecting all the material elements necessary to sustain recovery under ***some*** viable legal theory. (**Bell Atlantic Corp**, *supra*, 127 S.Ct. at 1974.)  Plaintiffs must only "nudge" their claims across the line from conceivable to plausible.  (*Id*.)

In our case, this Court applied the **Rule 8 (a)** standard as articulated in **Bell**, *supra*, and formulated its earlier Order accordingly.  (See Order Granting Motions to Dismiss, p. 4:23-28.)  Plaintiff drafted its First Amended Complaint in accordance with the Court's Order and remedied the "problems."  As such, the Court should grant Mr. Law's motion for permission to file the First Amended Complaint.

**B.      The FAC Sufficiently Alleges Standing for the Cancellation of the Relevant Marks.**

Defendants argue that Mr. Law failed to allege the requisite commercial or pecuniary interest, and suggested that Mr. Law failed to heed the Court's warning that allegations must be founded in good faith.  For standing, a litigant need only show he is likely to be damaged by the registration. (**Cunningham v. Laser Golf Corp.** (Fed. Cir. 2000) 222 F.3d 943, 945.)  Generally, no absolute test

- 2 -

can be laid down for what must be proved to establish standing, and courts have found standing based on widely diverse interests.  (**Lipton Industries, Inc. v. Ralston Purina Co.** (Cust. & Pat. App. 1982) 670 F.2d 1024, 1028 -29 .)  A belief in likely damage can be shown by a commercial interest or pecuniary interest in petitioner's own mark.  (**Cunningham,** *supra,* 222 F.3d at 945; **International Order of Job's Daughters v. Lindeburg & Company** (Fed. Cir. 1984) 727 F.2d 1087, 1092;  **Star-kist Foods, Inc. v. P.J. Rhodes & Co**. (9th Cir. 1984) 735 F.2d 346, 349.)

In order to address the Court's concerns, as conceded by defendants, Mr. Law alleged in the proposed amended complaint that he had a pecuniary interest in the "Black Rock City," "Flambe Lounge," and "Decompression" marks because (1) he was a member of the partnership that created the marks and used the marks commercially (FAC, ¶¶ 47-48, 79-83, 86-87); (2) the partners agreed that these marks were owned by the partnership (FAC, ¶ 87); (3) upon dissolution of the partnership, each of the respective partners retained a one-third interest in the marks (FAC, ¶ ¶80, 83); and (4) the registration of the marks by a third party injures Mr. Law's abilities to use and license the marks, thereby injuring Mr. Law's ability to share in the profits generated from the use and licensing of the marks (FAC, ¶83). These allegations show Mr. Law's pecuniary and commercial interest in his own marks – the same marks registered, marketed, and licensed by defendants.  (See **Sengoku Works Ltd. V. RMC Int'l Ltd**, (9th Cir. 1999) 96 F.3d 1217, 1219; **Cunningham,** *supra,* 222 F.3d at 945; **International Order of Job's Daughters,** *supra*, 727 F.2d at 1092;  **Star-kist Foods, Inc.,** *supra*, 735 F.2d at 349.)  The licensing and use of these marks by a third party has usurped the monies Mr. Law could have earned for his interest in the marks.

Defendants also argue that the FAC fails to set forth allegations that establish that the partnership actually owned the marks, but defendants fail to recognize that the FAC does allege not only that the partners created and used the mark, but that the partners agreed that the marks were owned by the partnership.  (FAC, ¶¶ 79, 87)

Nor is it necessary to allege that the marks were assigned in a writing, contrary to defendants' argument.  This is patently false.  Defendants rely upon **15 U.S.C. § 90** in support of their contention, which has been repealed.  The newly enacted provision, **15 U.S.C. § 1060**, by its plain language, applies only to registered trademarks.  The actual rule is that an assignment in writing is not necessary to pass common-law trademarks.  (**Speed Products Co. v. Tinnerman Products** (2d Cir. 1949) 179 F.2d 778, 782.)  Moreover, formal assignment of a trademark, although desirable for record purposes,

is not necessary to transfer a trademark on sale of business and good will.  (**Woodward v. White Satin Mills Corp.** (8th Cir. 1930) 42 F.2d 987, 989-90.)  Moreover, the dissolution agreement does transfer the remaining assets – intellectual properties – to the partners in writing.  Accordingly, Defendants argument is without merit and should be disregarded.  In the face of these allegations, Defendants' concerns do not support a denial of this motion, but potentially create a triable issue of fact.

Defendants' reliance on **Bell**, *supra*, and **Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit** (1993) 507 U.S. 163, 168 to support its argument that Mr. Law must allege further details to support these primary allegations is misplaced.  Both cases reject application of a "heightened pleading standard of particularity and specifics" akin to **Rule 9 (b)**.  Simply put, **Bell** and **Leatherman** support Plaintiff's position that he has met the "plausibility" standard of **Rule 8(a)**, and that Defendants demand for what equates to a heightened standard of particularity, is without merit.

However, should the Court find that additional allegations are necessary, it is clear from the documentary evidence supplied to the Court in support of Mr. Law's Motion that Mr. Law can plead such facts in good faith.

Moreover, defendants' further arguments that facts exist to disprove the allegations alleged by Mr. Law do not support a denial of this motion – those issues can be addressed through discovery and decisions by the trier of fact.

**C.     The FAC Sufficiently Alleges Valid Grounds for the Cancellation of the Relevant Marks.**

Defendants argue that Mr. Law does not have a valid ground for cancelling BRC's registration of the three marks.  One such valid ground for cancellation is any reason why the mark could not have been registered in the first place, if the registered mark has been on the Principal Register for less than five years.  (See **Cunningham,** *supra*, 222 F.3d at 945-46.)  Another such ground is the likelihood of confusion between the mark sought to be cancelled and a mark for which the petitioner can establish either prior use or prior registration.  (***Id.***)  A party may also seek cancellation on the basis of fraud.  (**Robi v. Five Platters, Inc**. (9th Cir. 1990) 918 F.2d 1439, 1444.)  The FAC alleges that the registrations at issue have all been on the Principal Register for less than five years.  (FAC, ¶¶ 79, 90.)

Likelihood of confusion is alleged because the FAC alleges "prior use" and ownership of the identical trademarks registered and used in commerce by Defendants during the earlier partnership, and again in a de facto partnership. **(Exhibits I** and **O** attached to the FAC; FAC, ¶¶ 47-48, 79-83, 86-

- 4 -

87.)   These allegations also provide a basis for an original denial of the registration since BRC was not the original owner of the marks.  Fraud is also alleged given the material facts used to obtain the registrations were false and Defendants knew them to be false.  This is true because Harvey and Mikel were and are members of the partnership with Plaintiff, and as such, aware of the true facts of ownership. (*Id.*)

**D.    The FAC Does Not Raise Allegations That Prove the Affirmative Defense of Abandonment.**

Defendants argue that the allegations of the FAC raise the abandonment affirmative defense. In order for one to be deemed to have abandoned his mark through non-use, the party asserting abandonment must show non-use **coupled with** *an intent not to resume commercial use within a reasonable time*. (**Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc**. (E.D.N.Y. 1994) 841 F.Supp. 1339, 1355.)  Abandonment being in the nature of a forfeiture must be strictly proved. (**Oklahoma Beverage Co. v. Dr. Pepper Love Bottling Co.**, (10th Cir. 1977) 565 F.2d 629, 631.)  In Dial-A-Mattress Operating Corp., supra, the Court refused to grant a motion for summary judgment on the basis of an abandonment affirmative defense when the claimed non-use was for a period of approximately 7 years, without any other evidence of an intent not to resume use within a reasonable time.  (**Dial-A-Mattress Operating Corp.**, *supra*, 841 F.Supp. at 1355.)  In Mr. Law's FAC, there is no allegation that Mr. Law does not intend to resume the use within a reasonable time.  (See generally FAC.)  Without such allegation, the FAC withstands Defendants' attack.

Defendants rely upon **Oklahoma Beverage Co.**, *supra*, 565 F.2d at 632, however that case is distinguishable.  In **Oklahoma Beverage Co.**, *supra*, the Court found abandonment where there was 26 years of non-use by the claiming party, no business affiliation between the competing entities, and the non-use party had full-knowledge that someone other than his former partner was using the trademark.  (*Id.*)  Here, the FAC alleges a tight business affiliation between defendants and BRC. (FAC, ¶¶ 16-17, 21-22, 63).  The FAC alleges that the three parties continue to own all intellectual property, including the marks, with the exception of the Burning Man trademark.  (See FAC, ¶ 80.)  In this regard, a *de facto* partnership between Harvey, Mikel, and Plaintiff exists according the FAC's allegations, demonstrating the business affiliation that is absent in the **Oklahoma Beverage Co.** case.

There was never non-use of the three marks and logo, given Harvey and Mikel's continued use of the marks by giving permission for a third party, BRC, to use the marks.  Notably, BRC is wholly owned by Harvey and Mikel, the parties who owned an undivided interest in the marks with Mr. Law.

- 5 -

Unlike the 26 year span in **Oklahoma Beverage Co.**, approximately seven years has passed since the defendants allege that the marks have not been used.  Plaintiff by this lawsuit, and prior written communications with Mikel in the past few years, has asserted his use and ownership rights through the partnership and/or the Paper Man entity.  (FAC, ¶ 71.)  Therefore, the span of alleged non-use by Mr. Law is even shorter than seven years, even assuming defendants' best argument.

Mr. Law's FAC does not state facts sufficient to support the affirmative defense of abandonment.  This Court should grant Mr. Law's motion to permit him to file the FAC, and let discovery and law and motion address the affirmative defense of abandonment.  However, if the Court feels that additional allegations are necessary, Mr. Law can assert further allegations to refute a claim of abandonment.

**E.    The FAC Does Not State Sufficient Allegations to Support Dismissal of the Claims Based on the Affirmative Defense of Laches.**

Laches may estop the owner of a mark from asserting his or her rights in the mark under both state and federal law.  (**Dial-A-Mattress Operating Corp**, *supra*, 841 F.Supp. at 1355.)  There is no bright line test for determining when and to what extent a party's delay will bar a trademark owner's right to a remedy for another's infringing use.  However, in order to find that a claimant's interminable inactivity or negligence has swollen to the level of disabling laches, this delay must be an inexcusable one that has consequentially prejudiced an innocent user based on the individual circumstances of the case.  (*Id*; see **Bridgestone/Firestone Research, Inc. v. Automobile Club De L'Ouest De La France** (Fed. Cir. 2001) 245 F.3d 1358, 1361.)  And finally, as conceded by defendants, laches is an equitable defense.  "Its existence depends upon the equities of the case, and not merely upon the lapse of time." (**Loma Linda Food Co. v. Thomson & Taylor Spice Co.** (Cust. & Pat. App. 1960) 279 F.2d 522, 525.)

Here, the delay is at most from 2003, a period of less than 4 years since filing of the instant lawsuit. (FAC, ¶79).  And Mr. Law's inaction was specifically engineered by his two partners.  First, Plaintiff, Harvey, and Mikel *expressly agreed* that Plaintiff would take an inactive role in management and participation in the Burning Man festival.  (FAC, ¶55; **Exhibit B**, ¶9 ).  Plaintiff relied upon this agreement and remained inactive.  Harvey, Mikel and BRC abused this agreement by misappropriating and usurping the partnership and Paper Man's control over the festival and various marks. Additionally, BRC has not been prejudiced.  By its own fraudulent and offensive conduct, it has reaped

1   great profit and acquired numerous real properties.  It cannot be prejudiced where its growth is a result

2   of its own wrongdoing.

3          Under these circumstances, the viability of the laches affirmative defense should lie in the

4   hands of the trier of fact after discovery is completed.  The Court should not dismiss these claims by

5   denying Mr. Law's motion on the grounds of laches at this early pleading stage.

6   **F.     The FAC Sufficiently Alleges Claims Under 15 U.S.C. § 1125(a).**

7          Defendants argue that the Third and Fifth Claims for unfair competition and false advertising

8   under Section 43 (a) of the Lanham Act, **15 U.S.C. § 1125 (a)**, fail for the reasons discussed above,

9   and because Mr. Law fails to allege competitive injury.  In response to the Court's order that took issue

10  with Mr. Law's standing, as discussed above, Mr. Law's FAC sets forth sufficient allegations to

    support Mr. Law's standing to bring these claims.

11         With respect to competitive injury, Mr. Law has sufficient allegations to support these claims.

12  These claims allege violations of the Lanham Act with respect to the service marks, "Burning Man,"

13  "Decompression," "Flambe Lounge," "Black Rock City," and the Burning man logo and associated

14  trade dress.  "[A]ny person who believes that he is likely to be damaged" may bring a claim for

15  infringement or false designation of origin under section 43 (a) of the Lanham Act.  (**15 U.S.C.**

16  **§1125(a)**.)  In order to satisfy standing, Plaintiff must allege both a commercial injury based upon

17  deceptive use of a trademark or its functional equivalent and a competitive injury based on harm to

18  Plaintiff's ability to compete.  (**Barrus v. Sylvania**, (9th Cir. 1995) 55 F.3d 468, 470.)

19         FAC alleges as follows:

20                 Black Rock City has misappropriated the use of the service marks
               "Burning Man", "Decompression," "Flambé Lounge" and "Black Rock
21             City."  This use has caused confusion in that third parties have been led
               to believe, by the false, deceptive, or misleading representations of Black
22             Rock City, Harvey and others, that Black Rock City, rather than
               individual former partners, including John Law, is the owners of these
23             marks.  The unauthorized use by Black Rock City, or improper false
               claim of ownership of these marks, infringes the rights of the actual
24             individual owners and former partners under Section 43(a) of the
               Lanham Act, 15 U.S.C. § 1125(a), and ***Law has personally and***
25             ***individually been damaged by such unauthorized use, as his rights to***
               ***control and manage the marks have been interfered with, and his***
26             ***ability to share in profits derived from the commercial use of these***
               ***marks has been impaired***.
27
                   Black Rock City's unauthorized use of the stylized Burning Man logo
28             has caused confusion as to the true ownership of that mark by Paper Man
               LLC.  Such unauthorized use infringes the rights of Paper Man LLC

                                               - 7 -

under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Law, Paper Man LLC, and/or the former partners have been actually has been damaged by this unauthorized use.

Black Rock City's unauthorized use of the Burning Man Festival trade dress and the trade dress that comprises the Burning Man structure has also led to confusion as to the true ownership of such marks and trade dress. Such unauthorized use infringes the rights of the former partners under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Law's interests and rights, as agreed upon in Section 4.1 and 10.1 of the 1994 partnership agreement has been actually damaged by this unauthorized use, and potentially his interest under the Paper Man LLC agreement.

Mikel and Harvey, in breach of their fiduciary duties and contractual obligations, have permitted Black Rock City to usurp Paper Man LLC's intellectual property assets and the assets awarded each "former partner" upon dissolution of the partnership per Section 4.1 and 10.1 of the partnership agreement without Law's permission and consent, in derogation of his management rights and obligations, under the partnership agreement.

Such unauthorized use and misappropriation of his individual rights, and those of Paper Man LLC to the above intellectual property assets has caused confusion as to the true ownership of such marks and trade dress. This unauthorized use infringes the rights of Law and of Paper Man LLC under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Law and Paper Man LLC have each been damaged by such unauthorized uses.

(FAC, ¶¶ 101-105 (emphasis added).)

BRC has presented itself to consumers and potential licensees, in various commercial settings such as media, content on BRC's website www.burningman.com, e-bay, etc., as the "owners" of the marks.  (See  FAC; **Exhibits I ,O**)  This is patently false given the partnership and Paper Man are the true owners of these respective trademarks.   As a result, consumers and potential licensees do not attribute the marks whatsoever to the true owners and in fact do not know the true owners exist. In this regard, BRC and Mikel are in direct competition with the partnership and Paper Man to license the trademarks and thereby reap the pecuniary benefits.  Defendants have created a monopoly which is orchestrated by BRC and its control over production of the Burning Man festival.  All avenues to compete using the trade marks are usurped by BRC.  As such, Mr. Law has commercial, pecuniary, and competitive injury caused by the false designations of origin or pecuniary interest which is injured by Defendants' registration of the trademarks and their use in commerce.

**G.     The FAC Sufficiently Alleges a Claim Under California Business and Professions Code §
17200.**

Pursuant to **California Business & Profression Code §§ 17200, et. seq**. (UCL), unfair
competition is "any unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or
misleading advertising and any act prohibited by **§§ 17500, *et. seq*.** (**Kasky v. Nike, Inc.** (2002) 27
Cal.4th 939, 949.) The UCL's scope is broad. By defining unfair competition to include any "unlawful
business act or practice, the UCL permits violations of other laws to be treated as unfair competition
that is independently actionable. (*Id*.) Although Defendants claim that Mr. Law has failed to identify
the bases or grounds for this claim, Mr. Law has certainly identified conduct that he claims (a) violates
various statutes, and (b) if it does not violate various laws, does rise to the level of unfair business
practices.

Defendants also argue that Mr. Law has not pled actual injury sufficient to establish standing.
(See **Branick v. Downy Savings and Loan Association** (2006) 39 Cal.4th 235, 240.) This issue of
actual injury has already been discussed in the context of other claims, and need not be reiterated
herein. With regard to entitlement to distributions as a member of Paper Man to establish actual injury
under a **§ 17200** claim against Harvey and Mikel, the FAC alleges that profits derived from the use of
the Burning Man mark would be distributed to the partners. (FAC, ¶ 83; **Exhibit C** to the FAC, ¶ 4.3.)
Although both Harvey and Mikel received profits from the use of the Burning Man mark, those profits
were surreptitiously funneled through their separate company and siphoned money from Paper Man to
BRC, deriving Mr. Law of any profits. (FAC, ¶¶ 65-66, 84, 139-140)

The Court previously stated that "if Law could allege that he was never paid after a vote took
place, then he could possibly maintain a direct claim. (Order, p. 11:16-18.) However, this
oversimplifies the circumstances. Mr. Law alleges that money was made from the Burning Man event
through the use of the Burning Man mark (and other intellectual property) of which Mr. Law has an
interest. (FAC, ¶¶ 65-66, 84, 139-140.) Mr. Law alleges that he was not distributed any monies from
the millions made from the various marks. (***Id***.) These two allegations raise one of two inferences.
The allegations asserted by Mr. Law raise the inference that Harvey and Law voted amongst
themselves to funnel the profits that could be made from licensing the Burning Man mark to their
separate company, BRC, where they appear to have voted to distribute hundreds of thousands of
dollars a year. Alternatively, the allegations also raise the inference that there was a vote, and profits
were distributed, but not to Mr. Law. Both of these inferences arise from the allegations that the

Burning Man event raised millions of dollars and Mr. Law did not see any of this money.  Notably, paragraph 139 alleges that the 2006 event gross income exceeded $10,000,000.  This satisfies the pleading requirements, including inferences from allegations.  (**Bell Atlantic Corp**, *supra*, 127 S.Ct. at 1961-74.)

**H.   The FAC Alleges Plaintiff's Standing to Maintain a Derivative Action.**

**1.   Mr. Law Tendered a Demand on Paper Man, Harvey and/or Mikel and Defendants Have Refused to Respond to the Demand.**

**California Corporations Code §§ 17501** and **801** provide in pertinent part that a derivative action "*shall not be instituted or maintained*" unless plaintiff alleges (1) he is a member of record at the time of the transaction complained about; and (2) where derivative claims are asserted, a demand or efforts why a demand was not made, and that plaintiff communicated in writing the ultimate facts of each cause of action against each defendant to either the company or its managers.  (**Cal. Corp. Code §17501(b)(2).**)

A derivative action is one in which the grievance to be redressed has been suffered primarily by the corporation, and normally the business entity should institute the action.  (**Reed v. Norman** (1957) 152 Cal.App.2d 892, 897.)  Of course exceptions exist to this general rule, including where the majority members of a closely held business entity abuse their fiduciary obligations to the business entity to the detriment and injury of the minority member.  (See **Jones v. H.F. Ahmanson & Co.** (1969) 1 Cal.3d 93, 105.)   Mr. Law believes such a situation exists in the present case, where the majority interests teamed together to usurp a business opportunity by licensing the mark to their own company for an amount Mr. Law believes was significantly below market value, creating inflated profits in their own separately owned company, which left Mr. Law without any compensation for the licensing of the mark, and left Mikel and Harvey with hundreds or thousands of dollars or more per year.

However, the court has made it clear that although Mr. Law envisioned his claims as direct claims, the Court believed that the claims were derivative.  Thus, the obligation to send a demand arose, unless such demand is futile.  Therefore, since Mr. Law has now proposed to amend his complaint to allege derivative actions, Mr. Law has now complied with the demand obligation prior to filing the amended complaint which alleges derivative actions.  Defendants argue that the demand was sent after the filing of the derivative action, but since Mr. Law has not as yet been permitted to file the

- 10 -

amended complaint which asserts the derivative claims, defendants are incorrect.  Moreover, defendants have not cited the Court to any case that holds otherwise.  Since Defendants have failed to respond to the demand which was tendered over 30 days ago, Mr. Law is justified in being permitted to file the amended complaint with the newly asserted derivative claims.

Public policy should not prevent such an interpretation of the California statutes since defendants have and continue to have the opportunity to address Mr. Law's claims.

### 2.    A Demand on Paper Man, Harvey and/or Mikel Was and Would Have Been Futile.

Although Mr. Law did tender a demand over 30 days ago which has gone unanswered, Mr. Law at all times believed that such a demand would be futile.  If the Court holds that such demand was ineffective because it was sent prior to the filing of the complaint, then the Court should also recognize that such a demand would have been futile.

While the general rule is that to institute or maintain a derivative action, plaintiff must plead a demand upon the directors to act which has not been acted upon, it is equally well-settled that such demand and lack of response need not be alleged if the facts pleaded demonstrate such demand would have been futile.  (**Reed**, *supra*, 152 Cal.App.2d at 898; **Difani v. Riverside County Oil Co**. (1927) 201 Cal. 210, 215-16; see **Kamen v. Kemper Financial Servs., Inc**. (2001) 500 U.S. 90, 101-102 (demand is typically futile when a majority of the directors have participated in or approved the alleged wrong, or are otherwise financially interested in the challenged transactions).)

The test for proving demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the produce of a valid exercise of business judgment.  (**Oakland Raiders v. National Football League** (2001) 93 Cal.App.4th 572, 587.)  The test for demand futility serves to identify at an early stage, the cases in which control of litigation brought in the name of the corporation should be in the hands of the shareholder rather than the board of directors.  (*Id.* at 584-85.)  For example, futility exists where management is deemed to be antagonistic to the stockholder due to fraud, or reluctance to take action against a close business associate.  (**Smith v. Sperling** (1957) 354 U.S. 91, 96.)  Futility also exists where any demand would not have caused or inspired action by a corporation where defendant is the sole voice in dominating policy or any particular act of the corporation.  (**Reed,** *supra*, 152 Cal.App.2d at 899.)

Harvey and Mikel are not disinterested and independent, given their involvement in BRC. (**Oakland Raiders**, *supra*, 93 Cal.App.4[th] at 587.)  First, Harvey had exerted so much dominance and control over Paper Man and BRC, that Mikel lost all power as a manager of Paper Man.  This is demonstrated in Harvey's unilateral execution of licensing to BRC without requiring a written agreement, licensing fee, quality controls, or period of licensing.  (FAC, ¶¶ 22-23, 70-71, **Exhibit I, J**).  Second, both Harvey and Mikel have always acted in BRC's best interests and not Paper Man's.  Although it appears that maybe one or two written licensing agreements with BRC were executed, the licensing fees obtained were only sufficient to cover Paper Man's operating costs.  This shows that both Harvey and Mikel at no time served the bests interests of Paper Man, which would have been to obtain fair market value for the licensing fees.  Rather, they at all times acted on behalf of BRC's best interests, asking BRC to pay only nominal licensing fees or no fees whatsoever.  Third, Mikel's interests are aligned with Harvey and BRC's interests financially as a member of BRC's board.  (FAC, ¶ 17.)

The above allegations also make clear that at no time has Harvey and Mikel's actions been a valid exercise of the business judgment rule.  (**Oakland Raiders**, *supra*, 93 Cal.App.4[th] at 587.)  There is no reasonable basis to negotiate a nominal fee for use of the Burning Man mark.  Clearly, Harvey and Mikel have acted in BRC's best interests and there own in all self-dealing with Paper Man.

And finally, defendants have not acted upon the demand sent over 30 days ago.  Certainly, there is no better proof that the demand was futile than the inaction after receipt of the demand.

### 3.   Mr. Law Can Argue Futility Despite Sending an Unanswered Demand Over 30 Days Ago.

Defendants argue that Mr. Law cannot argue that a demand was futile because he sent a demand over 30 days ago – a demand that remains unanswered today.  However, California law does not preclude Plaintiff from alleging both a demand and futility.  Defendants rely upon **Kamen v. Kemper-Financial Services, Inc.** (1991) 500 U.S. 90, 104 for their proposition that Mr. Law cannot argue futility.  That case is inapplicable because it applied Delaware precedent that alleging a demand waives the demand futility exception.  Defendants fail to cite California precedent that stands for that same rule.

Contrary to Defendant's position, the decision in **Koshaba v. Koshaba** (1942) 56 Cal.App.3d 302, sets forth the general rule that Plaintiff may plead a demand and a refusal to act upon the part of

the board of directors, and plead, in the alternative that a demand was futile. (*Id.* at 308.) Plaintiff has sufficiently pled his derivative claims, and the Court should grant his Motion.

### 4.   Plaintiff Can Simultaneously Bring Derivative and Direct Actions where the Injuries Suffered by Paper Man and Plaintiff Are Distinct.

Defendants argue that Mr. Law cannot allege both derivative and direct claims, relying on the 1943 case of **Shenberg v. DeGarmo** (1943) 61 Cal.App.2d 326, <u>disapproved by</u> **Jones**, *supra*, 1 Cal.3d at 107-08.  However, **Shenberg** has been called into doubt by recent cases analyzing cases involving closely held corporations with few shareholders. (<u>See, e.g.</u>, **Jara v. Suprema Meats, Inc.** (2004) 121 Cal.App.4th 1238, 1254 (listing cases).)  In closely held corporations with few shareholders, the distinction between direct and derivative actions sometimes blurs, and thus it is not always clear whether the claim is a direct or derivative claim.  Of course, Mr. Law views many of the claims as a choice of remedies, recognizing that he cannot recover under both theories.

## I.   The FAC Sufficiently Alleges Fraud by Suppression and/or Concealment

Defendants argue that the Fraud and Misrepresentation Causes of Action are not pled with sufficient specificity.  A party "who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented form discovering. (**Lovejoy v. AT&T Corporation**, (2001) 92 Cal.App.4th 85, 96.)  The FAC alleges that Defendants owed fiduciary duties to Law in their respective roles and managers and officers of Paper Man, and such duties include disclosure of all material facts. (FAC, ¶ 109.)   The FAC identifies the material information that Defendants intentionally omitted and concealed, including that BRC was overseeing and managing the use of the Burning Man mark; defendants were failing to account for income for commercial and other uses of the Burning Man mark; and that Defendants were siphoning the value of the Burning Man mark to create excessive profits for BRC, to the detriment of Paper Man and Mr. Law. (FAC, ¶ 110.)  The FAC also sets forth intentional, affirmative misrepresentations, including that the marks were not making any money and that there were no profits to distribute. (FAC, ¶ 111.) Finally, the FAC alleges damages resulting from the omissions and affirmative misrepresentations. (FAC, ¶ 112.)  These allegations are sufficient to withstand the heightened pleading requirement for fraud claims.

- 13 -

**J.     The FAC Sufficiently Alleges a Claim for Judicial Dissolution.**

Defendants incorrectly state that the Seventh Claim for Judicial Dissolution should be dismissed in its entirety because it is fraud based and Plaintiff fails to allege the claim with **Rule 9(b)** particularity.  As shown above, Plaintiff has satisfied the **Rule 9(b)** requirements to allege fraud by suppression or concealment.  Accordingly, it is a proper basis for Judicial Dissolution.  However, fraud is not the only basis for dissolution.  Plaintiff also alleges that the pervasive mismanagement or abuse of authority as managers of Paper Man and its sole asset, is grounds for dissolution.  This ground for dissolution is subject to **Rule 8(a)** pleading particularity, and Plaintiff has satisfied that standard by his FAC.

**K.     The FAC Sufficiently Alleges a Claim for Breach of Contract.**

Defendants incorrectly contend that this claim should be dismissed because the fair market value allegations are barred by the parol evidence rule.  This contract claim is also grounded on other provisions of the POA such as failure to make certain that all licensing agreements include the appropriate quality control provisions, and failure to keep proper accounting of Paper Man's books.  (FAC, ¶ 143).  It is also grounded on Section 4.3(a) of the POA that requires the majority partners make distributions from time to time.  (FAC, ¶ 74)

Furthermore, parol evidence should not prohibit the parties from defining the terms of the contract, as the parties understood them at the time of contracting.  The Court should allow this cause of action to proceed through discovery because the distribution term reflects the parties' uncertainty about whether profits would be generated, and not whether profits would be distributed, if generated.  Defendants' reading of the contract is inconsistent with the contract as a whole if Paper Man could continue to amass the millions of dollars in profits generated by the Burning Man festival without a distribution to the members.  It is clearly against the understanding of defendants, who actually distributed the profits made on the use of the Burning Man mark through their solely owned BRC company.  Accordingly, this Court should grant Mr. Law's Motion.

**L.     The FAC Does Not Violate Rule 10(b).**

Defendants argue that the Complaint commingles its claims, without properly identifying the defendants as to each cause of action.  The FAC clearly establishes which claims are against which defendants based on the factual allegations asserted in the FAC.  However, to clarify, the following claims are asserted against the following defendants:

- 14 -

| | |
|---|---|
| Claim 1 – | Cancellation: against Black Rock City, who does not own the registered "Decompression," "Flambe Lounge," and "Black Rock City" marks at issue |
| Claim 2 – | Cancellation: against Mikel, who does not own the burning man logo |
| Claim 3 – | Lantham Act Unfair Competition (Infringement):  against BRC, Mikel, and Harvey |
| Claim 4 - | Misrepresentation:  against Mikel and Harvey |
| Claim 5 – | Lantham Act Unfair Competition (False Advertising):  against BRC, Mikel, and Harvey |
| Claim 6 - | Declaratory Relief:  against Harvey, Mikel, and Paper Man |
| Claim 7 - | Judicial Dissolution:  against Harvey, Mikel, and Paper Man |
| Claim 8- | Breach of Fiduciary Duty:  against Harvey, Mikel, and Paper Man |
| Claim 9- | Breach of Contract:  against Harvey, Mikel, and Paper Man |
| Claim 10 - | Breach of Implied Covenant and Fair Dealing:  against Harvey, Mikel, Paper Man |
| Claim 11 - | Negligence:  against Harvey, Mikel, and Paper Man |
| Claim 13 - | UCL Claim:  against Harvey, Mikel, and BRC |

## III.   CONCLUSION

Based on the foregoing, Mr. Law respectfully requests that the Court grant his motion to file an amended complaint.  Mr. Law has sufficiently pled the existing causes of action, based on the factual allegations and inferences that arise therefrom to put defendants on notice as to the claims.  Discovery will flesh out any questions that defendants may have.  As such, the Court should grant Mr. Law's Motion.

Dated: November 8, 2007

Ellis, Coleman, Poirier, LaVoie, & Steinheimer LLP

By   /s Kimberly E. Lewellen
    Kimberly E. Lewellen
    Attorney for Plaintiff
    PLAINTIFF JOHN LAW

- 15 -